UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                      :

MCM GROUP 22 LLC,                  :
                                        :

                  Plaintiff,          :        Case No.: 22-cv-06157-PGG
                                        :

-against-                             :
                                        :

LYNDON PERRY,                   :
                                        :

                  Defendant.       :
                                        :
--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**RANDAZZA** | LEGAL GROUP

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................3

MEMORANDUM OF LAW.............................................................................................7

   1.0     FACTUAL BACKGROUND .................................................................................8

   2.0     LEGAL STANDARD ..........................................................................................12

   3.0     ARGUMENT .......................................................................................................13

     3.1    The Publication Was Fair Use ............................................................13

       3.1.1   The Purpose and Character is Transformative .......................14

       3.1.2   The Nature of the Work Favors Fair Use ...............................17

       3.1.3   Defendant Used an Insubstantial Amount of the Work.........18

       3.1.4   The Use Increases, Rather than Decreases, the Market Value ..............19

     3.2    In the Alternative, Even if the Use was not "Fair Use," the Plaintiff Does Not Own the Copyright ...................................................................20

       3.2.1   The Purported Chain of Title is Broken .................................21

       3.2.2   Neither Order Lawfully Effected Transfer of the Copyright................23

   4.0     DEFENDANT IS ENTITLED TO HIS FEES .........................................................24

   5.0     CONCLUSION ...................................................................................................26

CERTIFICATE OF SERVICE........................................................................................27

RANDAZZA | LEGAL GROUP

# TABLE OF AUTHORITIES

## CASES

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015) .................................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................12

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) ...........................................................14, 17, 18, 19

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ..............................................................25

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017) ..............................................................15

*Bauer v. Yellen*,
   375 Fed. App'x. 154 (2d Cir. 2010) ..................................................................25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................12

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006) .........................................................................14, 15

*Bond v. Blum*,
   317 F.3d 385 (4th Cir. 2003) .............................................................................20

*Brooks v. Bates*,
   781 F. Supp. 202 (S.D.N.Y. 1991) ...................................................................23

*Byrne v. BBC*,
   132 F. Supp. 2d 229 (S.D.N.Y. 2001) ..............................................................17

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ........................................................................14, 16, 19, 20

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...............................................................................9

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ...........................................................................................24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) .............................................................................9, 11

*County of Oneida v. Oneida Indian Nation*,
   470 U.S. 226 (1985) ...........................................................................................22

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ...............................................................................9

3

RANDAZZA | LEGAL GROUP

*Earth Flag, Ltd. v. Alamo Flag Co.*,
    154 F. Supp. 2d 663 (S.D.N.Y. 2001) ............................................................25

*Faroudja Labs., Inc. v. Dwin Elecs., Inc.*,
    1999 U.S. Dist. LEXIS 22987 (N.D. Cal. Feb. 24, 1999) ............................18

*Fitzgerald v. CBS Broad., Inc.*,
    491 F. Supp. 2d 177 (D. Mass. 2007)............................................................18

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ......................................................................................25

*Folsom v. Marsh*,
    9 F. Cas. 342 (C.C.D. Mass. 1841)...............................................................14

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997) ...........................................................................21

*Fox News Network, LLC v. Tveyes, Inc.*,
    883 F.3d 169 (2d Cir. 2018) .........................................................14, 17, 19

*Gallagher v. Empire HealthChoice Assurance, Inc.*,
    339 F. Supp. 3d 248 (S.D.N.Y. 2018) .............................................................9

*Ganino v. Citizens Utilities Corp.*,
    228 F.3d 154 (2d Cir. 2000) .........................................................................12

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ........................................................................24

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ...........................................................................9

*Hamil America Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999) ...........................................................................21

*Harper & Row, Publrs. v. Nation Enters.*,
    471 U.S. 539 (1985) ......................................................................................19

*Hayden v. Cty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999) .............................................................................9

*Hirsch v. CBS Broad. Inc.*,
    2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017).................................9

*In re Celsius KeyFi, LLC*,
    Case No. 22-10967-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) .................7

*In re Celsius Lending, LLC*,
    Case No. 22-10970-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) .................7

*In re Celsius Mining, LLC*,
    Case No. 22-10968-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) .................7

*In re Celsius Network Limited*,
    Case No. 22-10966-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) .................7

4

RANDAZZA | LEGAL GROUP

*In re Celsius Network, Inc.*,
  Case No. 22-10965-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) ............................7

*In re Celsius Network, LLC*,
  Case No. 22-10964-mg  (S.Bankr. N.Y., filed Jul. 18, 2022) ...............................7

*In re Celsius Network, LLC*,
  Case No. 22-10964-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) ............................7

*In re Celsius Networks Lending, LLC*,
  Case No. 22-10969-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) ............................7

*In re Celsius US Holding, LLC*,
  Case No. 22-10971-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022) ............................7

*In re Rogers*,
  51 F. Supp. 930 (S.D.N.Y. 1942) ...........................................................23

*In re Terrorist Attacks on September 11, 2001*,
  538 F.3d 71 (2d Cir. 2008) ................................................................16

*Infinity Broad. Corp. v. Kirkwood*,
  150 F.3d 104 (2d Cir. 1998) ..............................................................19

*Jane Doe Nos. 1-22 v. GIRLSDOPORN.COM*,
  Case No. 37-2016-00019027-CU-FR-CTL (San Diego Cty., Cal. Jan. 2, 2020).....................22

*John Wiley & Sons, Inc. v. DRK Photo*,
  998 F. Supp. 2d 262 (S.D.N.Y. Feb. 21, 2014) .............................................21

*Kali Konangataa v. ABC*,
  U.S. Dist. LEXIS 95812 (S.D.N.Y. June 21, 2017) .........................................15

*Kavowras v. N.Y. Times Co.*,
  328 F.3d 50 (2d Cir. 2003) ...............................................................10

*Mattel Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) .............................................................17

*McLoughlin v. L. Bloom Sons Co.*,
  206 Cal. App. 2d 848 (1962) ..............................................................22

*N. Jersey Media Group, Inc. v. Jeanine Pirro & Fox News Network, LLC*,
  74 F. Supp. 3d 605 (S.D.N.Y. Feb. 10, 2015) .............................................18

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004) ..........................................................15, 16

*Polsby v. St. Martin's Press*,
  8 Fed. App'x. 90 (2d Cir. 2001) ..........................................................25

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
  507 F.3d 117 (2d Cir. 2007) ..............................................................12

*ProtoComm Corp. v. Fluent, Inc.*,
  1994 U.S. Dist. LEXIS 18461 (E.D. Pa. Dec. 23, 1994).....................................18

RANDAZZA | LEGAL GROUP

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) ....................................................................16

*Russian Entm't Wholesale, Inc. v. Close-Up Intern., Inc.*,
  482 F. App'x 602 (2d Cir. 2012) ..............................................................21

*Sarl Louis Feraud Int'l v. Viewfinder Inc.*,
  627 F. Supp. 2d 123 (S.D.N.Y. 2008) ......................................................15

*Schwenk v. Kavanaugh*,
  4 F. Supp.2d 116 (N.D.N.Y. 1998)............................................................12

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881 (9th Cir. 2005) ....................................................................20

*Skoogfors v. Lycos, Inc.*,
  2017 U.S. Dist. LEXIS 61926 (S.D.N.Y. Aug. 21, 2017)...........................8

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ..................................................................................20

*Stone v. Williams*,
  970 F.2d 1043 (2d Cir. 1992) ....................................................................20

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018) ........................................................................9

*United States v. Ruben Andre Garcia (3)*,
  Case No. 19-cr-4488-JLS (S.D. Cal. Dec. 14, 2021) ....................9, 21, 23

## STATUTES

17 U.S.C. § 107 ...............................................................................................14

17 U.S.C. § 201 ...............................................................................................24

17 U.S.C. § 204 ...............................................................................................23

17 U.S.C. § 410 ...............................................................................................21

17 U.S.C. § 501 .........................................................................................20, 21

17 U.S.C. § 504 .................................................................................................8

17 U.S.C. § 505 ...........................................................................................8, 25

17 U.S.C. § 412 .................................................................................................8

18 U.S.C. § 1204 .............................................................................................23

37 C.F.R. § 202................................................................................................18

## RULES

Fed. R. Civ. P. 56...............................................................................................9

Fed. R. Civ. P. 12................................................................................9, 11, 12

Fed. R. Civ. P. 10...............................................................................................9

RANDAZZA | LEGAL GROUP

### MEMORANDUM OF LAW

Celsius Network, LLC, ("Celsius") was a multi-billion dollar business that, among other things, mined cryptocurrency, was a depository for cryptocurrency (permitting customers to earn rewards or borrow against the cryptocoins), and engaged in institutional lending.[1]  On July 13, 2022, Celsius and its affiliates filed for Chapter 11 bankruptcy protection.[2]

A few hours prior to the bankruptcy filing, Defendant Lyndon Perry made a post on the "@lporiginalg" twitter account comparing a statement Celsius had made about customers having unlimited access to their funds with a Reuters headline about Celsius pausing all transfers and withdrawals. Shortly thereafter, a collage about the company was posted by Mr. Perry,[3] juxtaposing a Celsius employee, Jessica Khater, who was noted in a Forbes 30-under-30 piece about managing $300 million in bitcoin assets for Celsius, with a still from an interview with Ms. Khater, (where she was fully clothed) in a prelude to a pornographic film she appeared in, talking about studying business and marketing.  Defendant commented "Same company, btw."  Plaintiff MCM Group 22, LLC, claims to now hold the copyright to that pornographic film and filed this suit against Mr. Perry for alleged infringement of the work.[4]  The suit must be dismissed for failure

---

[1] *See In re Celsius Network, LLC,* Case No. 22-10964-mg  (S.Bankr. N.Y., filed Jul. 18, 2022)(Case ECF No. 45, First Day Presentation)

[2] *See In re Celsius Network, LLC,* Case No. 22-10964-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius Network, Inc.,* Case No. 22-10965-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius Network Limited,* Case No. 22-10966-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius KeyFi, LLC,* Case No. 22-10967-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius Mining, LLC,* Case No. 22-10968-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius Networks Lending, LLC,* Case No. 22-10969-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius Lending, LLC,* Case No. 22-10970-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022); *In re Celsius US Holding, LLC,* Case No. 22-10971-mg  (S.Bankr. N.Y., pet. filed Jul. 13, 2022).

[3] Mr. Perry does not dispute it was made by him, and he even attested to such in this matter already. *See* ECF No. 17 at ¶¶ 3-4.

[4] As a result of a lack of due diligence, Plaintiff also named Mr. Perry's father-in-law as a defendant, but he was voluntarily dismissed.  *See* ECF No. 20.

RANDAZZA | LEGAL GROUP

to state a claim[5] — Plaintiff does not own the copyright and, more important, the alleged infringement was fair use.  Given the fair use issue here, and the way that Plaintiff is abusing copyright to suppress legitimate criticism of a multibillion dollar flop of a cryptocurrency firm, the Court should grant the Defendant its fees for defending this action as provided by 17 U.S.C. § 505.

### 1.0    Factual Background

On July 13, 2022, Mr. Perry posted a tweet from his @lporiginalg twitter account.  ECF No. 1, Complaint at ¶ 24 (citing https://twitter.com/lporiginalg/status/1536220472525803520). That tweet contained, in part, a still image from a video identified as the "Registered Work" in the Complaint.  *Id.* at ¶¶ 24 & 25.[6]  The following day, Plaintiff filed for copyright registration of the video.[7]  *Id.* at ¶ 13.  In other words, even if there was infringement, it occurred after registration.

According to the copyright registration (ECF No. 1-1), which Plaintiff incorporated into the complaint (ECF No. 1 at ¶ 12), the untitled video was created in 2016 and bore an alternate title of "GDP 349." Its author was "BLL Media Inc."  Plaintiff claims ownership "[B]y restitution order, then by written agreement."  ECF No. 1-1.  More specifically, Plaintiff states that the video was filmed in New York City in 2015 by the "founders and operators of the website

---

[5] As previously highlighted, Defendant is not challenging personal jurisdiction or venue, though he does not concede the propriety thereof.  (ECF No. 24).  Rather, a judgment of dismissal on the merits, with prejudice, is what Mr. Perry seeks most.  *Id.*

[6] Presumably, Plaintiff intended to use the shorthand "Registered Video," which it pleaded earlier in the Complaint.  ECF No. 1 at ¶ 12.

[7] Plaintiff concedes that the timing of this registration and the original 2016 publication of the video (ECF No. 1-1) precludes recovery of statutory damages and/or attorneys' fees under 17 U.S.C. §§ 412, 504 & 505.  *See* ECF No. 15.  Plaintiff disclaims seeking such in the Complaint (*id.*), though the Complaint is ambiguous.  To the extent the Complaint can be construed to include such, it should be dismissed. *See Skoogfors v. Lycos, Inc.,* 2017 U.S. Dist. LEXIS 61926, *9 (S.D.N.Y. Aug. 21, 2017)("As is the case with statutory damages, an award of attorneys' fees is only proper if the work was registered prior to the infringement or after infringement but within three months after initial publication. 17 U.S.C. § 412.")

RANDAZZA | LEGAL GROUP

Gilrsdoporn.com and Girlsdotoys.com," which are referred to as "GDP".  ECF No. 1 at ¶ 13.

Plaintiff claims that it was assigned the rights relative to the video belonging to a Non-party Jane

Doe, who was depicted in the video. ECF No. 1 at ¶¶ 11 & 15.  Presumably, this is the "written

agreement" referred to in the copyright registration.  Compare *id.* with ECF No. 1-1.  Plaintiff

further claims that Doe, in turn, obtained the copyright in the video pursuant to court order.  ECF

No. 1 at ¶ 14, citing *United States v. Ruben Andre Garcia (3),* Case No. 19-cr-4488-JLS (S.D. Cal.

Dec. 14, 2021).  Presumably, this is the "restitution order" identified in the copyright registration.

Compare *id.* with ECF No. 1-1.  Absent, however, in that order is anything suggesting how Mr.

Garcia obtained the copyright when BLL Media was identified by Plaintiff as the authors.[8]

    This is not the whole story.  Notably, the Complaint does not even show the Court the

alleged infringement.[9]  This is it:

---

[8] A copy of that restitution order is attached hereto as **Exhibit 1**. *See also* **Exhibit 2**, Declaration
of Jay M. Wolman at ¶ 2.  This may be reviewed on a motion to dismiss without conversion to
summary judgment as Plaintiff relied on it.  *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949
F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's
papers and has relied upon these documents in framing the complaint the necessity of translating
a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

[9] The alleged infringement is a part of the Complaint under Rule 10(c), and it is subject to judicial
notice.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),
a district court may consider the facts alleged in the complaint, documents attached to the
complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v.
MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (*citing Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) and *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). "Where
a document is not incorporated by reference, the court may never[the]less consider it where the
complaint relies heavily upon its terms and effect, thereby rendering the document integral to the
complaint." *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 254
(S.D.N.Y. 2018) (alteration in original) (quotation marks omitted). The Court may also consider
"extrinsic materials" that are "either integral to [the] complaint or an appropriate subject for
judicial notice." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir.
2006).  The alleged infringement is integral to the complaint.  *See Hirsch v. CBS Broad. Inc.*, 2017
U.S. Dist. LEXIS 123468, *2 n.1 (S.D.N.Y. Aug. 4, 2017); *accord Tanksley v. Daniels*, 902 F.3d
165, 172 (3d Cir. 2018)("The copyrighted and allegedly infringing works will necessarily be
integral to an infringement complaint and are therefore properly considered under Rule 12(b)(6).").

RANDAZZA | LEGAL GROUP



*See* **Exhibit 7**. *See also* **Exhibit 3**, Declaration of Lyndon Perry, at ¶ 2.  Specifically, the alleged infringement (which is not even infringing) is of a single frame of the 46 minute and 27-second-long film, wherein a fully-clothed woman named Jessica is asked what she studies, and she responds "*Ummm…business…marketing.  I think… I really don't know anymore, but…yeah it's kind of where I'm going*."  And, that frame is superimposed on the appearance of Jessica Khater in the Forbes 30 Under 30 for 2020, highlighting her management of a book of $300 million in bitcoin assets for Celsius Network, which states:

> Head of institutional lending at Celsius Network, Jessica Khater manages a book of $300 million in bitcoin assets that have resulted in $2.2 billion in loans. After being hired as a marketing assistant by Celsius Network, she quickly proved herself as much more by helping build the bitcoin lending firm's back office.

There is no question that the two images are of the same woman.

As discussed above, on July 13, 2022, Celsius and its affiliates filed for Chapter 11 bankruptcy protection.[10]  *See supra*, n.2.  Earlier that day, Mr. Perry made the tweet at issue:

---

[10] "Judicial notice may be taken of public filings[.]" *Kavowras v. N.Y. Times Co*., 328 F.3d 50, 57 (2d Cir. 2003).

RANDAZZA | LEGAL GROUP



*See* **Exhibit 3**, Declaration of Lyndon Perry at ¶ 3.  Notably, the tweet at issue is the second tweet

in Mr. Perry's thread where he says "Same company btw" while posting the composite image

(which has been removed by Twitter due to Plaintiff's actions).[11]   The first tweet in the thread

juxtaposed a tweet by Celsius stating, in part, "If you don't have free and unlimited access to your

own funds, are they really *your* funds?" with a Reuters article entitled "Crypto firm Celsius

---

[11] Plaintiff had knowledge of these tweets and used this thread, relying on it in framing the
complaint, rendering it reviewable on a Rule 12(b)(6) motion.  *See Cortec Indus., supra.*  In fact,
the tweet was linked identified by URL in the Complaint, and clicking on it brings one to the whole
thread.

RANDAZZA | LEGAL GROUP

pauses all transfers, withdrawals as markets tumble".[12] Thus, the use of the still of Ms. Khater talking about wanting to work in business, alongside her Forbes appearance highlighting her work for Celsius, was part of a statement by Mr. Perry about Celsius, which had engaged in hypocrisy by not allowing customers to make withdrawals as promised.  Plaintiff apparently does not like this commentary and wishes to suppress that commentary by misusing copyright law.

### 2.0    Legal Standard

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507 F.3d 117, 121 (2d Cir. 2007) (*citing Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (*quoting Twombly*, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of

---

[12] This was an actual Reuters article.  *See e.g.,* https://www.nbcnews.com/news/us-news/crypto-firm-celsius-pauses-transfers-withdrawals-markets-tumble-rcna33200 .  Although not necessary, the Court may take judicial notice of this publication.  *See Schwenk v. Kavanaugh*, 4 F. Supp.2d 116, 118 (N.D.N.Y. 1998) (taking judicial notice of the fact that a particular article appeared on the front page of the New York Law Journal); *Ganino v. Citizens Utilities Corp*., 228 F.3d 154, 166-67 (2d Cir. 2000) (district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment).

RANDAZZA | LEGAL GROUP

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id*. at 570. Plaintiff's claims are not plausible.

### 3.0    Argument

Ms. Khater's assignee cannot bring a claim for infringement when her own claim to copyright ownership was invalid.  And, even if that were not the case, Plaintiff knew that fair use required dismissal—going so far as to attempt, through conclusory allegations in the complaint and mere assertions that the issue was one that could not be resolved on a motion to dismiss to try to avoid the issue.  *See* ECF No. 1 & 15.  This is not a case about perpetuating whatever crimes the original producers of the video created. Ms. Khater appeared in a pornographic film, discussing wanting to study business.  She cannot make that fact disappear by misusing copyright law.   Plaintiff cannot abuse copyright law to remove First Amendment protected speech, enshrined in the fair use doctrine.  This matter should be dismissed with prejudice and fees must be awarded to the defendant.

### 3.1    The Publication Was Fair Use

Although Plaintiff attempts to plead around fair use in the Complaint through conclusory allegations, the publication of the composite image of a single still frame of a 46 minute video in a discussion about Ms. Khater's employer meets every fair use factor.[13]

Under the Copyright Act, "the fair use of a copyrighted work, including such use by reproduction … for purposes such as criticism, comment, [or] news reporting… is not an

---

[13] First Amendment protected speech is vindicated through the fair use doctrine.  *See S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 482 (2d Cir. 2007).

RANDAZZA | LEGAL GROUP

infringement of copyright." 17 U.S.C. § 107. There are four factors should be considered in determining whether the use of a work is fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id*. As these factors indicate, "the determination of fair use is an open-ended and context-sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  These factors are not viewed "in isolation, one from another.  All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 578 (1994).

### 3.1.1   The Purpose and Character is Transformative

The first factor focuses on "whether the new work merely 'supersede[s] the objects' of the original creation or instead adds something new."  *Campbell, supra* at 579 (*quoting Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841)) (internal citation omitted). "[T]he primary inquiry is whether the use 'communicates something new and different from the original or [otherwise] expands its utility,' that is, whether the use is 'transformative.'"  *Fox News Network, LLC v. Tveyes, Inc*., 883 F.3d 169, 176 (2d Cir. 2018) (*quoting Authors Guild v. Google, Inc*., 804 F.3d 202, 214 (2d Cir. 2015)). "'Although . . . transformative use is not absolutely necessary for a finding of fair use, . . . [transformative] works . . . lie at the heart of [the fair use doctrine . . . .'"  *Id*. (*quoting Campbell*, 510 U.S. at 579).  In this factor, courts also consider commercialism and bad faith.  *Fox News Network*, 883 F.3d at 176.  Notably, "the more transformative the work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use."  *Campbell*, 510 U.S. at 579.  And, as to bad faith, "while the good or bad faith

RANDAZZA | LEGAL GROUP

of a defendant generally should be considered, it generally contributes little to fair use analysis." *NXIVM Corp. v. Ross Inst*., 364 F.3d 471, 479 n.2 (2d Cir. 2004).

Here, the use was transformative.  It juxtaposed, in a thread discussing Celsius's dubious business practices, Celsius's hiring Ms. Khater, and all that goes with her pornographic career (however limited it may have been).  It was in the form of a collage, with the Forbes image, being the type of transformation that favors fair use.   In *Blanch v. Koons*, an artist incorporated a photograph of feet wearing Gucci sandals into a collage "commenting on the 'commercial images . . . in our consumer culture.'" 467 F.3d 244, 248 (2d Cir. 2006). This was fair use in part because the collage was transformative. *Id*. at 252-53. The collage and the photo had "sharply different" purposes and the collage was intended to be a "commentary on the social and aesthetic consequences of mass media." *Id*.  Here, the image was used as a commentary on Celsius, and it was not merely for masturbatory purposes, unlike the video at issue.  "While courts have declined to find a transformative use when the defendant has 'done no more than find a new way to exploit the creative virtues of the original work,' . . . courts have found a secondary use to be transformative when it is 'plainly different from the original purpose for which [the copyrighted work was] created' — even where a secondary user has made an exact replication of a copyrighted image." *Sarl Louis Feraud Int'l v. Viewfinder Inc.,* 627 F. Supp. 2d 123, 128-29 (S.D.N.Y. 2008) (citations omitted).  Although Mr. Perry could have said "Celsius is the same company that hired Jessica Khater, who appeared in a pornographic video talking about her plans to work in business and marketing", the law is not so restrictive.  Commentary about a video "might fairly display a screenshot or clip from that video to illustrate what all the fuss is about." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) *citing Kali Konangataa v. ABC*, U.S. Dist. LEXIS 95812 at *1 (S.D.N.Y. June 21, 2017).  Thus, the use of the still was

RANDAZZA | LEGAL GROUP

transformative.  If this Court holds otherwise, it will be a very novel approach to this factor, at odds with these other decisions.

Plaintiff claims that Defendant's use was commercial, in order to obtain donations or pledges.  ECF No. 1 at ¶ 34.  There is nothing in the tweet itself seeking donations or pledges.  *See* **Exhibit 4**. *See also* **Exhibit 3** at ¶ 3.  None of the methods for obtaining revenue identified in the Complaint (ECF No. 1 at ¶ 5) appear with the tweet.  While Defendant acknowledges that, through a series of steps, someone seeing the tweet could, eventually, donate money to him, that is no more commercial than the fact that one could write a check to any artist or journalist who makes fair use of a work.  Donations are not commercial activity as they "are not part of the trade and commerce engaged in by a merchant in the marketplace." *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 92 (2d Cir. 2008) (citation and quotation marks omitted).  Even if it was, somehow, commercial, the Second Circuit has noted that "[t]he Supreme Court in *Campbell* rejected the notion that the commercial nature of the use could by itself be a dispositive consideration. The *Campbell* opinion observes that nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research are generally conducted for profit and that Congress could not have intended a rule that commercial uses are presumptively unfair." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477-478 (2d Cir. 2004) (cleaned up).  Mr. Perry was not selling his tweets.  To the extent his use could even be characterized as commercial, it is of a kind recognized to be proper in *NXIVM*.

Neither is there any bad faith.  *Compare Rogers v. Koons,* 960 F.2d 301, 309 (2d Cir. 1992) ("tearing the copyright mark off of a work suggests bad faith"). Here, there is no suggestion Defendant claimed the still was his own work or removed any authorship or copyright credit.  In fact, the "girlsdoporn.com" watermark is visible on the still as part of the college in the tweet

RANDAZZA | LEGAL GROUP

thread commentary.  In fact, crediting the original source is *part of the point* of the discussion.  A flop of a company hired a clueless porn participant for a key position and then it went out of business.  "Bad faith" here would require hiding that fact, making the entire commentary pointless.  Thus, in weighing these considerations, the transformative use, lack of bad faith, and mere stature as someone to whom donations could be made, the first factor cuts in favor of a fair use finding.

### 3.1.2   The Nature of the Work Favors Fair Use

Although Plaintiff claims the nature of the work is how it came to be (ECF No. 1 at ¶ 35), how it came to be, whether procured through fraud upon Ms. Khater or not, does not change what it is:  a non-fiction pornographic film (as opposed to one with a creative storyline). *See* **Exhibit 5** at 2-3. *See also* **Exhibit 2** at ¶ 3. ("The site features sex videos of young women between the ages of 18 and 23.  [GDP's] business is premised on the construct that the women in the videos are not professional porn stars but are amateur college-aged women filming pornography for the first and only time.")  Under the second factor, whether the work was previously published and whether it is informational or creative is considered. *See Byrne v. BBC*, 132 F. Supp. 2d 229, 235 (S.D.N.Y. 2001) ("Previously published works . . . qualify for 'far less protection' against fair use."); *Mattel Inc. v. Walking Mountain Prods*., 353 F.3d 792, 803 (9th Cir. 2003) ("creative works are 'closer to the core of intended copyright protection' than informational and functional works."). Yet, "[t]his factor 'has rarely played a significant role in the determination of a fair use dispute.'" *Fox News Network*, 883 F.3d at 178 (*quoting Authors Guild*, 804 F.3d at 220). Here, the work is not creative—it is an interview and intercourse; in essence, it is a documentary, making it an informational and functional work.  And, as Plaintiff is well aware, being the premise of the prior suit, the video was previously published.  The fact that the original author of the work was found to be a terrible company makes no difference.  Every one of Harvey Weinstein's victims who later

RANDAZZA | LEGAL GROUP

appeared in one of his movies will not get to suppress the fact that they were in the films.  The second factor supports a fair use finding.

### 3.1.3   Defendant Used an Insubstantial Amount of the Work

A single still is insubstantial and favors fair use.  "The clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original." *Authors Guild v. Google, Inc*., 804 F.3d 202, 221 (2d Cir. 2015).  Here, the frame shows it was taken from a video 46 minutes and 27 seconds long.  Assuming a standard frame rate of 30 frames per second, this means that it is 1/83,610 of the work.  *Faroudja Labs., Inc. v. Dwin Elecs., Inc*., 1999 U.S. Dist. LEXIS 22987, *2-3 (N.D. Cal. Feb. 24, 1999); *ProtoComm Corp. v. Fluent, Inc*., 1994 U.S. Dist. LEXIS 18461, *4-5 (E.D. Pa. Dec. 23, 1994) ("a full motion movie quality video is generally recorded and displayed at the frame rate of thirty frames per second").  That is hardly a *substantial* portion of the work.  And, it is well possible the work was shot and published at the higher-resolution 60 frames per second, making the still 1/167,220 of the work.

A video is not a group registration under 37 C.F.R. § 202.4—each frame is not a separate work.  Moreover, this factor weighs less for a photograph "'where all or most of the work often must be used in order to preserve any meaning at all — than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *N. Jersey Media Group, Inc. v. Jeanine Pirro & Fox News Network, LLC*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. Feb. 10, 2015) (*quoting Fitzgerald v. CBS Broad., Inc*., 491 F. Supp. 2d 177, 188 (D. Mass. 2007)).  Here, Defendant would need to show the image of Ms. Khater, at the moment she was talking about her plans to work in business or marketing, and used nothing else.

RANDAZZA | LEGAL GROUP

Of course, Fair Use recognizes when the "heart of the work" is taken, it can vitiate against a finding of fair use. *See Harper & Row, Publrs. v. Nation Enters*., 471 U.S. 539, 566 (1985).   In that case, The Nation took a small portion of a biography of President Ford and reproduced it. However, the court found that since it was the heart of the work, it was not fair use.  In this case though, this is a pornographic movie.  The "heart" of the work would be, well perhaps indelicate to describe here – but it certainly would at least be the nude or sex parts – not the pre-interview with the participant about business or marketing before the pornographic manifestations began. Thus, this factor heavily favors Defendant (as an infinitesimal fraction of the work) or is, at worst, neutral, as "'no more [of the work] was taken than necessary.'" *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998) (*quoting Campbell*, 510 U.S. at 589).

### 3.1.4   The Use Increases, Rather than Decreases, the Market Value

Plaintiff admits that the use "has the effect of increasing the public's demand for…the Registered Work[.]"  ECF No. 1 at ¶ 36.  The fourth factor "is 'undoubtedly the single most important element of fair use,' *Fox News Network*, 883 F.3d at 179 (*quoting Harper & Row v. Nation at* 566), and focuses on "'whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Id*. (*quoting Authors Guild*, 804 F.3d at 223). This factor requires consideration of "'not only the . . . market harm caused by the particular actions of the alleged infringer,' but also the market harm that would result from 'unrestricted and widespread conduct of the [same] sort.'" *Id*. (*quoting Campbell*, 510 U.S. at 590 (internal quotation marks and alteration omitted)).  Here, there is no market harm at all.  In fact, Plaintiff pleads as such.

RANDAZZA | LEGAL GROUP

In *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 451 (1984), the Supreme Court stated that "[a] challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work."   In *Campbell*, the Court clarified that this presumption of market harm for commercial uses only applies where the use of the work is not transformative. *Campbell*, 510 U.S. at 591 ("No 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes.").   Here, there is no presumption of market harm:  The use was non-commercial and transformative and, Plaintiff admits there is no harm to the market.

While Ms. Khater and Plaintiff may not like it, the purpose of Copyright law is to increase the market value.  "[T]he protection of privacy is not a function of the copyright law. . . . To the contrary, the copyright law offers a limited monopoly to encourage ultimate *public* access to the creative work of the author." *Bond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003).  Thus, this fourth factor as well supports the conclusion that Defendant's use of the image was lawful, fair use.

### 3.2   In the Alternative, Even if the Use was not "Fair Use," the Plaintiff Does Not Own the Copyright

MCM Group, LLC, does not legally hold the copyright, notwithstanding its conclusory allegation, precluding it from making a claim.  "Copyright ... is a creature of statute, and the only rights that exit under copyright law are those granted by statute." *Silvers v. Sony Pictures Entm't, Inc*., 402 F.3d 881, 883-84 (9th Cir. 2005); *accord Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir. 1992).   Section 501(b) of the Copyright Act establishes who may sue for infringement of a copyright, authorizing:

> The legal or beneficial owner of an exclusive right under a copyright ... to institute an action for any infringement of that particular right committed while he or she is the owner of it.

RANDAZZA | LEGAL GROUP

17 U.S.C. § 501(b); *see also Russian Entm't Wholesale, Inc. v. Close-Up Intern., Inc.*, 482 F. App'x 602, 604 (2d Cir. 2012) ("[T]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." (emphasis in original)) (summary order).  In the absence of ownership or an exclusive license, MCM Group 22 lacks authority to bring the instant claim.  *See John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 277 (S.D.N.Y. Feb. 21, 2014).

Although Plaintiff argues that its copyright registration is presumptively valid under 17 U.S.C. § 410 (ECF No. 15 at 2), Plaintiff ignores the relevant text of that statute.  Under 17 U.S.C § 410(c) a "certificate of a registration made *before or within five years after first publication of the work* shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." (emphasis added).  Typically, this means that the party challenging the validity of the copyright has the burden to prove the validity. *See Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999).  Here, the registration was made **more than five years** after publication, as noted on the certificate.  Thus, it lacks presumptive validity, and the burden has not shifted to Defendant.  Moreover, even if it were timely, "the presumption of validity may be rebutted where other evidence in the record casts doubt on the question." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997).  As set forth below, the record sufficiently would rebut that presumption.

### 3.2.1   The Purported Chain of Title is Broken

Although, as discussed below, title could not be transferred by court order, even if it could, Plaintiff lacks title to the copyright and the case must be dismissed.  MCM Group 22, LLC, is not the author of the video.  As noted above, it claims assignment from Ms. Khater, who claims she got it by a court order in the *Garcia* prosecution.  That order purported to declare that the "models" who participated for GDP "hold[] superior right, title, and interest" in the videos of them and that

21

they "shall have and recover all property that GDP took from them, including…copyrights."[14]  *See*

**Exhibit 1**.  BLL Media, Inc., is not mentioned; moreover, this was an order against Garcia, not

BLL Media, and it does not appear that BLL Media was within the court's jurisdiction.  The author

of the video, as admitted by Plaintiff, is BLL Media, Inc.  The court order against Garcia was "joint

and several with all co-defendants and co-conspirators ordered to pay restitution for the same

losses" who were identified as "Michael James Pratt, Matthew Isaac Wolfe, Theodore Wilfred

Gyi, and Valerie Moser."  *See* **Exhibit 6**.  *See also* **Exhibit 2** at ¶ 4.  None of them were BLL

Media, Inc.  Thus, Ms. Khater never obtained any rights to the video from BLL Media, Inc., which

remains the copyright owner.

   In a prior filing with this Court (ECF No. 15), Plaintiff referred to a judgment in the matter

of *Jane Doe Nos. 1-22 v. GIRLSDOPORN.COM,* Case No. 37-2016-00019027-CU-FR-CTL (San

Diego Cty., Cal. Jan. 2, 2020) (hereinafter "GDP Order"), in which Garcia and BLL Media, Inc.

were deemed alter egos.  But, that mere declaration does not mean they were alter egos for all

purposes—the declaration was as to finding joint liability.  *See* **Exhibit 5** at 174-78.  That does not

mean that every defendant in that California case, therefore, was legally indistinct from every other

defendant—taken to its logical extreme it would mean that the spouse of one defendant is now the

spouse of every defendant.  *See McLoughlin v. L. Bloom Sons Co*., 206 Cal. App. 2d 848, 853

(1962) ("The alter ego doctrine is founded in equity and its application is not made to depend upon

prior decisions involving factual situations which appear to be similar."); accord, *County of Oneida*

*v. Oneida Indian Nation*, 470 U.S. 226, 266 (1985) ("Even if the counties are considered for some

purposes to be the alter ego of the State…").  The GDP Order, therefore, does not establish that

---

[14] Although not on the public docket, Mr. Perry will assume for purposes of this motion that Ms.
Khater was one of the models.

RANDAZZA | LEGAL GROUP

Garcia was the copyright owner as an alter ego of BLL Media, even if they are alter egos for liability purposes.  If Plaintiff is to show subject matter jurisdiction based on the restitution order, it must prove BLL Media and Garcia are alter egos for the purpose of who was the author of the video and, therefore, the copyright owner.

### 3.2.2   Neither Order Lawfully Effected Transfer of the Copyright

Neither the *Garcia* order nor the GDP order could transfer copyright from BLL Media to Ms. Khater.[15]  Neither order assessed whether what the order purported to do was proper under copyright law—it wasn't.  And, neither Defendant nor this Court are bound by those orders.

To the extent either order purported to transfer copyright ownership to Ms. Khater, they are invalid.  As set forth under 17 U.S.C. § 204, "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  Here, there was no signed conveyance by BLL Media (or Garcia) or its agent.  Plaintiff pleads ownership by virtue of the Restitution Order (ECF No. 1 at ¶ 15) and otherwise argues that the GDP Order effected transfer (ECF No. 15 at 3).  Transfers by "operation of law" tends to mean by corporate dissolution, mergers, bankruptcy, or death.  *See, e.g., Brooks v. Bates*, 781 F. Supp. 202, 205 (S.D.N.Y. 1991).  "Operation of law" does not mean by court order—such is a legally distinct term.  *Contrast* 18 U.S.C. § 1204(b)(2)(B) (defining "parental rights" as "the right to physical custody of the child . . . whether arising by operation of law, court order, or legally binding agreement of the parties."); *accord In re Rogers*, 51 F. Supp. 930, 932 (S.D.N.Y. 1942) (noting transfer of title to rights "merely by operation of law" and "without any court order").

---

[15] Like the *Garcia* order, the GDP Order returned to the plaintiffs all property, including copyright, voided all transfers, and declared the plaintiffs held all rights.  **Exhibit 5** at 186.

RANDAZZA | LEGAL GROUP

Plaintiff has asserted that the question of whether the transfer is "voluntary" is a fact question to be resolved (ECF No. 15 at 3), but voluntariness is not at issue.  Thus, neither order constituted a valid assignment.

Similarly, to the extent either order purported to declare Ms. Khater was an author of the work, who would originally be entitled to copyright ownership, and void any transfer to BLL Media, it is ineffective.  "Copyright in a work protected under [the Copyright Act] vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "The authors of a joint work are co-owners of copyright in the work."  *Id.*  Ms. Khater, however, was not an author and copyright never vested in her such that she made any transfer.

"As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). A mere participant, like Ms. Khater, is not the one who "fixes" the work in the tangible medium, precluding a claim of authorship.  *Garcia v. Google, Inc*., 786 F.3d 733, 743-744 (9th Cir. 2015).  The Second Circuit Court of Appeals agreed with the holding in *Garcia. 16 Casa Duse, LLC v. Merkin,* 791 F.3d 247, 258-259 (2d Cir. 2015).  Thus, even to the extent the Restitution Order and GDP Order voided Ms. Khater's agreement with BLL Media, she had not actually transferred any copyright interest to them because she did not have one to begin with.  Thus, as Ms. Khater never had copyright and none was lawfully transferred to her, Plaintiff has no derivative rights as her assignee and this matter must be dismissed.

### 4.0    Defendant is Entitled to His Fees

Awarding fees to Mr. Perry satisfies the primary objective of the Copyright Act.  The Copyright Act provides that a "court in its discretion may allow the recovery of full costs [and] a

RANDAZZA | LEGAL GROUP

reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505; *see Fogerty v. Fantasy, Inc*., 510 U.S. 517, 523 (1994).  In *Fogerty,* the Supreme Court recognized that HN3 "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Id*. at 524.

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement. In the case before us, the successful defense of "The Old Man Down the Road" increased public exposure to a musical work that could, as a result, lead to further creative pieces. Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Id*. at 527.  The Second Circuit has applied this standard in affirming the awarding of attorneys' fees and costs to successful defendants in an infringement action. *Polsby v. St. Martin's Press*, 8 Fed. App'x. 90, 92-93 (2d Cir. 2001); *Bauer v. Yellen*, 375 Fed. App'x. 154, 155-156 (2d Cir. 2010).  Plaintiff chose to pursue this case, even after Defendant filed his pre-motion letter, knowing full well that fair use was a complete bar to the claim and the legal ownership of the copyright was tenuous.  A failure to impose a penalty on plaintiffs for proceeding with such a meritless claim would simply "invite others to bring similarly unreasonable actions without fear of any consequences." *Baker v. Urban Outfitters, Inc*., 431 F. Supp. 2d 351, 359-60 (S.D.N.Y. 2006) (quoting *Earth Flag, Ltd. v. Alamo Flag Co*., 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001).  This is not even Ms. Khater, *pro se*, trying to erase her past, but a corporate entity, represented by counsel,

RANDAZZA | LEGAL GROUP

filing suit as part of its business.  In light of plaintiff's conduct and history, there must be consequences here.[16]

### 5.0    Conclusion

Mr. Perry recognizes that Plaintiff is in the business of attempting to rehabilitate Ms. Khater's public image.  It can do so, and should do so, without making frivolous copyright claims. Not only is there any absence of ownership of the copyright at issue, but the Complaint and the documents that the Court may take notice of or are otherwise integral to it demonstrate that the use of a single still was lawful, fair use.  The Court should swiftly dismiss the case before the parties are forced to engage in costly, intrusive, and unnecessary discovery and, upon motion, award Defendant his fees.


Dated: February 8, 2023.                                     Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel:     702-420-2001
Email:  ecf@randazza.com

*/s/ Marc J. Randazza*
Marc Randazza, (*Pro Hac Vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel:     702-420-2001
Email:  ecf@randazza.com

*Attorneys for Defendant,*
*Lyndon Perry*

---

[16] A separate fee motion will be filed should the matter be dismissed.

26

RANDAZZA | LEGAL GROUP

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 8, 2023, I caused a true and correct copy of the foregoing document to be served via e-mail as follows:

Erik James Dykema
Bochner IP PLLC
erik@bochnerip.com
*Counsel for Plaintiff*

/s/ Jay M. Wolman
Jay M. Wolman

RANDAZZA | LEGAL GROUP