UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MCM GROUP 22 LLC,

Plaintiff,

-against-

LYNDON PERRY,

Defendant.

Case No.: 22-cv-06157-JHR

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ III

MEMORANDUM OF LAW ........ 1

1.0 A SINGLE FRAME FROM A VIDEO, TURNED INTO A COLLAGE, AND PUBLISHED AS PART OF A COMMENTARY ON MS. KHATER'S EMPLOYER, IS QUINTESSENTIAL FAIR USE ........ 1

2.0 PLAINTIFF IS OTHERWISE NOT THE COPYRIGHT OWNER ........ 7

3.0 MR. PERRY SHOULD BE AWARDED HIS FEES ........ 9

4.0 CONCLUSION ........ 10

CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

## CASES

*Arrow Prods. v. Weinstein Co. LLC*,
44 F. Supp. 3d 359 (S.D.N.Y. Aug. 25, 2014) ....................4, 5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) ....................3, 4

*Bryant v. Media Right Prods., Inc.*,
603 F.3d 135 (2d Cir. 2010) ....................5

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ....................6, 7

*Castle Rock Entertainment Inc. v. Carol Publishing Group, Inc.*,
150 F.3d 132 (2d Cir. 1998) ....................4

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....................2

*Clean Flicks of Colo., LLC v. Soderbergh*,
433 F. Supp. 2d 1236 (D. Colo. Jul. 6, 2006)....................6, 7

*Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001) ....................4

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) ....................2

*Francis v. Kings Park Manor, Inc.*,
992 F.3d 67 (2d Cir. 2021) ....................2

*Hayden v. Cty. of Nassau*,
180 F.3d 42 (2d Cir. 1999) ....................2

*Hirsch v. CBS Broad. Inc.*,
2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017)....................3

*Hofheinz v. A & E Television Networks, Inc.*,
146 F. Supp. 2d 442 (S.D.N.Y. 2001) ....................3

*Ingenuity13 LLC v. Doe*,
651 Fed. Appx. 716 (9th Cir. 2016) ..........1, 5

*Kavowras v. N.Y. Times Co.*,
328 F.3d 50 (2d. Cir. 2003) ..........2

*Kirtsaeng v. John Wiley & Sons, Inc.,*
579 U.S. 197 (2016) ..........9

*Mazer v. Stein*,
347 U.S. 201 (1954) ..........6

*NXIVM Corporation v. Ross Institute*,
364 F.3d 471 (2d Cir. 2004) ..........5

*Panizza v. Mattel, Inc.*,
2003 U.S. Dist. LEXIS 17228 (S.D.N.Y. Sept. 30, 2003) ..........8

*Righthaven, LLC v. Hoehn,*
792 F. Supp. 2d 1138 (D. Nev. Jun. 20, 2011) ..........1, 5

*TCA TV Corp. v. McCollum*,
839 F.3d 168 (2d Cir. 2016) ..........3

*United States v. Paramount Pictures, Inc.*,
334 U.S. 131 (1948) ..........6

**STATUTES**

17 U.S.C. § 201 ..........8

17 U.S.C. § 204 ..........8

17 U.S.C. § 301 ..........8

17 U.S.C. § 504 ..........5

17 U.S.C. § 505 ..........10

17 U.S.C. §107 ..........2, 6

18 U.S.C. § 3663 ..........9

28 U.S.C. § 1338 .......... 8

28 U.S.C. § 1927 .......... 10

**RULES**

Fed. R. Civ. P. 56(d) .......... 2

## MEMORANDUM OF LAW

MCM Group 22's primary opposition to dismissal is to argue that the motion is premature. It is not. The Complaint and the evidence the Court may consider demonstrate this is a meritless case. This is a SLAPP suit disguised as a copyright infringement suit—it is attempting to have commentary about Ms. Khater (a non-party) removed from the internet.

Everyone empathizes with Ms. Khater. However, her status as a third-party victim of a fourth-party does not give MCM any privilege to suppress First Amendment protected speech or abuse copyright law. MCM seeks an unsanctioned use of Copyright,[1] in a manner never condoned, to both shut down expression and to make money off of a pornographic movie by extracting settlements from innocent parties. The Court must not condone these tactics, not even for someone like Ms. Khater. MCM Group 22's claim should be dismissed, and Mr. Perry awarded his fees.

### 1.0 A Single Frame from a Video, Turned into a Collage, and Published as Part of a Commentary on Ms. Khater's Employer, is Quintessential Fair Use

Plaintiff argues against fair use, but declines to show Mr. Perry's commentary is not fair use. Instead, Plaintiff engages in the time-worn tactic of arguing that discovery is needed, raising unsupported hypotheticals. The intent is to multiply the proceedings and extract money from Mr. Perry, an innocent party. This is improper and fails to address Mr. Perry's arguments.

The plaintiff cannot force Mr. Perry to expend fees through burdensome litigation by selectively omitting vital documents from the complaint. One need only consider the entirety of the registered work (the film) and the tweet thread in which a single still from that film was used,

[1] This improper use is not entirely alien to the court system. In *Righthaven, LLC v. Hoehn,* 792 F. Supp. 2d 1138 (D. Nev. Jun. 20, 2011), another copyright troll plaintiff sought to acquire the right to sue over copyrights it did not properly own, despite the use being fair use. This is also similar to the now infamous Prenda lawsuits where the true party in interest attempted to hide themselves, while enriching themselves, by suing over porn movies that nobody wanted to buy. *Ingenuity13 LLC v. Doe*, 651 Fed. Appx. 716 (9th Cir. 2016).

both of which are integral to the complaint (and the proper subject of review). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) and *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). Similarly, "[j]udicial notice may be taken of public filings[.]" *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003). As Plaintiff does not identify any document that does not fall within these parameters, they should all be considered.

Discovery is not needed and there are no material factual disputes.[2] Although Plaintiff made conclusory allegations in the Complaint, such as stating that Mr. Perry's use was "commercial." Mr. Perry's denial of that does not transform a legal dispute into a factual one. "[C]onclusory allegations are not entitled to the assumption of truth." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021). Similarly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff hypothesizes that discovery could reveal that Mr. Perry published the tweet thread, including the Forbes/video still collage, to harass Ms. Khater, to tantalize his readers, or to generate additional search traffic. Notwithstanding a clothed image of Ms. Khater answering an interview question about her career plans would not accomplish any of that, Plaintiff would have the Court ignore the plain appearance of the use. There is no impediment to the Court reviewing the plain appearance of the use and analyzing it under 17 U.S.C. §107.

---

[2] Plaintiff raises the potential of the motion to dismiss being converted to a motion for summary judgment. However, Plaintiff has not made a separate motion under Rule 56(d).

Plaintiff suggests that this Court cannot compare the use by Defendant to the work itself, citing to *Hirsch v. CBS Broad. Inc*., 2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017). That is not what *Hirsch* stands for. In *Hirsch* the defendant "simply reproduced a substantial proportion of the Photo, inserting it into a broadcast episode of *48 Hours*." 2017 U.S. Dist. LEXIS 123468, at *20. In contrast here, the collage was a single frame out of tens of thousands in the video, directly juxtaposed and overlayed with Ms. Khater's appearance in the *Forbes* 30-under-30 article.

Mr. Perry's use, in the discussion of the financially-troubled Celsius (for whom Khater worked) "imbue[d] it with a character, different from that for which it was created," as the original work was created for masturbatory purposes. *TCA TV Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016); *see also Hirsch* at *21. Mr. Perry's use is akin to the transformative use in *Hofheinz v. A & E Television Networks, Inc*., 146 F. Supp. 2d 442, 446-47 (S.D.N.Y. 2001), cited with approval by the Second Circuit. In *Hofheinz,* transformative use was found as "inclusion of copyrighted film clips in actor's biographical film was protected fair use because the biography 'was not shown to recreate the creative expression reposing in plaintiff's [copyrighted] film, [but] for the transformative purpose of enabling the viewer to understand the actor's modest beginnings in the film business.'" *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 610-11 (2d Cir. 2006) (quoting *Hofheinz,* 146 F. Supp. 2d at 446-47). As in *Hofheinz*, Mr. Perry's single frame does not recreate the pornographic expression of the original, but rather enables readers to understand Ms. Khater's beginnings in her career in contrast to her work at Celsius. No amount of discovery can change what is facially apparent.

As to the nature of the work, no discovery is needed—there is no dispute it is a pornographic film. It is amply described in the cases under which Plaintiff purports to have ownership and are subject to judicial notice. Although Plaintiff suggests the work might not be a

true documentary, but rather potentially fictionalized, Plaintiff does not actually say so. Even if the documentary portion was scripted, the fundamental nature of the work is "this is what sex with Jessica Khater looks like." Creativity is in the work is minimal and, ultimately, this factor "may be of less (or even of no) importance when assessed in the context of certain transformative uses." *Bill Graham Archives, LLC.*, 386 F.Supp.2d at 330 (*quoting Castle Rock Entertainment Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 144 (2d Cir. 1998). In the end, this factor is rarely found to be determinative. *See Davis v. The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001). Such was the case in *Arrow Prods. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 371 (S.D.N.Y. Aug. 25, 2014), where excerpts or recreations of parts of the pornographic film *Deep Throat* appeared in a biographic film about its featured performer, Linda Lovelace, where the transformative use was dispositive. Here, as in *Arrow Prods.*, the transformative use and lack of "cop[y]ing the core" pornography of the original outweigh any consideration of the nature of the work. 44 F. Supp. 3d at 371. If a biography about Linda Lovelace can have clips from *Deep Throat* in it, then Mr. Perry can use a single frame from an interview with Ms. Khater, discussing her intended collegiate studies in business, juxtaposed with an article about her actually working in the business world, in the context of a discussion of the financial company she worked for failing spectacularly.

To the extent Plaintiff misleadingly claims the video was not published, this is belied by one of the very decisions under which it claims ownership. That court found that, rather than making "limited DVD production in overseas locales," which is itself publication, those defendants "then proceeded to do exactly the opposite, guaranteeing that the videos would be widely published on the internet and disseminated in Plaintiffs' communities," with Khater being one of those plaintiffs. *See* Motion, Exhibit 5, *Jane Does 1-22 v. Girlsdoporn.com, et al.*, Case No. 37-2016-00019027-CU-FR-CTL (San Diego Cty. Sup. Ct. Jan. 2, 2020) at 18:6-8. If the video

had not been published, MCM Group 22 would have no claim to copyright ownership. This tactic is further evidence that the purpose of this suit is not to make an infringed copyright owner whole, but to punish Mr. Perry for his lawful use of a frame of the video. This is the kind of abuse the courts in *Righthaven* and *Ingenuity* rejected.

As to the amount and substantiality, Plaintiff essentially argues, in bad faith, that a motion picture is actually not a "work," but is really a compilation of a series of 83,610 still images. (Opp. at 13). Meanwhile, the copyright registration is for one film, not a compilation of a series of 83,610 stills.[3] Moreover, even as a compilation, it would be viewed under the Copyright Act as a unified whole. *See Bryant v. Media Right Prods., Inc*., 603 F.3d 135, 141 (2d Cir. 2010); 17 U.S.C. § 504(c)(1) ("[A]ll the parts of a compilation . . . constitute one work.").

Further, this factor only "favors copyright holders where the portion used by the alleged infringer is a significant percentage of the copyrighted work, or where the portion used is essentially the heart to the copyrighted work." *NXIVM Corporation v. Ross Institute*, 364 F.3d 471, 480 (2d Cir. 2004). Mr. Perry used one frame of the 83,610 frames in the work, which is 1/1000 of 1% of the video (meaning 99.999% of the work was not copied). This is an insignificant a percentage as it could be. Plaintiff suggests Mr. Perry might have used less of the work by blurring her face, but such would have undermined the newsworthy comparison with her photo in *Forbes.* And, no reasonable person could say Mr. Perry copied the heart of the work—a single, non-pornographic still from a pornographic film. Mr. Perry "did not copy any more than necessary to achieve" his commentary "purposes". *Arrow Prods*., 44 F. Supp. 3d at 371. As in *Arrow Prods.*:

---

[3] If this ludicrous argument is credited, then someone who infringed on the entire movie would actually be tagged with 83,610 counts of copyright infringement. That would mean that the statutory minimum damages for infringing this entire film would be $62,707,500, and the potential statutory maximum would be $12,541,500,000 – for copying one 46-minute, low budget, porn movie. That's not how copyright law works.

> Along these lines, the court finds that defendants have not copied the core of plaintiff's film *Deep Throat*. The heart, or core, of *Deep Throat* is that it is a pornographic film that in particular, focuses on one type of pornographic act. Conversely, *Lovelace* has an entirely different purpose—it is a critical, biographical film. Thus, given that the two films have entirely different purposes, it is impossible that defendants could have copied the core of *Deep Throat*.

44 F. Supp. 3d at 371. Even if Ms. Khater was the victim of sex trafficking, this does not make the work itself any different than being a pornographic film. Notably, Ms. Lovelace was herself a victim of "physical and emotional abuse" (*Id.* at 364), but just as it did not bolster the copyright claims in that matter, it does not do so here. Thus, this factor strongly favors Mr. Perry.

Finally, Plaintiff admits that there is no harm to the market. (Opp. at 14). This is especially as "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994). Plaintiff cites to *Clean Flicks of Colo., LLC v. Soderbergh*, 433 F. Supp. 2d 1236, 1241-1242 (D. Colo. Jul. 6, 2006), to avoid any consideration of the actual market effects. No court has cited *Clean Flicks* for this purpose, and this Court should not either, as it ignores a statutory command to consider the "effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). In so doing, "[t]he enquiry must take account not only of harm to the original but also of harm to the market for derivative works." *Campbell*, 510 U.S. at 590 (cleaned up). The purpose of the Copyright Clause is to encourage the creation of works through monetization. *See Mazer v. Stein*, 347 U.S. 201, 219 (1954) ("The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts.'"). "It is said that reward to the author or artist serves to induce release to the public of the products of his creative genius." *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 158 (1948). *Clean Flicks* ignores the statute, the

constitutional purpose, and the Supreme Court's command in *Campbell.*. Further, *Clean Flicks* was about competing marketing desires, not about removing a work entirely from the market, which defeats the purpose of copyright.

Here, Plaintiff claims that it does not want to market the work at all. This does not mean Mr. Perry has harmed the value of the work or the market. And, since MCM Group 22 is not Ms. Khater, one cannot ignore the future possibility that its interests and Ms. Khater's may diverge. MCM Group 22's owners may decide, after all, that they want to make money selling copies of the movie, rather than using the copyright (if they even own it) to troll for settlements.

Every document the Court may properly consider demonstrates that the fair use factors overwhelmingly favor Mr. Perry. This Court should avoid unnecessary discovery and further motion practice when no rational person could think a single still of Ms. Khater talking about her business plans prior to performing pornography, juxtaposed in a collage with her subsequent 30-Under-30 appearance highlighting her actual business plans coming to fruition at Celsius, in a Twitter thread discussing the financial troubles at Celsius, is anything but fair use.

**2.0 Plaintiff is Otherwise Not the Copyright Owner**

In the unlikely chance this Court does not dismiss on the basis of fair use, it may also dismiss because Plaintiff does not own the copyright. Mr. Perry recognizes that there is a presumption of validity and he recognizes the conclusory allegation of ownership in the Complaint. But, the certificate and the judgments purportedly transferring ownership tell a different story, overcoming the presumption and the conclusory allegation.

To the extent that there is any question about whether the video was ever published or when, one need only look to the *Doe 1-22* decision appearing at Exhibit 5 to the motion. It is a 2016 case, consolidated with two 2017 cases, in which, as discussed above, the video was

published on the internet, rather than on DVDs as promised. At a minimum, then, in order for Plaintiff to even claim copyright ownership, the videos must have been published at some point in or before 2017—they cannot make their claims selectively. As found by that court "[e]ach Plaintiff's video was, at some point, available for free on public, non-subscription sites." Ex. 5 at 34:19-20. Plaintiff also misrepresents Circular 66—the sentences after saying that merely putting something online does not mean it is published reads: "a work is considered published when the copyright owner offers to distribute copies of the work to a group of people for the purpose of further distributing the copies or publicly performing or displaying the work." Circular 66 at 4. Thus, at the Khater video was distributed to free sites for further distribution, it was "published."

As to the title of ownership, Plaintiff fails to rebut that the complaint, combined with the registration, and the purported judicial assignment in *Garcia*[4] means that it has not demonstrated ownership of the copyright. While Plaintiff's point is well-taken on involuntary transfer under Section 201(e), its own argument indicates that "Oh Well Media" was the prior owner, not "BLL Media" as set forth on the registration. Neither the complaint nor registration allege any transfer from Oh Well Media (which otherwise fails under Section 204(a) as invalid).

And, whereas Defendant cited Federal cases showing that transfer "by operation of law" does not mean by court order, Plaintiff only responded with inapplicable New York *state* cases. Meanwhile, copyright is exclusively a matter of federal law for federal courts. *See Panizza v. Mattel, Inc.*, 2003 U.S. Dist. LEXIS 17228, *6 (S.D.N.Y. Sept. 30, 2003) ("District courts have exclusive jurisdiction over any civil action arising under any Act of Congress relating to copyrights. 28 U.S.C. § 1338(a); see also 17 U.S.C. § 301(a).")

---

[4] *United States v. Ruben Andre Garcia (3),* Case No. 19-cr-4488-JLS (S.D. Cal. Dec. 14, 2021).

Finally, to the extent Plaintiff relies on 18 U.S.C. § 3663 to validate the transfer as "restitution," "transfer of copyright" does not appear in the statute and cannot be implied from any of the authorization language in Section 3663(b). Any transfer as restitution under Section 3663 in *Garcia* was, therefore, invalid and beyond the authority of that court to order. Thus, the case should be dismissed, in the alternative, for lack of copyright ownership.

**3.0 Mr. Perry Should be Awarded his Fees**

There is a particular irony that Plaintiff argues that anything they failed to attach to the complaint should be ignored, yet offers communications not appearing in the complaint, to attempt to rebut Mr. Perry's entitlement to fees. Mr. Perry did not "invite this lawsuit"—he acknowledged with a "lol" (meaning "laughing out loud") the purported infringement claim, because any reasonable person even glancing at the issue, with the slightest understanding of copyright law, would see that it is frivolous in light of the obvious fair use defense. Anyone who says "See you in Court" is not inviting a suit—they are boasting of their certainty in their rights. Plaintiff's pleadings in this matter only reinforces the lack of serious merit in their arguments.

Plaintiff admits that the purpose of the suit is so that a victim of a duplicitous porn company can remove the work from the market. However, Ms. Khater is the victim, not Plaintiff. MCM Group 22 is suing Mr. Perry to make money and/or remove its work from the market (both the economic market and the marketplace of ideas), for the benefit of an unrelated third party. And, it does so without any due consideration to Mr. Perry's freedom of speech or statutory fair use rights. The factors of "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence" quoted by Plaintiff, warrant a fee award. *See* Opposition at 22 quoting, as cleaned up, *Kirtsaeng v. John Wiley & Sons, Inc.,* 579 U.S. 197, 202 (2016). Plaintiff's claim is frivolous and objectively

unreasonable as the alleged infringement was so obviously fair use that it violates Rule 11 to have brought this claim. Plaintiff is not protecting creative expression, but to silencing those who would use even the slightest image from the video in discussing Ms. Khater's history in the context of the newsworthy Celsius meltdown. Mr. Perry is an individual from the West Coast, sued in New York on a threadbare allegation of jurisdiction and venue, who had to find counsel, whereas Plaintiff is a corporate entity that should be deterred from this type of copyright abuse. These factors all favor a fee award, and none of Plaintiff's arguments warrant the rare withholding of fees from a successful defendant. Crime victims (and MCM Group 22 is not even that) deserve no special consideration when they use the courts to abuse others.

If Plaintiff's attorneys wish to multiply proceedings and violate 28 U.S.C. § 1927, and rack up the bill, they should do so at their peril and at their client's peril. The Copyright Act's fee shifting provision (17 U.S.C. § 505) demands that Defendant receives his fees. This Court would do Plaintiff a favor by awarding Defendant his fees now, rather than $100,000 from now.

**4.0 Conclusion**

In light of the foregoing, the complaint should be dismissed with prejudice, and Mr. Perry should be awarded his fees, which will be sought by separate motion following an order of dismissal.

Dated: March 20, 2023.

Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 702-420-2001
Email: ecf@randazza.com

*/s/ Marc J. Randazza*
Marc Randazza, (*Pro Hac Vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel: 702-420-2001
Email: ecf@randazza.com

*Attorneys for Defendants*
*Lyndon Perry*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman