MCM GROUP 22 LLC,

          Plaintiff,

    v.

LYNDON PERRY,

          Defendant.

Civil Action No.: 22-cv-06157-JHR

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

    A.  FACTUAL BACKGROUND ...........................................................................1

    B.  LEGAL STANDARDS ................................................................................3

II.  ARGUMENT ........................................................................................................4

    A.  FAIR USE CANNOT BE DETERMINED AT THIS STAGE ...............................5

        1.  *The Purpose And Character Of The Use* ............................................8

        2.  *The Nature Of The Work* .................................................................10

        3.  *The Amount And Substantiality Used* ..............................................13

        4.  *The Effect Of The Use Upon The Market* .........................................14

    B.  PLAINTIFF OWNS THE COPYRIGHT AT ISSUE .........................................15

    C.  PLAINTIFF HAS SUFFICIENTLY ALLEGED OWNERSHIP OF HER COPYRIGHT ...........16

    D.  THE CALIFORNIA JUDGMENTS TRANSFERRED COPYRIGHTS ...................19

III.  DEFENDANT IS NOT ENTITLED TO FEES ....................................................21

IV.  CONCLUSION ..................................................................................................23

# TABLE OF AUTHORITIES

Cases

*Arista Recs., LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) ................................................. 3

*Bernstein-Deitcher v. Gurwitz,*
    2022 N.Y. Misc. LEXIS 8722 (Sup. Ct. NY County 2022) ................. 20

*Bryant v. Media Right Prods., Inc.,*
    603 F.3d 135 (2d Cir. 2010) ................................................. 21

*Jane Doe Nos. 1 - 22 v. Girlsdoporn,*
    2020 Cal. Super. LEXIS 6811 (Cal. Sup. Ct. 2020) ...................... 1

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ........................................................ 7

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
    927 F.3d 1306 (Fed. Cir. 2019) ........................................... 6, 7

*Clean Flicks of Colo., LLC v. Soderbergh,*
    433 F. Supp. 2d 1236 (D. Colo. 2006) ................................... 14

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010) ................................................. 3

*Ferdman v CBS Interactive, Inc.,*
    342 F. Supp. 3d 515 (S.D.N.Y. 2018) ..................................... 5

*Fonar Corp. v. Domenick,*
    105 F.3d 99 (2d Cir. 1997) ............................................. 15, 16

*Google LLC v Oracle Am., Inc.,*
    141 S. Ct. 1183 (2021) ..................................................... 3

*Graham v Prince,*
    265 F. Supp. 3d 366 (S.D.N.Y. 2017) ..................................... 5, 6

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*
    206 F. Supp. 3d 869 (S.D.N.Y. 2016) ..................................... 5

*Hamil America Inc. v. GFI,*
    193 F.3d 92 (2d Cir. 1999) ............................................... 17

*Hernandez v. Coffey,*
    582 F.3d 303 (2d Cir. 2009) ............................................... 4

*Hirsch v. CBS Broad. Inc.*,
　2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017) ...................................... 7, 9, 10, 11

*Hunley v. BuzzFeed, Inc.*,
　2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021) .............................................................. 6, 7, 8

*Kelly-Brown v. Winfrey*,
　717 F.3d 295 (2d Cir. 2013) ..................................................................................... 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,
　579 U.S. 197 (2016) ................................................................................................. 21

*Knitwaves, Inc. v. Lollytogs Ltd.*,
　71 F.3d 996 (2d Cir. 1995) ....................................................................................... 20

*LaChapelle v. Fenty*,
　812 F. Supp. 2d 434 (S.D.N.Y. 2011) ..................................................................... 7

*Nicklen v. Sinclair Broad. Grp., Inc.*,
　551 F. Supp. 3d 188 (S.D.N.Y. 2021) ..................................................................... 6

*Playboy Enterprises Int'l Inc. v. Mediatakeout.com LLC*,
　2016 WL 1023321 (S.D.N.Y. Mar. 8, 2016) ........................................................... 6

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
　808 F. Supp. 2d 634 (S.D.N.Y. 2011) ..................................................................... 6

*Syville v. City of New York*,
　2022 U.S. Dist. LEXIS 88269 (S.D.N.Y. May 17, 2022) ....................................... 4

*Terminals & Transp. Corp. v. State*,
　169 Misc. 703 (N.Y. Ct. Cl. 1938) ......................................................................... 20

Statutes

17 U.S.C. § 101 .............................................................................................. 12, 13, 16
17 U.S.C. § 107 ............................................................................................... 2, 3, 4
17 U.S.C. § 201 ............................................................................................... 18, 19, 20
17 U.S.C. § 204 ............................................................................................... 19, 20
17 U.S.C. § 504 ............................................................................................... 15
17 U.S.C. § 505 ............................................................................................... 20
17 U.S.C. § 512 ............................................................................................... 2
18 U.S.C. § 3663 ............................................................................................. 20
35 U.S.C. § 101 .............................................................................................. 6

Rules

Rule 12 ............................................................................................................... 1, 3

Rule 15.................................................................................................................. 22

Rule 56 ................................................................................................................... 5

Other Authorities

3 Nimmer on Copyright § 12.11 ............................................................................ 17

## I. INTRODUCTION

Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) must be denied because, contrary to Defendant's attorneys' arguments, the Plaintiff in this matter (1) owns, and has sufficiently pled ownership of, a valid copyright to the work in question; and (2) has sufficiently pled a claim for copyright infringement by Defendant. That is all that is required to deny Defendant's *Motion*.

Defendant's Motion to Dismiss introduces a multitude of matters outside the pleadings, including purported facts, issues, non-parties, and arguments which are irrelevant to and distract from the Court's determination of Defendant's instant *Motion to Dismiss* under Rule 12(b)(6). Rather than engage in an extended tit-for-tat and attempt to litigate the truthfulness and/or relevance of every instance of the foregoing, this *Opposition* will focus on the matters relevant for decision on Defendant's motion. However, to the extent the Court would like additional briefing on any matter outside the four corners of the *Complaint*, Plaintiff stands ready to provide the same.

### A. Factual Background

Plaintiff is the owner by assignment of copyright registration #Pau00414002 (the "Registered Video"). Complaint, ECF 1 ("Compl.") ¶ 12. The Registered Video was created via criminal sex trafficking activity. Compl. ¶ 13. In several restitution orders and civil judgments by other Courts, including one issued by the United States District Court for the Southern District of California, the criminal and civil defendants who originally claimed copyright on the Registered Video had their rights voided and/or transferred to the individual models / victims appearing in the videos. Compl. ¶ 14.[1] *See* Def. Mot. Ex. 1 ("Garcia Restitution Order.") Plaintiff's predecessor-in-interest (an individual model / victim appearing in the Registered Video a/k/a "Jane Doe")

---

1 *See also Jane Doe Nos. 1 - 22 v. Girlsdoporn*, 2020 Cal. Super. LEXIS 6811 (Cal. Sup. Ct. 2020)

assigned her interest in the Registered Video to Plaintiff for the purpose of vindicating her right to control the use of the Registered Video. Compl. ¶ 15. Plaintiff's copyright registration is valid, presumed valid, and enforceable. Compl. ¶ 16.

On June 13, 2022, Defendant Lyndon Perry posted a Tweet which included a still image reproducing an entire frame from the Registered Video. Compl. ¶ 24. His Tweet was made without the consent of Plaintiff or Jane Doe. Compl. ¶ 25. Defendant Perry regularly posts tweets, and other material on the internet for the commercial purpose of earning donations, pledges, or subscriptions. Compl. ¶¶ 4-5.

As a result of various individuals, including the Defendant, posting the Registered Work or portions thereof for the purpose of harassing or embarrassing Jane Doe, Jane Doe requested that Twitter take down the infringing video pursuant to the Digital Millennium Copyright Act (the "DMCA") notice-and-takedown procedure. *See* 17 U.S.C. § 512. The Tweet was not a "fair use" under U.S. Copyright Law (and both Plaintiff and Jane Doe had a good faith basis to believe the same) because each of the four fair use factors outlined in 17 U.S.C. § 107 weigh against a finding of fair use. The Tweet was made for a commercial purpose, i.e., achieving additional donations or monetary pledges for Defendant Perry, and thus this factor weighs against fair use. Compl. ¶ 34. The nature of the copyrighted work is that it arises from criminal human trafficking activities, and thus weighs against fair use. Compl. ¶ 35. Defendant made use of an entire frame of the work, including the likeness of the individual model and victim of the criminal sex trafficking acts, which was unnecessary for any fair use purpose, but was instead intended to harass and subject the victim to further harassment, and thus weighs against fair use. Compl. ¶ 36. Last, contrary to Plaintiff's interest in removing the Registered Work from the market, Defendant's use of the work is likely to have the effect of increasing the circulation of the work in the market among an audience that

Plaintiff does not want to serve, harming Plaintiff and her interest in copyright law in controlling the work, and thus weighs against a finding of fair use. Compl. ¶ 37.

In response to Jane Doe's DMCA takedown notification, on or about July 6, 2022, Defendant Perry provided Twitter a "counter-notice." *See* Declaration of Erik J. Dykema ("Dykema Decl.") Ex. A. When Twitter asked Defendant Perry to "Please describe the reason why you are filing a Counter Notification," Defendant Perry's response in its entirety was:

> lol. trollololol. I don't know if you represent [redacted] or Celcius but either way just because information is embarrassing to you doesn't mean that you own the right to have it removed from the internet. If you don't like it don't do porn, or hire porn stars to run your company. Nice try tho. **See you in court!**

*Id.* (Jane Doe's name redacted) (emphasis added) [sic]. Based on Defendant's *Counter Notification*, Twitter notified Jane Doe that it would "cease disabling access to the materials within 10 business days, unless we receive notice that you've filed an action seeking a court order to restrain [Perry] from engaging in this infringing activity." *Id.* In response to Defendant's invitation to sue him, and to Twitter's notification that it would reinstate the infringing material, Plaintiff filed for copyright registration, and upon receiving it, filed this action for copyright infringement on July 20, 2022.

### B. Legal Standards

On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York,* 579 F.3d 176, 183 (2d Cir. 2009)) (internal brackets omitted).

"To establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel.*

*Serv. Co.*, 499 U.S. 340, 361 (1991)). "[F]air use is a mixed question of law and fact." *Google LLC v Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) (citing *Harper & Row,* 471 U.S. 539, 560 (1985)). "[A] reviewing court should try to break such a question into its separate factual and legal parts, reviewing each according to the appropriate legal standard." *Id.*

## II.  ARGUMENT

The central arguments of Perry's 12(b)(6) *Motion* to dismiss are that: (1) Perry's use was a "fair use" under 17 U.S.C. § 107; and (2) Plaintiff does not own the copyright. The Motion should be granted because, on a 12(b)(6) motion, the factual allegations of the complaint must be accepted as true, and each of Defendant's arguments requires acceptance of Defendant's version of the facts, which Defendant attempts to establish with extraneous documents, and which contradict the well-pleaded facts of the Complaint. On a 12(b)(6) Motion to Dismiss, these materials cannot be considered and the Motion thus cannot be granted.

When a movant under 12(b)(6) presents matter outside the pleadings, the Court may either: (i) exclude the extrinsic evidence, which in this case would result in a denial of the motion; or (ii) convert into a Motion for Summary Judgment. *See Syville v. City of New York*, Case No. 20-cv-4633-PGG-JLC, 2022 U.S. Dist. LEXIS 88269, *7-8 (S.D.N.Y. May 17, 2022). In this case, because the Motion relies upon extrinsic evidence, it is futile because the facts alleged in the Complaint are clearly sufficient to support a claim for copyright infringement (the sole claim in the Complaint), and so exclusion of extrinsic evidence requires denial.

Alternatively, if the Motion were to be converted into one for summary judgment, Plaintiff would be deprived of its "opportunity to present all the material that is pertinent to the motion" without an opportunity for discovery into the contested factual issues. *See Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009) ("[B]efore the court converted the defendants' motion for

judgment on the pleadings into a motion for summary judgment and granted the motion . . . the plaintiff was entitled to an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion . . . ."). While certain grounds under 12(b)(6) may lend themselves to targeted discovery (e.g. personal jurisdiction, or venue), others—including fact-intensive issues like fair use or chain of title (i.e. the issues raised by Defendant's motion)—do not.

Because the factual issues that would be relevant to a determination of Defendant's *Motion* are likely to be the central issues in the case, the discovery required for Plaintiff to respond to Defendant's motion is the same discovery that would be had if the case proceeds. Thus, converting such a motion into a Motion for Summary Judgment would be inappropriate, because—since Plaintiff is entitled to discovery to oppose such a motion, *see generally* FED. R. CIV. P. 56(d)— there is no reason for the Court not to hear such a motion at the typical time, i.e., after discovery.

A.      **Fair Use Cannot Be Determined At This Stage**

Where, as here, the parties disagree on facts which go to the fair use determination, fair use cannot be decided at the pre-answer stage, without the benefit of a factual record developed through discovery.

"Fair use is a mixed question of law and fact." *Ferdman v CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 530 (S.D.N.Y. 2018) (citation omitted). The "fact-driven nature of the fair use determination suggests that a district court should be cautious in granting Rule 56 motions in this area. Where, as here, "there are issues of material fact as to" as to one of the fair use factors, "… the claim of fair use by the [] defendants … cannot be decided on a motion to dismiss." *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.* 206 F. Supp. 3d 869, 895 (S.D.N.Y. 2016).

"A court cannot engage in the fair use inquiry until it has been presented with facts relevant to evaluating the fair use factors." *Graham v Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017)

(citation omitted). "Due to the fact sensitive nature of the inquiry, courts generally do not address the fair use defense until the summary judgment phase." *Id.* (citation omitted). And "[a]lthough the Second Circuit has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim, there is a **dearth of cases granting a motion to dismiss on the basis of fair use**." *Graham v Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017) (cleaned up) (emphasis added); *see also Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 199 (S.D.N.Y. 2021) (noting that "granting a motion to dismiss on fair use grounds is rare") (citation omitted); *Graham*, 265 F. Supp. 3d at 377 (S.D.N.Y. 2017) (pointing out that courts "generally do not address the fair use defense until the summary judgment stage" and even then are wary of granting summary judgment); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634, 641 (S.D.N.Y. 2011) ("Whether Bloomberg's use was a 'fair use' is not a determination I can make after reviewing only the pleadings. I decline to address such a fact-intensive issue before the parties have had an opportunity for discovery."). "[T]he fair-use defense is so fact-sensitive that the Second Circuit has instructed district courts to be 'cautious' in granting summary judgment motions on this issue." *Playboy Enterprises Int'l Inc. v. Mediatakeout.com LLC*, No. 15 CIV. 7053 (PAE), 2016 WL 1023321, at *3 (S.D.N.Y. Mar. 8, 2016).

Indeed, Courts have held that deciding fair use on motion to dismiss is only appropriate where (1) "discovery would not provide any additional relevant information"; and (2) "all that is necessary for the court to make a determination as to fair use are the two works at issue." *Hunley v. BuzzFeed, Inc.*, No. 1:20-CV-08844-ALC, 2021 WL 4482101, at *2 (S.D.N.Y. Sept. 30, 2021) (cleaned up) (citing *May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 188 (S.D.N.Y. 2019)); *see also Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 199 (same).

In an analogous intellectual property law context, whether a claim is patent eligible under 35 U.S.C. § 101 is a mixed question of law and fact – while the determination of whether claims recite an "inventive concept" is ultimately a question of law for a Court to decide, that determination "may turn on underlying 'question[s] of fact'" and thus prevent determination on a 12(b)(6) motion if the Complaint makes factual allegations going to that question. *See Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1315 (Fed. Cir. 2019). In *Cellspin Soft,* the Court of Appeals reversed a reversed a District Court that "ignored the principle . . . that factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage." *Id.* at 1318. While the identity of the "mixed question of law and fact" is different in the Copyright/Fair Use context (i.e. facts underlying the fair use factors rather than facts underlying patent claim inventiveness), the principle is the same: when – as here – a Complaint makes plausible factual allegations which would underly a mixed question of law and fact, those allegations preclude dismissal at the pleadings stage. The Complaint in this matter makes exactly these factual allegations at ¶¶ 33-37 (alleging facts as to each of the four fair use factors.) Similarly, in the trademark context, "[t]he Second Circuit has noted that in the context of the Lanham Act resolution of a fair use defense for use of a trademark 'often requires consideration of facts outside of the complaint and is thus inappropriate to resolve on a motion to dismiss.'" *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

The same principle holds true in copyright cases, because determination of fair use of a copyright is a similarly 'open-ended and context-sensitive inquiry' that is 'fact-driven[.]' *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011) (quoting *Blanch*, 467 F.3d at 251); *see also Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577 (1994) ('the [fair use] statute, like the doctrine it recognizes, calls for case-by-case analysis')." *Hirsch v. CBS Broad. Inc.*, 2017 U.S.

Dist. LEXIS 123468, *18 (S.D.N.Y. Aug. 4, 2017).

Given the fact intensive nature of the fair use inquiry, combined with the factual allegations in the Complaint going to each of the factors of the fair use analysis—which must be taken as true—Defendant's Motion to Dismiss should be denied. However, if the Court did find that—(1) "discovery would not provide any additional relevant information"; and (2) "all that is necessary for the court to make a determination as to fair use are the two works at issue." *Hunley*, 2021 WL 4482101, at *2—it should decide the issue against Defendant, and rule that Defendant's use of the work to harass and torment a young victim of sex trafficking is not "fair." However, as discussed below, there are several significant and material disputes surrounding Defendant's claim of "fair use" that preclude resolution on a motion to dismiss.

### 1. The Purpose And Character Of The Use

The Complaint alleges that "Defendants' use of the still images was commercial and for the purpose of achieving additional donations or pledges." Compl. ¶ 34. Defendant denies this fact, stating "[t]here is nothing in the tweet itself seeking donations or pledges." *See* Mot.[2] at 16. Thus, Plaintiff and Defendant have a factual disagreement regarding whether Defendant's purpose in using the copyrighted material was "commercial." This sort of factual disagreement prevents resolution of this matter on a motion to dismiss. But if the Court is inclined to decide the fair use question at this stage, it must accept Plaintiff's allegation that the nature of the use was primarily "commercial" as true for purposes of this motion, and decide this factor against Defendant.

Defendant alleges through unsupported attorney argument, that "the use was transformative." *Id.* at 15. Defendant asserts facts as to the purpose of Defendant's use of the

---

[2] "Mot." refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss.

photograph – for example, that it was a "commentary" and "not merely for masturbatory purposes, unlike the video at issue." *Id.* This assertion contradicts Plaintiff's well plead claim; and thus whether and to what extent there is any truth to Defendant's statements is at best a mixed question of fact and law, and evidence supporting or disproving such facts must be developed through discovery.

For example, Defendant's testimony, review of contemporaneous email messages, fan mail, pledges, user contributions, or other contemporaneously made media (e.g. podcasts, videos, etc.) may reveal that, contrary to Defendant's attorney's argument, the primary purpose was to harass Jane Doe because of her association with Celcius.[3] Or, the same might reveal that Defendant's primary purpose in using the frame from the Registered Work was to "spice up" his Twitter Feed and tantalize prospective viewers with pornographic images. Alternatively, Defendant might have been motivated by the possibility of attracting additional search traffic, which is likely to come from association with adult images. Several interpretations of the "purpose" of Defendant's Tweet are plausible and, without the benefit of facts outside the complaint, it is impossible to determine—at this stage of the litigation—which interpretation of Defendant's "purpose" should prevail.

While "there are circumstances when 'the only two pieces of evidence needed to decide the question of fair use' are the original work and the allegedly infringing work," "[s]uch cases … are uncommon," and this is not one of them. *Hirsch,* 2017 U.S. Dist. LEXIS 123468, *18. *Hirsch* is instructive and relevant to this case: "here, the fair use inquiry does not turn on visual

---

[3] While not currently within the four corners of the complaint, Plaintiff believes this to be true and, if necessary, would amend its complaint to incorporate this and other specific factual allegations.

differences." *Id.* at *20. Instead, as in *Hirsch*, Defendant simply reproduced an entire frame of the Registered Work, inserting it into his Tweet (similarly, Hirsch's photo was inserted into an episode of a television show). *Id.* Defendant's "claim that appropriating the Photo for this purpose was fair use will therefore turn on an assessment of the context and content of" Defendant's Tweet. *Id.* As in *Hirsch*, "[o]ne issue will be whether [Defendant's] use qualifies as 'news reporting' or 'commentary.'" *Id.* However, "discovery of the [tweet's] overall context and content will enable a more careful assessment of how and whether the [tweet's] use of the Photo served the public by providing access to important . . . information." *Id.* (emphasis added). "Relatedly, [Defendant's] claim that its use of the Photo was 'transformative' is not self-evidently correct based on a visual inspection. … Its inclusion of the heart of the Photo in a discussion of events … does not so obviously 'imbue [the Photo] with a character … different from that for which it was created,' as to permit a finding, on the pleadings, of transformative character. Discovery is necessary to resolve that claim." *Id.* at 20-21. "Further development of the record is warranted, to clarify what, if any, new insights and understandings were created by [Defendant's] use of the Photo here. Newsworthiness of the subject matter is not enough. As to these and potentially other salient aspects of the fact-intensive fair use inquiry, the pleadings and cognizable materials – limited to the Complaint, the Photo and the Episode – do not contain enough factual content to enable a solid assessment." *Id.*

As in *Hirsch,* the "nature and character of the use" factor cannot be decided at the pleading stage.

### 2. The Nature Of The Work

Plaintiff's Complaint alleges that "[t]he nature of the copyrighted work is that is arises from criminal human trafficking activities pursuant to the findings of the United States District Court for the Southern District of California." Compl. ¶ 35. Defendant's attorney alleges instead that it

is a "non-fiction pornographic film (as opposed to one with a creative storyline,)" that "the work is not creative-it is an interview and intercourse; in essence, it is a documentary, making it an information and functional work." *Mot.* at 17.

Whether the Registered Work is "non-fiction" or whether it has a "creative storyline," whether it is merely "an interview," whether it is "in essence … a documentary," are facts beyond the boundaries of the complaint, as indicated by Defendant's reliance on exhibits to establish this fact. Each of the foregoing purported facts are, contrary to Defendant's attorney argument, not established by the Complaint and the Registered Work themselves, rather a determination would require, as in *Hirsch v. CBS,* a factual determination of the fuller context – specifically of the video itself, the truthfulness of the statements therein, the manner in which it was scripted and created, and other issues beyond the facts presented in the sole pleading thus far.

As to the Registered Work, approximately the first ten minutes of the video was spoken dialogue between the actors. *See* Dykema Decl. ¶¶ 1-4. Was the composition, dialogue, and editing of the Registered Work "non-fiction" or did it have a "creative storyline?" Was it merely "an interview" and a "documentary," or was it scripted, contrived, and false? The complaint is silent on these facts, but the verdict cited as Ex. 5 by Defendant contradicts Defendant's attorney argument as to these questions. *See Def. Mot.* Ex. 5 (*Statement of Decision)* at 30 (*Criminal Defendants' Conduct a Staged Interview*), where the Court in that matter found:

> Prior to beginning the sexual portion of the video, Defendants place the women on the bed and conduct an interview to 'personalize' her for the audience. Defendants do not tell women about the interview before they travel to San Diego. The interview consists of Defendants asking the women personal questions about their sexual histories and preferences. Defendants instruct models to act "flirty and perky" and often give them scripted lines to repeat in response to certain questions. Nearly every woman says she is "excited to shoot, but nervous" when asked how she is feeling. If Defendants do not like a woman's answer to a particular question, they stop

> filming, coach her on what to say (or not say) and re-shoot the scene. Some women are uncomfortable answering truthfully so they make up answers that they think Defendants will like or they just use the answers Defendants suggest.

*Id.* at 30-31. "Defendants manipulated the interviews by coaching women on what to say and how to act and by carefully editing the video afterwards." *Id.* "Further, the Court does consider the testimony of several Plaintiffs that, at some point during the shoot, they asked to stop, but Defendants would not permit them to leave until they had the footage they wanted." *Id.* at 32.

Defendant also argues, without foundation, that "the video was previously published." Mot. at 17. "Publication" of a work for purposes of Copyright Law means more than just viewing it on the internet – as discussed below, it requires additional facts such as the sale of copies, which are not found within the 4 corners of the Complaint. Defendant's arguments regarding publication again rest on facts not subject to determination on a motion to dismiss.

Finally, Defendant analogizes this situation to that of convicted sex offender Harvey Weinstein, arguing that "[e]very one of Harvey Weinstein's victims who later appeared in one of his movies will not get to suppress the fact that they were in the films. The second factor supports a fair use finding." Mot. at 17. Apart from being heartlessly cruel to all of the victims of these sex crimes, Defendant's analogy misses two important points: (1) the films in which Harvey Weinstein's victims appear were not (like here) *films of the crimes themselves*, and (2) no Court has made a restitution order to Harvey Weinstein's victims granting them control over those films so that they may remove them from the market.

Contrary to Defendant's arguments, a full analysis of the "nature of the work" factor is inseparable from the context of the crimes in which the work was committed; and which are beyond the four corners of the Complaint. Defendant's assertions of facts beyond the complaint (e.g. that the video is "non-fiction . . . as opposed to one with a creative storyline," "informational,"

and "in essence, it is a documentary," that it is "not creative") coupled with Defendant's arguments using these facts in its fair use analysis, preclude dismissal of the Complaint at this stage.

### 3. The Amount And Substantiality Used

The Copyright Act defines an "Audiovisual work" as "works that consist of a series of related images . . . ." 17 U.S.C. § 101. Here, the parties agree that Defendant used an entire frame (i.e. an entire related image) from the Registered Video. However, Defendant goes on to allege additional facts going to this factor outside the four corners of the complaint, including arguing that the portion taken by Defendant was not "the heart of the work." Mot. at 19. Plaintiff—the copyright owner (as well as the victim, Ms. Doe)—respectfully disagree. For Plaintiff, the "heart of the work" is any portion that identifies her, specifically images of her face, given that she is the victim of criminal sex trafficking and the Registered Work is the evidence thereof.

Defendant's counsel continues to argue—based on facts outside the four corners of the complaint, specifically facts as to Defendant's motive and purpose—that Defendant took "no more of the work than necessary." *Id.* Plaintiff respectfully disagrees. If—as Defendant's counsel stated—Defendant's purpose was to criticize Jane Doe's then-employer, rather than sexually harass and torment Jane Doe herself, then perhaps this purpose could have been accomplished by other means – for example, by copying the image but blurring out her face. Or, perhaps it was not necessary to use, without permission, Plaintiff's copyrighted image whatsoever. Would that have met Defendant's purpose? Without questioning the Defendant, we cannot know. Even if Defendant were to submit a self-serving affidavit stating that using Plaintiff's copyrighted image in his tweet was the only way to accomplish his "purpose" (which would be difficult given that his purpose is itself disputed), what weight to give such "evidence" without the opportunity for cross examination? Without discovery—including the opportunity to review documents and examine Defendant in deposition—it is impossible to know whether Defendant's argued motivation and

purpose for the copying is Defendant's true purpose, and likewise whether Defendant's self-serving allegations should be believed. These are questions for a jury or – if there are no disputed material facts – for a Court to decide after the conclusion of discovery. Not on a pre-answer motion to dismiss.

### 4. The Effect Of The Use Upon The Market

With respect to the fourth factor—the "the effect of the use upon the potential market for or value of the copyrighted work"—the Complaint alleges that "Defendant's use has the effect of increasing the public's demand for and the general prurient interest in the Registered Work, which is contrary to the purposes of the Plaintiff and the United States District Court for the Southern District of California, who intend that the Plaintiff, and other victims like her, have control over Registered Work and depictions of herself therein and may use the Federal Copyright Law to control further dissemination of the Registered Work, or any portion thereof." Compl. ¶ 37. Defendant argues that this factor should be analyzed with respect to traditional considerations of market harm applicable to copyright owners competing in the market to sell products. However, as much as Defendant would like to avoid it, it cannot be forgotten that this case is **not** about Plaintiff's ownership of a commercial work that it wishes to exploit and profit from; but rather Plaintiff's ownership of a work created as a result of sex trafficking activity that it wishes to control and **remove from the market**. Thus, the cases cited by Defendant are inapposite. A more instructive case is *Clean Flicks of Colo., LLC v. Soderbergh,* 433 F. Supp. 2d 1236 (D. Colo. 2006).

"Clean Flix . . . has created and publicly distributed copies of the Studios' movies that it altered by deleting 'sex, nudity, profanity and gory violence'" without a license. *Id.* at 1238. In *Clean Flix*, "[t]he primary argument on the fair use defense is the fourth statutory factor. The [infringers] contend that there is no adverse effect from their use of the movies on the value of the copyrighted work to the studios. They suggest that the Studios benefit because they are selling

14

more copies of their movies as a result of the editing parties' practice of maintaining a one-to-one ratio of the original and edited versions." *Id.* at 1241-42. However, "[t]he argument has superficial appeal but **it ignores the intrinsic value of the right to control the content of the copyrighted work which is the essence of the law of copyright. Whether these films should be edited … is more than merely a matter of marketing; it is a question of what audience the copyright owner wants to reach.**" *Id.* at 1242. The *Clean Flicks* court went on to explain that, although one theory of fair use is "an author's implied consent to reasonable and customary use when he releases his work for public consumption. **That theory is not applicable here because the infringing parties are exploiting a market for movies that is different from what the Studios have released into and for an audience the Studios have not sought to reach**." *Id.* (internal citations omitted) (emphasis added).

Here, as in *Clean Flix,* Plaintiff "has not asked for damages for any loss of revenue to them . . . and they do not ask for statutory damages under 17 U.S.C. § 504. Their objective . . . is to stop the infringement because of its irreparable injury . . . There is a public interest in providing such protection despite the injury the infringers may sustain." *Id.* at 1243.

Analogously, there is no public interest in leveraging pornographic videos resulting from sex trafficking to harass the victims of those crimes. This factor weighs against fair use, and if the Court sees fit to decide it at this stage, should be decided Plaintiff's favor.

### B. Plaintiff Owns The Copyright At Issue

Defendant next argues that Plaintiff "does not legally hold the copyright." Mot. at 20. Defendant's central arguments are that Plaintiff's registration is not entitled to the presumption of validity, that some other entity outside the jurisdiction of the Courts issuing the restitution order(s) owned the copyright before Jane Doe; and lastly that courts lack the power to transfer copyrights. Each of these Defenses either (i) fails as a matter of law; or (ii) are not amenable to resolution on

a motion to dismiss.

## C. Plaintiff Has Sufficiently Alleged Ownership Of Her Copyright

As an initial matter, Plaintiff has alleged ownership of a registered copyright. *See* Compl. ¶ 12 ("Plaintiff is the owner, by assignment, of all right, title and interest in and to the Registered Video and its copyrights, and is the true owner of any derivative works thereof."). On a 12(b)(6) motion, this is all that is required. Defendant's arguments to the contrary primarily rely on matters outside the pleadings and Defendant's motion must be denied on this basis alone. Even if, *arguendo,* Defendant were correct that Plaintiff's copyright registration was not entitled to the presumption of validity, that would mean merely that Plaintiff must establish *at trial* that it is the copyright owner – not that Plaintiff need do more than allege its ownership at the pleading stage.

The sole case cited by Defendant on this point—*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997)—is in accord. *Fonar* was an appeal of a summary judgment order made *after the completion of discovery,* not a motion to dismiss. *Id.* at 101. Further, the decision by the Second Circuit in *Fonar* reversed the District Court's grant of summary judgment for the Defendant because the District Court failed to credit the presumption: "[A] presumption of regularity and appropriateness in filing is ordinarily subsumed in the presumption of validity that attaches to a certificate of copyright registration." *Fonar,* 105 F.3d at 106. Thus, Plaintiff's copyright is presumed valid and Defendant's motion must be denied on this basis.

Defendant attacks Plaintiff's copyright registration's presumption of validity on the grounds that "the registration was made more than five years after publication, **as noted on the certificate**," (emphasis added) and thus attempts to shift the burden of proof on its Motion to Dismiss to Plaintiff. *Mot.* at 21. This argument fails for multiple reasons. First, Defendant misreads the certificate, which does **not note a publication date**, only a "Date of Creation." *See* ECF 1-1. Second, publication is a term of art in Copyright Law. *See* 17 U.S.C. § 101

("'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . . A public performance or display of a work does not of itself constitute publication."). The Complaint does not allege the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership," (and neither does Defendant's *Motion*) and such an argument relies upon matters outside the complaint. Lastly, the Copyright Office takes the position that posting content on a website alone is not a "publication" within the meaning of copyright law. *See* Copyright Office Circular 66 ("The fact that a work has been placed online or posted on a website does not necessarily mean that the work has been published.").[4] Thus, Plaintiff's copyright registration is valid and constitutes *prima facie* evidence of Plaintiff's ownership of the Registered Work.[5]

Next, Defendant attacks Plaintiff's registration on the grounds that "the purported chain of title is broken." This is (self-evidently) a "chain of title" defense.[6] As a matter of law, because Defendant bears the burden of proof on this defense, it is not appropriate for a pre-answer Motion to Dismiss because Defendant cannot provide the necessary proof within the four corners of the pleadings, and because any such factual allegation would contradict Plaintiff's pled factual

---

[4] Available at https://www.copyright.gov/circs/circ66.pdf on March 5, 2023.

[5] Defendant argues that "the party challenging the validity of the copyright *has the burden to prove the validity*." Mot. at 21 (citing *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (emphasis added)). First, Hamil actually held that "[t]he party challenging the validity of the copyright has the burden to prove the contrary." *Hamil*, 193 F.3d at 98. Second, Hamil was an appeal *after trial*. *Hamil*, 193 F.3d at 95. Thus, Plaintiff agrees with Defendant that, at trial, Defendant will have the burden to disprove validity. *Id.* at 98.

[6] *See* 3 Nimmer on Copyright § 12.11 (discussing how a plaintiff who has "obtained a certificate of registration that constitutes prima facie evidence of the validity of his copyright and of the facts stated therein, which includes 'a brief statement of how the claimant obtained ownership of the copyright.' Accordingly, defendant bears the burden of controverting plaintiff's chain of title in those circumstances.").

allegations as to ownership. While the Complaint pleads additional facts going to the entities who Plaintiff believes are the prior owners in the chain of title of its copyright (*See* Compl. ¶¶ 13-14) for the purposes of a 12(b)(6) motion these additional facts are unnecessary – even if they had been omitted from the Complaint, it would still be sufficient.

Stated differently, Plaintiff plead that it owns the copyright. This, without more, is sufficient to defeat Defendant's *Motion* because of the presumption of regularity. However, Plaintiff additionally pled that its predecessor Jane Doe previously owned the copyright. *See* Compl. ¶ 12. Plaintiff further pled that Ms. Doe received the copyright via a restitution order against defendant GARCIA in the criminal action in the Southern District of California. *Id.* ¶¶ 13-14. While Plaintiff believes these additional facts to be true, even if, *arguendo*, Plaintiff actually received the copyright through a different court order (for example, a civil judgment issued by the Superior Court of California, San Diego, on July 31, 2020, which grants the same relief as the criminal court ("Plaintiff shall have and recover all property Defendants took from them, including images, likenesses, videos and/or copyrights")) neither Plaintiff's claim nor Plaintiff's registration is invalid.[7] There appear to have been several defendants in these cases, criminal and civil, and so there may be several judgments, each of which granted Jane Doe ownership of the copyright at

_____

[7] The Copyright Office's *Supplementary Registration* procedure exists to cure such unintentional errors. *See, e.g.*: *About Supplementary Registration*, retrieved from: https://www.copyright.gov/eco/help-supplementary.html on March 8, 2023. ("If the information in the basic registrartion was incorrect at the time that basic registration was made, you should provide the correct information in the relevant portions of the online application.")

issue. Though he is incorrect, Defendant is within his rights to explore the hypothetical possibility that some other party is the true owner of the copyright asserted herein, but he must do it through discovery and/or at trial – not at the 12(b)(6) stage.

### D. The Federal and State Judgments Transferred Copyrights

Next, Defendant argues that – regardless of the multiple Court orders voiding copyright ownership of the criminals, and granting copyright ownership to Jane Doe – Plaintiff *still* cannot own the copyright because Courts are simply powerless to transfer copyrights. Mot. at 23. Defendant is wrong on the law, but even if he was correct on the law, he would need to prove additional facts which are beyond the four corners of the complaint, and thus his *Motion to Dismiss* cannot be granted on such grounds.

As an initial matter, 17 U.S.C. § 201(e) applies only to an "individual author" whose copyrights have "not previously been transferred voluntarily by that individual author."[8] The question of whether the copyright at issue in this matter was created by "an individual author" whose copyrights were "not previously transferred voluntarily" are factual questions outside the four corners of the complaint, and thus cannot be the basis for a *Motion to Dismiss.* That said, these allegations are shown to be false by Defendant's own motion and exhibits.

First, the entity believed by Plaintiff to be the prior owner of the copyright – "BLL Media" – was not an "individual author" but a corporate entity which was the "alter ego" of the defendants in the criminal and civil cases. *See* Mot. at 22. While Defendant quibbles over whether the various

---

[8] Under 17 U.S.C. § 201(e), "[w]hen **an individual author's** ownership of a copyright, or of any of the exclusive rights under a copyright, **has not previously been transferred voluntarily** by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11." (emphasis added).

criminals and criminal entities were "alter egos" for all purposes or only for some purposes, Defendant cites no caselaw for the proposition that a corporate entity (which is by definition not an "individual") could be an "individual author." Separately, that very verdict – ordered by the Superior Court of California – finds that the Defendants in that case "transferred ownership of all valuable assets related to GirlsDoPorn from Bubblegum Films and BLL Media, Inc. (two entities that Pratt owns) to Oh Well Media (an entity supposedly owned by Holloway)" pursuant to an "Assignment of Assets." *See* Mot. Ex. 5 at 119 (page 120 of the PDF); *see also* id. at 120 (121 of the PDF) "Pratt states that a contract exists between Oh Well Media and BLL Media giving ownership of the videos to Oh Well Media and that he signed on behalf of BLL Media . . . ." Thus, because BLL Media Inc.—believed to be the entity that previously owned copyright to the Registered Work—voluntarily transferred the rights to Oh Well Media, 17 U.S.C. § 201(e) simply does not apply.[9]

Separately, even if Defendant *could* prove at this stage that BLL Media was an "individual author" which had not previously transferred the copyrights within the meaning of 17 U.S.C. § 204(e), Defendant is simply incorrect that Court ordered transfers of copyrights are invalid as excluded from the definition of "by operation of law," particularly where – as here – multiple Courts in the United States have issued judgments finding that the entities involved – both

_____

[9] To the extent that information regarding any steps in the chain of title is to any extent unclear, this should not be overly surprising – a review of the relevant judgments and verdicts tends to show that that the criminals involved in creating the Registered Work acted to obfuscate their ownership and responsibility and fraudulently transfered assets to avoid justice.

individuals and corporate entities – are criminal actors, liable to the women – like Jane Doe – both in civil judgements and in criminal restitution. Defendant's brief cites no caselaw supporting the proposition that "by operation of law" in the context of 17 U.S.C. § 204(e) excludes court orders, including orders of restitution. The case *Brooks v Bates* is a copyright case but does not hold, even in *dicta*, that "operation of law" excludes a court order. *In re Rogers* is a bankruptcy case not involving copyrights.

Other cases, particularly New York cases, make clear that "by operation of law" includes court orders. *See, e.g. Terminals & Transp. Corp. v. State,* 169 Misc. 703, 706 (N.Y. Ct. Cl. 1938) ("[A]ll of the acts in the case at bar relating to the transfer of stock were involuntary, under court order, that is 'by operation of law.'"), *see also Bernstein-Deitcher v. Gurwitz,* 2022 NY Slip Op 33863[U], 2022 N.Y. Misc. LEXIS 8722, *3 (Sup. Ct. NY County 2022) ("The . . . Agreement provides for an involuntary transfer of defendant's shares by operation of law (e.g., a court order . . .)"). Lastly, Defendant's brief cites no cases in support of the proposition that 17 U.S.C. 201(e) somehow trumps 18 U.S.C. § 3663, a separate federal statute authorizing criminal restitution orders.

To the extent that prior ownership of the copyright at issue is unclear at any point, Plaintiff respectfully submits that the appropriate action would be to deny Defendant's motion, open discovery, and allow the parties to investigate the relevant facts through discovery (including third party discovery) into the chain of title.

## III.    DEFENDANT IS NOT ENTITLED TO FEES

The Copyright Act provides courts discretion to award the prevailing party in an infringement action its costs, including reasonable attorneys' fees. 17 U.S.C. § 505. An award of fees and costs is not automatic; rather, the district court has discretion to determine whether such

assessment would be fair. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995). To determine whether fees are warranted, courts consider "several nonexclusive factors," including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (cleaned up) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)); *see also Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Plaintiff submits that the Court should carefully consider the application of the "deterrence" factor here, particularly with respect to the unique circumstances of the Plaintiff and its predecessor in interest. While it may be a just result to "deter" certain behaviors, certainly neither the public, nor Congress, nor the Courts have an interest in "deterring" victims of sex crimes from attempting, in good faith, and having been granted ownership of the rights to the relevant works, to control the ongoing use of those works to remove them from the market. Such a "deterrence" would fly in the face of the clear policy enacted by various state and federal laws used by or protecting victims of crimes or of "revenge porn."[10]

Here, even if the Court were to determine that Plaintiff's Complaint should be dismissed, the Complaint and Plaintiff's conduct has been completely reasonable, in good faith, and properly motivated. Jane Doe, the victim of a criminal sex trafficking conspiracy to create pornographic videos, was awarded copyright of the Registered Work through restitution order(s) so that she may

---

[10] *See, e.g.* Know Your Rights – Revenge Porn, retrieved from: https://nownyc.org/womens-justice-now/issues/know-your-rights-revenge-porn/ on March 8, 2023. *See also* N.Y. Penal Law 245.15 ("Unlawful dissemination or publication of an intimate image")(a/k/a the New York "Revenge Porn" law)

control (i.e., limit) the dissemination of the Registered Work and portions thereof. She is not operating a "business" or attempting to profit from Defendant's harassment of her. Rather, she is simply attempting to exercise her right under Copyright Law to have harassing images of her—to which she owns the copyright—taken down from the Internet. Plaintiff initially attempted to get Defendants' use of the Registered Work taken down through a DMCA notice. In response, Defendant invited this lawsuit, saying "lol . . . **See you in Court!**" *See* Dykema Decl. Ex. A (emphasis added). With respect to Defendants' allegation that Plaintiff "kn[ew] full well that fair use was a complete bar to the claim and the legal ownership of the copyright was tenuous," Mot. at 6, Plaintiff respectfully refers Defendant to this *Response* to its motion, as well as Plaintiff's Response to its pre-motion letter, ECF 23, which evidences Plaintiff's reasonable disagreement with Defendant's legal positions.

Defendant should not now be heard to complain that Plaintiff turned to the Courts to vindicate her copyright, when he was presented with an out-of-court opportunity to resolve the infringement, refused it, and invited suit.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendants' Motion to Dismiss should be denied. However, to the extent that the Court determines that Plaintiff's *Complaint* is deficient in any fashion, Plaintiff respectfully requests leave to amend pursuant to FED. R. CIV. P. 15(a)(2).

Dated: March 8, 2023                          Respectfully submitted,

                                              By: /s/ Erik Dykema
                                              Erik Dykema, Esq.
                                              Serge Krimnus, Esq.
                                              Bochner IP, PLLC

295 Madison Avenue, 12th Floor
New York, New York 10017
(646) 971-0685
erik@bochnerip.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing document to be sent to counsel for the Defendant via email on March 8, 2023.

*/s/ Erik Dykema*
Erik Dykema, Esq.