UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                     :

MCM GROUP 22 LLC,                     :

            Plaintiff,            :      Case No.: 22-cv-06157-GBD

                                     :

-against-                             :

                                     :

LYNDON PERRY,                   :

            Defendant.        :
-------------------------------------------------------------x

# DEFENDANTS' MEMORANDUM OF LAW IN
# SUPPORT OF MOTION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

1.0    INTRODUCTION AND FACTUAL BACKGROUND ................................................ 1

2.0    LEGAL STANDARDS ................................................................................................ 3

    2.1    Entitlement to Fees Under the Copyright Act ................................................. 3

    2.2    Determining Reasonable Fees .......................................................................... 4

3.0    ARGUMENT ............................................................................................................... 5

    3.1    Defendants are Entitled to Attorneys' Fees ................................................... 5

        3.1.1    Plaintiff's Infringement Claim was Objectively Unreasonable .............................. 5

        3.1.2    Plaintiff's Suit is an Abuse of Copyright That Must Be Deterred ......................... 7

        3.1.3    Access to Justice ................................................................................................... 10

    3.2    Defendants' Requested Fees are Reasonable ................................................... 11

        3.2.1    Time and Labor Required, Novelty and Difficulty, and Skill Needed ................. 12

        3.2.2    Preclusion of Employment Due to Acceptance of Case ...................................... 12

        3.2.3    Customary Hourly Rate ....................................................................................... 12

        3.2.4    Whether Fee is Fixed or Contingent ................................................................... 14

        3.2.5    Time Limitations ................................................................................................. 14

        3.2.6    Amount Involved and Results Obtained .............................................................. 14

        3.2.7    Experience, Reputation and Ability of Attorneys ............................................... 15

        3.2.8    Undesirability of the Case ................................................................................... 16

        3.2.9    Nature and Length of Relationship with Client .................................................. 16

        3.2.10    Awards in Similar Cases .................................................................................... 16

4.0    CONCLUSION .......................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................................... 19

RANDAZZA | LEGAL GROUP

# TABLE OF AUTHORITIES

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
522 F.3d 182 (2d Cir. 2008)................................................................................ 4

*Baker v. Urban Outfitters, Inc.*,
431 F. Supp. 2d 351 (S.D.N.Y. 2006) .............................................................. 10

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)........................................................................................ 3, 7

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)............................................................................... 4

*Golden v. Michael Grecco Prods.*,
524 F. Supp. 3d 52 (E.D.N.Y. Mar. 9, 2021).................................................... 7

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992)................................................................................. 4

*Guo v. Cheng*,
No. A-18-779172-C (8th Jud. Dist., Nev. Jun. 5, 2020).................................. 11

*Gym Door Repairs, Inc. v. Repairs*,
No. 15-CV-4244 (JGK) (OTW), 2023 U.S. Dist. LEXIS 58608 (S.D.N.Y. Mar. 31, 2023) ..... 5

*Hudson Furniture v. Mizrahi*,
No. 20-CV-4891 (JAV) (RWL), 2025 U.S. Dist. LEXIS 97092 (S.D.N.Y. May 21, 2025).... 17

*Hughes v. Benjamin*,
No. 17-cv-6493 (RJS), 2020 U.S. Dist. LEXIS 139698 (S.D.N.Y. Aug. 4, 2020)..................... 6

*In re HPL tech., Inc., Secs. Litig.*,
366 F. Supp. 2d 912 (N.D. Cal. 2005) ............................................................. 13

*Ingenuity13 LLC v. Doe*,
651 Fed. Appx. 716 (9th Cir. 2016)............................................................. 3, 7, 8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 1978 (2016)......................................................................................... 3

*Latin Am. Music Co. v. Spanish Broad. Sys.*,
No. 13-cv-1526 (RJS), 2020 U.S. Dist. LEXIS 96084 (S.D.N.Y. June 1, 2020) ..................... 16

*Lazer v. Williams*,
No. A-19-7971-C (Clark Cty., Nev. Feb. 17, 2022) ........................................ 10

RANDAZZA | LEGAL GROUP

*Lilly v. City of N.Y.*,
934 F.3d 222 (2d Cir. 2019)...................................................................................................5

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
764 Fed. Appx. 39 (2d Cir. 2019)...........................................................................................4

*Mag Jewelry Co. v. Cherokee, Inc.*,
496 F.3d 108 (1st Cir. 2007).................................................................................................3

*Malibu Media LLC v. Doe,*
No. 15-cv-4369 (AKH), 2015 U.S. Dist. LEXIS 87751 (S.D.N.Y. July 6, 2015)......................7

*Mallery v. NBC Universal, Inc.*,
331 Fed. Appx. 821 (2d Cir. 2009)........................................................................................7

*MCM Grp. 22 LLC v. Perry*,
2026 U.S. Dist. LEXIS 22355 (S.D.N.Y. Feb. 3, 2026)........................................................2, 6

*Millea v. Metro-North R.R. Co.*,
658 F.3d 154 (2d Cir. 2011)..................................................................................................4

*N.G.B. v. New York City Dep't of Educ.*,
No. 21-cv-11211 (LJL), 2023 U.S. Dist. LEXIS 55632 (S.D.N.Y. Mar. 30, 2023)..................13

*NLRB v. Schmidt*,
No. 23-MC-51 (VEC), 2024 U.S. Dist. LEXIS 38105 (S.D.N.Y. Mar. 5, 2024).....................13

*Nwosuocha v. Glover*,
No. 21 Civ. 04047 (VM), 2025 U.S. Dist. LEXIS 30550 (S.D.N.Y. Feb. 20, 2025) ...........5, 17

*O'Neill v. Flawless Kitty LLC*,
No. 23-CV-5611 (LAK) (JLC), 2024 U.S. Dist. LEXIS 65235 (S.D.N.Y. Apr. 10, 2024) .......4

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
572 U.S. 545 (2014)..............................................................................................................4

*Porto v. Guirgis*,
659 F. Supp. 2d 597 (S.D.N.Y. 2009) ...................................................................................5

*Recouvreur v. Carreon*,
940 F. Supp. 2d 1063 (N.D. Cal. 2013) ...............................................................................13

*Reiter v. MTA N.Y.C. Transit Auth.*,
457 F.3d 224 (2d Cir. 2006)..................................................................................................4

*Righthaven, LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013) ..........................................................................................7, 10

RANDAZZA | LEGAL GROUP

*Righthaven, LLC v. Hoehn*,
792 F. Supp. 2d 1138 (D. Nev. Jun. 20, 2011) ...................................................... passim

*Rivera v. Rivera*,
No. 5:10-CV-01345-LHK, 2011 U.S. Dist. LEXIS 93704 (N.D. Cal. Aug. 22, 2011)............ 13

*Sub—Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*,
No. 13-cv-2548 (KMW), 2014 U.S. Dist. LEXIS 45625 (S.D.N.Y. Apr. 1, 2014) ................. 17

*TCA TV Corp. v. McCollum*,
839 F.3d 168 (2d Cir. 2016)...................................................................................... 6, 7

*Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*,
731 F. Supp. 2d 937 (N.D. Cal. 2010) ....................................................................... 13

*Tobinick v. Novella*,
884 F.3d 1110 (11th Cir. 2018) ........................................................................... 11, 17

*Tobinick v. Novella,*
2017 U.S. Dist. LEXIS 197048 (S.D. Fla. Nov. 29, 2017)............................................. 11

*United States ex rel. Carranza v. Guaranteed Rate, Inc.*,
No. 1:17-cv-637 (MAD-DJS), 2021 U.S. Dist. LEXIS 24997 (N.D.N.Y. Feb. 10, 2021)......... 8

*Universal City Studios, Inc. v. Reimerdes*,
82 F. Supp. 2d 211 (S.D.N.Y. 2000) ......................................................................... 15

*Vasquez v. Libre by Nexus, Inc.*,
No. 17-cv-00755 CW, 2022 U.S. Dist. LEXIS 180791 (N.D. Cal. Oct. 3, 2022).................... 12

*Video-Cinema Films, Inc. v. CNN, Inc.*,
No. 98-CV-7128 (BSJ), 2003 U.S. Dist. LEXIS 4887 (S.D.N.Y. Mar. 30, 2003)................. 6, 8

*Viva Video, Inc. v. Cabrera*,
9 F.App'x 77 (2d Cir. 2001) ....................................................................................... 5

*Webber v. Dash*,
No. 19-CV-610 (RWL), 2022 U.S. Dist. LEXIS 125124 (S.D.N.Y. July 14, 2022)................ 17

*Young v. Polo Retail, LLC*,
2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ............................................... 13

**STATUTES**

15 U.S.C. § 6851.......................................................................................................... 9

17 U.S.C. § 505.................................................................................................... 1, 3, 17

17 U.S.C. §§ 101-810 ........................................................................................... passim

RANDAZZA | LEGAL GROUP

NY Civil Rights Law § 52-b ....................................................................................................... 9

NYC Administrative Code § 10-180 ........................................................................................... 9

**OTHER AUTHORITIES**

Marc J. Randazza, "Freedom of Expression and Morality-Based Impediments to the Enforcement of Intellectual Property Rights," 16 Nev. L.J., 107 (Jan. 15, 2016) .................... 15

Matthew Sag, Copyright Trolling, An Empirical Study, 100 Iowa L. Rev. 1105, 1108 (2015) .... 7

**RULES**

Fed. R. Civ. P. 11 ...................................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 6

RANDAZZA | LEGAL GROUP

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Defendants Lyndon Perry and Criston A. Violette ("Defendants") move for Attorneys' Fees, as the prevailing parties under the Copyright Act, 17 U.S.C. § 505. Fees should be awarded to further the ends of the Copyright Act, to promote access to justice, and to act as a deterrent against future cases that seek to stifle commentary by mis-using intellectual property law.

Plaintiff MCM Group 22 filed a claim against obvious fair use, without Plaintiff having any interest in the sale or license of the work. Plaintiff was, instead, seeking to capitalize on a single still frame of a video, when that frame was used for commentary. This was improper and fees should be awarded to deter future abusive copyright misuse, but the Court should also consider that Mr. Perry could not have afforded to defend himself without the knowledge that § 505 would likely step in. A denial of fees or a serious reduction of them will dissuade other firms from providing access to justice for underfunded defendants.

## 1.0    INTRODUCTION AND FACTUAL BACKGROUND

Perry ("Defendant") published a Tweet containing a single frame from a pornographic video which Plaintiff MCM Group 22, LLC ("MCM") claims to own. That frame featured a cryptocurrency firm's financial executive. Perry's post commented on statements regarding the executive's cryptocurrency company, Celsius Network, LLC, as follows:



RANDAZZA | LEGAL GROUP

This collage is the image that appeared in his Tweet:



In granting Perry's Motion to Dismiss, the Court found that MCM could not state a claim for copyright infringement because "a reasonable observer would understand the Tweet as a commentary on Celsius with a markedly different purpose from the original pornographic video." Dkt. 38 at 8. The transformative nature of Perry's use was of no significance to MCM, however. In arguing that Perry's use of a single non-pornographic frame was not fair, MCM claimed that literally *any* portion of the video showing the cryptocurrency firm's executive's face was the "heart of the work." Perry's collage, however, was no substitute for the original video. *MCM Grp. 22 LLC v. Perry*, 2026 U.S. Dist. LEXIS 22355, at *14 (S.D.N.Y. Feb. 3, 2026). MCM was not even trying to further the purpose of the Copyright Act; rather, it was on a campaign to weaponize

RANDAZZA | LEGAL GROUP

copyright law. MCM's motive was explicitly to target all uses of the work, no matter how lawful, and to extract settlement payments. Though its shape may be different, MCM's business model is indistinguishable from classic "copyright trolls," companies that buy up copyright registrations *en masse* and sue anyone using such works for the purpose of getting quick settlements. *See, e.g., Righthaven, LLC v. Hoehn*, 792 F. Supp. 2d 1138 (D. Nev. Jun. 20, 2011) (copyright troll plaintiff sought to acquire the right to sue over copyrights it did not properly own, despite the use being fair use); *Ingenuity13 LLC v. Doe*, 651 Fed. Appx. 716 (9th Cir. 2016) (part of infamous Prenda lawsuits where the true party in interest attempted to hide themselves, while enriching themselves, by suing over porn movies that nobody wanted to buy).

MCM abused the Copyright Act to try and silence free expression, and the Court should award attorneys' fees to further the purposes of the Act, deter similar abuses in the future, and to ensure that access to justice remains available to defendants. Defendants did nothing wrong; Plaintiff did. Plaintiff should pay for the defense.

## 2.0    LEGAL STANDARDS

### 2.1    Entitlement to Fees Under the Copyright Act

Defendants are prevailing parties entitled to fees. *See* 17 U.S.C. § 505. "Such fees are to be awarded to defendants on an 'evenhanded' basis with plaintiffs." *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 122 (1st Cir. 2007) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Factors to be considered include "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty*, 510 U.S. at 534 n.19. While the unreasonableness of the losing party's arguments is the primary focus, "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 1978, 208 (2016). Among these is whether an award of fees might "deter …overaggressive assertions of copyright claims." *Id*. at 209. Furthermore, the Second Circuit has

RANDAZZA | LEGAL GROUP

observed that the standards for awarding fees under the Copyright Act overlap significantly with the test for awarding fees under the Lanham Act for "exceptional" cases. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 Fed. Appx. 39, 42 (2d Cir. 2019). This means a fee award is appropriate where the case "'is one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Id.* at 42 (*quoting Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). This case certainly stands out, where fair use was evident even on the face of the complaint and where Mr. Violette was named a defendant without any rhyme or reason.

### 2.2 Determining Reasonable Fees

As a general matter, the "starting point" in determining reasonable attorneys' fees is "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar calculation "creates a 'presumptively reasonable fee[.]'" *Id.* quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).

In determining a reasonable lodestar amount, a court "should consider the prevailing community's rates in the district in which it sits." *O'Neill v. Flawless Kitty LLC*, No. 23-CV-5611 (LAK) (JLC), 2024 U.S. Dist. LEXIS 65235, *8 (S.D.N.Y. Apr. 10, 2024) (citing *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006)). The court should compare the requested hourly rate to prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). And for determining whether the claimed number of hours was reasonable, the court should consider if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures" without the benefit of hindsight. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

In addition to the above overarching concerns, a court should consider the following factors holistically:

(1)     the time and labor required;

RANDAZZA | LEGAL GROUP

(2)     the novelty and difficulty of the questions;

(3)     the level of skill required to perform the legal services properly;

(4)     the preclusion of employment by the attorney due to acceptance of the case;

(5)     the attorney's customary hourly rate;

(6)     whether the fee is fixed or contingent;

(7)     the time limitations imposed by the client or the circumstances;

(8)     the amount involved in the case and the results obtained;

(9)     the experience, reputation, and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)    the nature and length of the professional relationship with the client; and

(12)    awards in similar cases.

*See Lilly v. City of N.Y.*, 934 F.3d 222, 228 (2d Cir. 2019); *Gym Door Repairs, Inc. v. Repairs*, No. 15-CV-4244 (JGK) (OTW), 2023 U.S. Dist. LEXIS 58608, *15-16 (S.D.N.Y. Mar. 31, 2023). Fees incurred in preparing a fee motion (known as "fees on fees") are compensable. *See Nwosuocha v. Glover*, No. 21 Civ. 04047 (VM), 2025 U.S. Dist. LEXIS 30550, *26 (S.D.N.Y. Feb. 20, 2025).  These factors all demonstrate that an award of $83,760.00 is appropriate.

**3.0     ARGUMENT**

**3.1     Defendants are Entitled to Attorneys' Fees**

While the Court may undertake a holistic analysis to determine whether to award fees, there are three considerations that favor a fee award to Defendants: MCM's claim was objectively unreasonable, it brought this claim for a purpose specifically at odds with the purpose of the Copyright Act, and access to justice will suffer if fees are not awarded.

**3.1.1   Plaintiff's Infringement Claim was Objectively Unreasonable**

A lawsuit or litigation position is objectively unreasonable if it has "no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F.App'x 77, 80 (2d Cir. 2001) (summary order); *see also*, *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) ("A copyright infringement claim is

RANDAZZA | LEGAL GROUP

objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of legal or factual basis"). This is one of the rare cases where fair use was such an obvious defense that dismissal was appropriate on a 12(b)(6) motion. As the Court observed, "[w]hile fair use is an affirmative defense most frequently resolved at summary judgment, the Second Circuit 'has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim.'" *MCM Grp. 22*, at \*5-6 (*quoting TCA TV Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)). The Court concluded that 3 of the 4 fair use factors obviously favored Perry and that none of the factors favored Plaintiff, such that "the defense of fair use is clearly established by the complaint, the documents incorporated by reference, and the documents integral to it." Dkt. 38 at 12-13. There is no suggestion that this was a close call. And, as the Court correctly observed, Plaintiff barely provided any authority to support its fair use arguments. The allegedly "commercial" (and purely incidental, if so) nature of Perry's use did nothing to affect the first factor, there was no support for Plaintiff's unreasonable argument on the third factor that any given frame from a 46-minute video showing her face constituted the "heart of the work," and the only case Plaintiff provided for his fourth factor argument was easily distinguishable, and out of circuit to boot. Dkt. 38 at 6-8, 10-12.

MCM did not have any good-faith basis for arguing against fair use, and it was sanctionable under Rule 11 for MCM to continue prosecuting its claim. The Court would be in good company awarding fees here. For example, the court in *Video-Cinema Films, Inc. v. CNN, Inc.*, No. 98-CV-7128, 7129, 7130 (BSJ), 2003 U.S. Dist. LEXIS 4887, \*8-13 (S.D.N.Y. Mar. 30, 2003), found a plaintiff's position in arguing against fair use objectively unreasonable where (1) the defendant's allegedly infringing work (an obituary) used less than 1% of the plaintiff's film, despite the plaintiff claiming this constituted the "heart" of the film; and (2) the plaintiff failed to show the existence of any market for licensing clips for use in obituaries existed. Again dealing with fair use, the court in *Hughes v. Benjamin*, No. 17-cv-6493 (RJS), 2020 U.S. Dist. LEXIS 139698, \*7-8 (S.D.N.Y. Aug. 4, 2020), awarded fees under the Copyright Act to a defendant who clipped 2 minutes from the plaintiff's YouTube video to use in his own video criticizing that work because

the plaintiff's "claims were objectively unreasonable – a fact that was clear from the face of the complaint and the videos at the heart of the dispute." And the court in *Mallery v. NBC Universal, Inc.*, 331 Fed. Appx. 821, 822-23 (2d Cir. 2009), found a district court acted properly in awarding fees after granting a summary judgment motion—in which it considered only matters within or referenced by the complaint—where "the profound dissimilarity between [the plaintiffs'] works and [the defendant's work] was indeed 'obvious.'" *See also Righthaven, supra* (finding fair use in a motion to dismiss) (vacated in part on other grounds in 716 F.3d 1166 (9th Cir. 2013).

### 3.1.2 Plaintiff's Suit is an Abuse of Copyright That Must Be Deterred

MCM misused and abused the Copyright Act without any reasonable consideration for Perry's fair use and in haphazardly suing Violette. In *Fogerty*, the Supreme Court recognized "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." 510 U.S. at 524. An award of attorneys' fees to a prevailing defendant furthers these goals where the award will compensate the defendant "for their defense of an action that should not have been brought in the first place." *TCA TV Corp. v. McCollum*, No. 15 Civ. 4325 (GBD) (JCF), 2017 U.S. Dist. LEXIS 86138, *40-41 (S.D.N.Y. June 5, 2017) (granting fees under Copyright Act where plaintiff did not have standing to bring infringement claim). MCM, acting like a copyright troll, should not have brought this case.

Copyright trolls are "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service." *Malibu Media LLC v. Doe, No*. 15-cv-4369 (AKH), 2015 U.S. Dist. LEXIS 87751, *4-5 (S.D.N.Y. July 6, 2015) (quoting Matthew Sag, Copyright Trolling, An Empirical Study, 100 Iowa L. Rev. 1105, 1108 (2015)). A copyright troll bullies poorly funded defendants into compliance and to make a payment, even when the case is unreasonable. *See Hoehn*, *supra*, 792 F. Supp. 2d 1138 (D. Nev. Jun. 20, 2011) (copyright troll plaintiff sought to acquire the right to sue over copyrights it did not properly own, despite the use being fair use); *Ingenuity13 LLC*, *supra*, 651 Fed. Appx. 716; *Golden v. Michael Grecco Prods.*, 524 F. Supp. 3d 52, 65 (E.D.N.Y. Mar. 9, 2021) (defining "copyright

RANDAZZA | LEGAL GROUP

troll" as "a term that refers to someone who scours the internet for unlicensed use of copyrighted material for the purpose of extracting settlements"). Federal courts are familiar with taking copyright trolls to account for their abusive schemes. *See Hoehn, supra*, 792 F. Supp. 2d 1138; *Ingenuity13 LLC*, *supra*, 651 Fed. Appx. 716. MCM's suit bears the hallmarks of copyright trolling; it is only out to weaponize its alleged copyrights, not to market them.

Attempting to use the Copyright Act as a method of leveraging a settlement to resolve a meritless claim shows improper motivation that weighs in favor of a fee award. *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98-CV-7128 (BSJ), 2003 U.S. Dist. LEXIS 4887, *15 (S.D.N.Y. Mar. 31, 2003) ("Plaintiff's conduct was nothing more than an obvious effort to use the Copyright Act to secure payment from Defendants for their fair use of the film footage. As such, Plaintiff's motivation was improper"). This suit was not brought for the purpose of encouraging the development of creative works. MCM claimed that it was using the Copyright Act as a reputation management tool, and this is improper. However, MCM was never satisfied with just taking down the posts. From the outset of this case, MCM was attempting to extract an undeserved payment. Shortly after filing its Complaint, MCM sent a demand to Perry and Violette for, *inter alia*, $50,000 in damages (a figure that had no connection to any amount it could have won as actual damages) plus $18,000 in attorneys' fees. *See* August 18, 2022, email, attached as **Exhibit 1**.[1] In response, Perry's counsel told MCM that the case was meritless and that pursuing the case would go poorly. *See* August 22, 2022, letter from Jay Wolman to Erik Dykema, attached as **Exhibit 2**. MCM continued to make the conclusory statement that Perry's use was not a fair use. *See* August 22-23, 2022, emails between counsel, attached as **Exhibit 3**. After settlement discussions stalled, Perry's counsel again suggested that MCM voluntarily dismiss its case to reduce MCM's fee liability, with a request to pay Perry's fees (which at that point were much

---

[1] Courts may consider settlement discussions in deciding a motion for attorneys' fees so long as they are not used as evidence of concessions in settlement negotiations. *United States ex rel. Carranza v. Guaranteed Rate, Inc.*, No. 1:17-cv-637 (MAD-DJS), 2021 U.S. Dist. LEXIS 24997, *8-9 (N.D.N.Y. Feb. 10, 2021). Here, they are to establish the Plaintiff's unreasonableness and the reasonableness of the Defendants' fee request.

RANDAZZA | LEGAL GROUP

lower than what is requested now). *See* February 16, 2023, letter from Jay M. Wolman to Erik Dykema, attached as **Exhibit 4**. MCM again chose to continue prosecuting its doomed case. Perry's counsel sent yet another letter on March 20, 2023, explaining that it was pointless to draw the matter out with discovery (as MCM was seeking to weaponize the expense of discovery) since fair use was a foregone conclusion, and the discovery process would have been adverse to MCM and the woman whose reputation was allegedly affected. *See* March 20, 2023, Letter from Jay M. Wolman, attached as **Exhibit 5**. Even after having the benefit of multiple lengthy explanations of how Perry's use was obviously fair, MCM refused to back down, and in fact made another exorbitant demand for $25,000. *See* June 13, 2023, Letter from Erik Dykema. (**Exhibit 6**).

This is aside from the issue that there is no indication in the record, not even in the Complaint, that the woman in the video is aware this suit even exists or that she authorized Plaintiff to bring it. MCM, on the other hand, is indeed a copyright troll. While it is possible to have sympathy for the woman, she is not the plaintiff and, even if she were, the Court must award fees here to establish a sufficient deterrent to similar abusive suits that weaponize the Copyright Act to punish fair uses. Otherwise, the Court will signal its approval of using the Copyright Act as a tool of censorship divorced from its intended purpose.

MCM previously argued that a fee award would be improper because there would be no interest in deterring "victims of sex crimes from attempting, in good faith . . . to control the ongoing use of those works to remove them from the market." Dkt. 32 at 27. But this is a *non sequitur*. If this were the real interest here, there are strong federal and state laws that incentivize the removal of non-consensual pornography,[2] but the *Copyright Act* is not one of them. Of course, the single non-pornographic frame at issue would never qualify under those statutes. So, MCM turned to an attempt to abuse copyright and its threat of fees and damages to extract a settlement. And even worse, MCM frivolously dragged Mr. Perry's father-in-law, Mr. Violette, into the matter to hold a family member potentially hostage so that MCM and its lawyers could cash in.

---

[2] *See, e.g.,* 15 U.S.C. § 6851; NY Civil Rights Law § 52-b; NYC Administrative Code § 10-180.

RANDAZZA | LEGAL GROUP

The Copyright Act is solely concerned with incentivizing the creation of artistic works, and there is no conceivable argument that MCM was attempting to further such aims by bringing an obviously meritless infringement claim. The Court should deter future attempts to abuse the Copyright Act in this manner by awarding Defendants their attorneys' fees, as failing to impose a fee award would "invite others to bring similarly unreasonable actions without fear of any consequences." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359-40 (S.D.N.Y. 2006). And the Court should not be concerned that such an award would deter victims of sex trafficking from trying to remove evidence of their victimization because (1) the actual victim of sex trafficking is not a party to this action and there is no indication that she authorized the filing of this suit or is even aware of its existence; and (2) such victims have alternative methods of removing such evidence – methods that were actually designed to effect such ends. Notably, MCM's counsel acknowledged that Perry offered to delete the tweet and agree not to repost or talk about the woman, but that was not enough for MCM—it wanted a payday. (**Exhibit 1**, Aug. 18, 2022 e-mail). Moreover, there is nothing in the record suggesting that she would get any of the money that MCM wanted. Rather, it seems that MCM and its counsel are in a joint moneymaking enterprise, much like the disreputable Prenda and the *Righthaven* schemes. **Exhibits 5 & 6**.

### 3.1.3 Access to Justice

Awarding attorneys' fees to prevailing defendants in cases like this one incentivizes competent counsel to represent litigants who otherwise could not afford representation, thereby bridging the access-to-justice gap and enabling the defense of rights that might go surrendered due to financial barriers to being able to retain counsel. Fee-shifting encourages attorneys to take meritorious cases on behalf of defendants of moderate means defendants by compensating them at market rates upon success. For example, defense counsel in this case specifically provides access to justice for moderate-means defendants because courts have typically granted fees. *See, e.g.*, *Righthaven v. Hoehn*, Case No. 2:11-cv-00050 (D. Nev. Jun. 6, 2013) (copyright fair use case); *Lazer v. Williams*, Case No. A-19-7971-C (Clark Cty., Nev. Feb. 17, 2022) (low income

RANDAZZA | LEGAL GROUP

defendant in defamation case, fees awarded); *Tobinick v. Novella,* 2017 U.S. Dist. LEXIS 197048 (S.D. Fla. Nov. 29, 2017) *aff'd* 884 F.3d 1110 (11th Cir. 2018) (Misuse of Lanham Act to stifle speech, and fees awarded to defendant who could not afford full rates); *Guo v. Cheng*, Case No. A-18-779172-C (8th Jud. Dist., Nev. Jun. 5, 2020) (billionaire businessman sued independent journalist who could not afford representation, fee shifting after speech rights were defended).

In this case, Defendants were either completely innocent of doing anything at all (Violette) or had simply engaged in constitutionally protected commentary. Failure to award fees here will strongly discourage attorneys from being willing to step in to defend an outgunned defendant in future cases. Meanwhile, when fees are granted in cases like these, it creates not just an incentive, but competition among attorneys to defend those who could not afford to pay full freight.

### 3.2    Defendants' Requested Fees are Reasonable

Defendants seek compensation for work performed by three Randazza Legal Group, PLLC ("RLG") attorneys: Marc J. Randazza, Jay M. Wolman, and Alex Shepard, as well as paralegal Cassidy Curran. Declaration of Marc J. Randazza ("Randazza Dec."), attached as **Exhibit 7**, at ¶¶ 5-7. Other attorneys and paralegals have worked on this matter, but RLG does not seek their fees as a matter of billing discipline. *Id.* at ¶ 11. The compensable hours recorded by RLG's attorneys and paralegals, along with their customary hourly rates and amounts billed, are as follows:

| Timekeeper | Billable Hours | Hourly Rate | Amount Sought |
|---|---|---|---|
| Marc J. Randazza | 12.4 | $1,000 | $12,400.00 |
| Jay M. Wolman | 75.4 | $750 | $56,550.00 |
| Alex J. Shepard | 13 | $750 | $9,750.00 |
| Cassidy Curran | 25.3 | $200 | $5,060.00 |
| **Totals** | **126.1** | | **$83,760.00** |

Randazza Dec. at ¶¶ 7-8; spreadsheet of time entries, attached as **Exhibit 8**. To limit additional briefing on fees incurred after the filing of this motion, RLG predicts it will incur an additional $15,000 in fees in reviewing MCM's opposition to this motion, preparing a reply brief, and arguing

RANDAZZA | LEGAL GROUP

the motion. Randazza Dec. at ¶ 14. If MCM does not oppose this motion, however, then there will be no need to incur such fees.

### 3.2.1 Time and Labor Required, Novelty and Difficulty, and Skill Needed

The Court dismissed this case on fair use grounds, and as noted above and by the Court previously, this was not a close call. That does not mean victory was a foregone conclusion regardless of counsel, however. Perry still had to provide thorough briefing on fair use and respond to novel (to put it charitably) arguments MCM made in response. It is also rare for a case to be decided on fair use grounds at the motion to dismiss stage, which required briefing and research beyond what the average attorney could provide.

Furthermore, to provide a fulsome defense, RLG additionally needed to research and brief MCM's lack of ownership, which involved research into some relatively obscure and undeveloped issues of copyright law. The fact that the Court did not find it necessary to rule on this issue should not affect Perry's ability to recover associated fees. This is in addition to the time RLG spent responding to the unsupported claim that Criston A. Violette was somehow an alter ego of Perry.[3] *See* Dkt. 14, 17-18. These factors thus weigh in Defendants' favor.

### 3.2.2 Preclusion of Employment Due to Acceptance of Case

Defendants' counsel is a small firm that can only take a limited number of cases. Randazza Dec. at ¶ 15. Taking this case precluded the firm from accepting other work which would have filled the gap. *Id*. This factor thus weighs in favor of the reasonableness of the requested fee award.

### 3.2.3 Customary Hourly Rate

The Adjusted Laffey Matrix, attached as **Exhibit 9**,[4] provides some guidance as to customary rates for attorneys of comparable experience to Defendants' counsel. Mr. Randazza

---

[3] As the only claims lodged against Violette were that he was an alter ego of Perry, Perry's victory means that, as a matter of law, Violette also is a prevailing party, as it is *res judicata* for any similar claim against him, even though the prior voluntary dismissal was not explicitly with prejudice.

[4] The Laffey Matrix has been used by courts as a guidepost in determining the reasonableness of attorneys' fees. *See, e.g., Vasquez v. Libre by Nexus, Inc.*, No. 17-cv-00755 CW, 2022 U.S. Dist. LEXIS 180791, at *46 n.11 (N.D. Cal. Oct. 3, 2022) ("The Laffey Matrix is 'a widely recognized

bills at a rate of $1,000 per hour and has 24 years of experience as an attorney. Randazza Dec. at ¶ 21. According to the Adjusted Laffey Matrix, an attorney of Mr. Randazza's experience is able to bill at a rate of $997 to $1,227[5] per hour, which is higher than his hourly rate.

Attorney Jay M. Wolman's hourly rate is $750 per hour and he has 24 years of experience as an attorney. Randazza Dec. at ¶ 22. According to the Adjusted Laffey matrix, an attorney of Mr. Wolman's experience is able to bill at a rate of $997 to $1,227 per hour, which is significantly higher than his hourly rate.

Attorney Alex J. Shepard's hourly rate is $750 per hour and he has over twelve years of experience as an attorney. Randazza Dec. at ¶ 23. According to the Adjusted Laffey matrix, an attorney of Mr. Shepard's experience is able to bill at a rate of $1,019 per hour, which is significantly higher than his hourly rate.

In case there are any misgivings about applying the Laffey Matrix, this Court has approved of using its successor, the Fitzpatrick Matrix, attached as **Exhibit 10**.[6] *See NLRB v. Schmidt*, No. 23-MC-51 (VEC), 2024 U.S. Dist. LEXIS 38105, *7-8 (S.D.N.Y. Mar. 5, 2024) (applying Fitzpatrick Matrix). Per the Fitzpatrick Matrix, Attorneys Randazza and Wolman's reasonable rate is $692/hour to $885/hour and Attorney Shepard's is $754. The Fitzpatrick Matrix rates for Attorneys Wolman and Shepard are within or lower than their customary rates, and Attorney

---

compilation of attorney and paralegal rates based on various levels of experience' upon which courts, including those in this district, routinely rely to determine the reasonableness of attorney hourly rates.") (quoting *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*., 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010); *Rivera v. Rivera*, No. 5:10-CV-01345-LHK, 2011 U.S. Dist. LEXIS 93704, at *5-6 (N.D. Cal. Aug. 22, 2011); *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *20 (N.D. Cal. Mar. 28, 2007) (noting that "[o]ne reliable source for rates that vary by experience levels is the *Laffey* matrix used in the District of Columbia"); *In re HPL tech., Inc., Secs. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005) (finding that Laffey Matrix is a "well-established objective source for rates that vary by experience"); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013). However, district courts in this Circuit have not applied the Laffey Matrix to determine the rates of lawyers practicing in New York City. *See N.G.B. v. New York City Dep't of Educ.*, No. 21-cv-11211 (LJL), 2023 U.S. Dist. LEXIS 55632, *37 (S.D.N.Y. Mar. 30, 2023).
[5] As this case started in 2022 and was only recently dismissed, the hourly rate under the Laffey Matrix varies depending on when the work was performed.
[6] Available at: https://www.justice.gov/usao-dc/media/1395096/dl?inline.

RANDAZZA | LEGAL GROUP

Randazza's particular experience and reputation in intellectual property and free speech cases justifies a rate slightly higher than what the Fitzpatrick Matrix calls for.

The Court need not limit its inquiry to these matrices; MCM has already weighed in on this question. Shortly after filing its Complaint, MCM sent a demand to Perry and Violette for, *inter alia*, $50,000 in damages plus $18,000 in attorneys' fees. August 18, 2022, email, attached as **Exhibit 1**. If MCM's counsel was seeking $18,000 for the preparation of a complaint that pleaded this case to failure, it is certainly reasonable for the defense to seek approximately 4 times that to fully research and brief a win. It could not have taken MCM's counsel a significant amount of time to prepare a 10-page complaint, and so the hourly rate it used as a basis for its settlement demand was most likely over $1,000/hour. RLG's rates here are in line with or below that figure. This factor weighs in Defendants' favor.

### 3.2.4   Whether Fee is Fixed or Contingent

RLG charged Perry and Violette at an hourly rate for their work, but provided a 50% discount as a partial contingency, on the understanding that RLG would seek recovery of its full rates if it obtained a fee award. Randazza Dec. at ¶ 12. RLG offers this kind of arrangement where a client's free speech rights are at stake but entitlement to attorneys' fees is not guaranteed. *Id*. Due to the partially contingent nature of this fee arrangement, this weighs in Defendants' favor.

### 3.2.5   Time Limitations

There were no particular time limitations imposed by this case, as RLG managed to secure dismissal without undergoing the expense of discovery. This factor is thus neutral.

### 3.2.6   Amount Involved and Results Obtained

In August 2022, Plaintiff sent a demand for $50,000 in damages and $18,000 in fees, as well as removal of Perry's protected speech. The requested fees are thus commensurate with Defendants' financial exposure (as MCM reckoned), to say nothing of this case's free speech stakes. This factor thus weighs in Perry's favor.  In fact, the fees sought ($83,760.00) are not much more than what MCM wanted to take from him financially.

RANDAZZA | LEGAL GROUP

### 3.2.7 Experience, Reputation and Ability of Attorneys

Marc Randazza's hourly rate is justified, as he is an experienced attorney who specializes in intellectual property and free speech litigation and is licensed to practice in the states of Nevada, California, Arizona, Florida, and Massachusetts as well as a multitude of federal courts. *See* Randazza Dec. at ¶ 17.

Mr. Randazza is an internationally recognized expert on free speech[7] and intellectual property issues. Randazza Dec. at ¶ 18. He has published numerous law review articles on free speech issues and intellectual property issues. *See CV* of Marc Randazza, attached as **Exhibit 11**. Randazza has been a commentator for both Fox News and CNN on Free Speech issues. *See* Randazza Dec. at ¶ 19. Randazza holds a JD from Georgetown University, a Master's in Mass Communications from the University of Florida (with a media/First Amendment law focus), and an LL.M. in International Intellectual property law from the University of Turin, Italy, where he wrote and published a thesis on international intellectual property law and freedom of expression issues. *See* **Exhibit 11**; *see also* Marc J. Randazza, "Freedom of Expression and Morality-Based Impediments to the Enforcement of Intellectual Property Rights," 16 Nev. L.J., 107 (Jan. 15, 2016). He also remains an annual lecturer in that program. Randazza has been a practicing attorney for 24 years. *See* Randazza Dec. at ¶¶ 20-21. Randazza has taught First Amendment law and copyright law at the law school level. *See* **Exhibit 11**.

Attorney Jay M. Wolman has a JD from Georgetown University Law Center, is licensed in Connecticut, Massachusetts, New York, and D.C., and has 24 years of litigation experience. Randazza Dec. at ¶ 22. He has over a decade of experience with intellectual property and free speech cases. *Id*.

Attorney Alex J. Shepard earned his JD from Washington University School of Law, is licensed to practice in Nevada, California, and Washington, and has over 12 years of experience,

---

[7] While this is a copyright case, the defense of fair use is fundamentally a free speech issue. *See, e.g., Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000) (acknowledging tension between copyright law and free speech, and that the fair use doctrine bridges the gap between the two).

RANDAZZA | LEGAL GROUP

having spent almost his entire career working on free speech and intellectual property cases. Randazza Dec. at ¶ 23. He has also been interviewed on issues of free speech law. *Id*.; Spencer Cornelia, "I'm Being Sued By a Fake Guru for $2 MILLION," YouTube (May 15, 2023).[8]

Cassidy Curran is a paralegal with 6 years of experience. Randazza Dec. at ¶ 24.

The experience, skill, and ability of Defendants' counsel led to complete success for Defendants, before undergoing the time and expense of discovery, with entitlement to an award of costs and fees. Accordingly, the experience, reputation, and ability of Defendants' attorneys weigh in favor of the reasonableness of the requested fees.

### 3.2.8 Undesirability of the Case

While RLG will not disclose particulars, Defendants were poorly funded and would not have been able to retain RLG at its customary hourly rates. Randazza Dec. at ¶ 12. Most attorneys would not have undertaken the risk RLG did by providing a partial contingency arrangement with Defendants. Furthermore, the case involves pornography and allegations of sex trafficking, and some clients will not even hire lawyers who do work that touches either of these subjects. This factor thus weighs in Defendants' favor.

### 3.2.9 Nature and Length of Relationship with Client

Defendants and RLG do not have a pre-existing relationship. RLG was thus required to spend time getting up to speed with who Defendants are and how they operate. Randazza Dec. at ¶ 16. This factor thus weighs in Defendants' favor.

### 3.2.10 Awards in Similar Cases

The hourly rates, total hours worked, and total fee award requested are all in-line with other fee awards within this District. *See Latin Am. Music Co. v. Spanish Broad. Sys.*, No. 13-cv-1526 (RJS), 2020 U.S. Dist. LEXIS 96084, *18 (S.D.N.Y. June 1, 2020) (finding hourly rate of $750 for partner reasonable in copyright infringement case, and awarding $824,562.24 in fees); *Sub—Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, 13-cv-2548 (KMW), 2014

---

[8] Available at: https://www.youtube.com/watch?v=EkrwBYl2hiI

RANDAZZA | LEGAL GROUP

U.S. Dist. LEXIS 45625, *24-25 (S.D.N.Y. Apr. 1, 2014) (collecting cases and approving rates of $785 for a partner who specializes in copyright law, and awarding $42,653 in Copyright Act fees); *Hudson Furniture v. Mizrahi*, No. 20-CV-4891 (JAV) (RWL), 2025 U.S. Dist. LEXIS 97092, *17 (S.D.N.Y. May 21, 2025) (finding 164 hours reasonable for three-month period in which plaintiff's counsel filed a complaint and motion for preliminary injunction, and opposed a motion to dismiss, and awarding $42,653 in Copyright Act fees for work performed in this 3-month period); *Webber v. Dash*, No. 19-CV-610 (RWL), 2022 U.S. Dist. LEXIS 125124, *25-27 (S.D.N.Y. July 14, 2022) (finding 218.3 hours in connection with copyright claim to be reasonable and awarding $112,055 in fees under the Copyright Act); *Glover, supra*, 2025 U.S. Dist. LEXIS 30550 at *15-16 (approving partner rate of $750/hour in copyright case and awarding aggregate total of $286,475.10 in fees).

In a case involving a copyright troll that RLG litigated, RLG secured an award of $34,045.50 under the Copyright Act. *See Righthaven v. Hoehn*, No. 2:11-cv-00050-PMP-RJJ, Doc. No. 43 (Aug. 15, 2011). RLG's attorneys now have more than a decade of additional experience and there's been over a decade of inflation in legal fees, and so a larger award here against another copyright troll is warranted. And in a trademark infringement case, which uses the same holistic *Octane Fitness* standard applicable to Copyright Act fee requests, RLG's attorneys secured a fee award of $223,598.75. *Tobinick v. Novella*, 884 F.3d 1110, 1116, 1119 (11th Cir. 2018). This factor weighs in Perry's favor.

The total bill is well under half of the awards found reasonable.

## 4.0   CONCLUSION

Plaintiff brought an exceptionally weak infringement suit for the specific and admitted purpose of censoring protected speech. What sympathy the Court may have for victims of sex trafficking should be reserved for those victims, not copyright trolls who hoover up registrations of dubious provenance and litigate meritless claims to extract settlements. The Court should grant this motion and award Defendant Lyndon Perry $83,760 in attorneys' fees under 17 U.S.C. § 505.

RANDAZZA | LEGAL GROUP

Dated: February 18, 2026.  Respectfully Submitted,

/s/ Marc J. Randazza  /s/ Jay M. Wolman
Marc Randazza, (*Pro Hac Vice*)  Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC  RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue  100 Pearl Street, 14th Floor
Gloucester, MA 01930  Hartford, CT 06103
Tel:    978-801-1776  Tel:    702-420-2001
Email: ecf@randazza.com  Email: jmw@randazza.com

*Attorneys for Defendants*

RANDAZZA | LEGAL GROUP

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 18, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman

RANDAZZA | LEGAL GROUP