# <u>Exhibit 2</u>

Letter from Jay M. Wolman
August 22, 2022



**Jay Marshall Wolman, JD**
Licensed in CT, MA, NY, DC

*Settlement Privileged Communication*

**22 August 2022**

<u>Via Email Only</u>
Erik Dykema
Joshpe Mooney Paltzik LLP
<edykema@jmpllp.com>

**Re:    *MCM Group 22 LLC v. Perry, et al.* | *Settlement Negotiation***

Dear Attorney Dykema,

I am in receipt of your e-mail of August 18, 2022, requesting, inter alia, that my clients pay your client, MCM Group 22, LLC, the sum of $50,000, plus $18,000 in attorneys' fees, along with an apology, presumably to Ms. Khater, and other demands.  Please advise if you represent Ms. Khater, as the only named plaintiff is MCM Group 22, LLC.

I appreciate your prior courtesy of an extension of time to respond to the complaint.  It has given me some time to assess the case and confer with my clients about the best course of action.  Both of my clients, Mr. Perry and Mr. Violette respectfully decline the settlement proposal.

I want to take this opportunity to explain why and preview where I think this litigation will take us.  My clients fully appreciate that Ms. Khater was victimized by the "Girls Do Porn" enterprise, and assume, for purposes of this discussion, that the allegations about that in the complaint are true.  However, they can not abide your client's abuse of the courts to chill lawful speech.  It is one thing to seek to take down the videos; it is another to attack my clients for commentary about Ms. Khater's employer.

In fact, I am writing to you now in this manner, rather than proceed directly to dispositive motion practice, because we would rather not have to procure a decision of the Court that would thwart your ability to scrub the internet of the video.

### A.  Litigation is Adverse to Your Client's Goals

If we were forced into dispositive motion practice, here's what would undermine your goal of scrubbing the internet:

1) It is our understanding that your client claims the copyright in the work by virtue of an assignment of a copyright by Ms. Khater, which she obtained via a court-ordered restitution order.  It is our further understanding that the order at issue was the December 14, 2021 restitution order in the matter if *United States v. Ruben Andre Garcia*, Case No. 19-CR-4488 (S.D. Cal.), pursuant to 18 U.S.C. § 1593. However, to the extent that order purported to transfer copyright, it is invalid.  As I presume you know, 17 U.S.C. § 201(e) precludes involuntary copyright transfer. There is no exception for a restitution order.  Simply put, judgment for our client on



this argument would mean you could no longer claim to own the copyright in the work. You could no longer issue DMCA Takedown requests or otherwise convince anyone, in good faith, to cease distribution of the video based on a claim of copyright ownership.

2) Separately, but related, that restitution order was against Ruben Andre Garcia. According to your own registration, which you filed as an exhibit, the author of the work is BLL Media, Inc. Thus, you have a break in the chain of title. Ms. Khater may have acquired whatever rights from Mr. Garcia she could have (even setting aside Section 201(e)), but that order is not against BLL Media, Inc., which is not a subject of that order. As your copyright registration admits BLL Media is the author, it is the sole owner of the copyright. Again, this would have the same consequences as invalidation of the order involuntarily transferring copyright.

A judgment for our clients on either of those two arguments would have serious implications for your efforts.

### B. Publication of the Single (Clothed) Frame of the Interview was Fair Use

Your complaint downplays the fair use defense, but we give it greater weight. The alleged infringement was of a single frame of the video, wherein Ms. Khater is asked what she studies, and she responds "Ummm…business…marketing. I think… I really don't know anymore, but…yeah it's kind of where I'm going." And that frame is placed into a collage of her appearance in the Forbes 30 Under 30 for 2020, highlighting her management of a book of $300 million in assets for Celsius Network. This, alone, is transformative, but it was placed in context in a discussion about Celsius Network and the Reuters news "Crypto firm Celsius pauses all transfer, withdrawals as markets tumble". The Twitter account at issue used the collage containing the still of Ms. Khater (fully clothed, I might add) with the comment "Same company btw". I can get into the full caselaw, but this type of commentary and use is transformative, overwhelmingly supporting a finding of fair use.

There are, of course, other factors supporting fair use. For example, the still of the video shows it was taken from a video 46 minutes and 27 seconds long. Assuming a standard frame rate of 30 fps, this means that it is 1/83,610 of the work. That is hardly a substantial portion of the work. And, it is well possible the work was shot and published at 60 fps, making the still 1/167,220 of the work.

Neither does the publication of the collage, containing the still, affect the potential market or value of the work. For one, you are working to ensure there is no market. Nor is there likely to be any evidence that someone who would have purchased a copy of the video would have lost interest. And, of course, we dismiss your claim that our client's alleged use was of a commercial nature. The image is not being sold and the tweet is not monetized. That it might somehow lead to income in some hypothetical scenario does not make the use commercial. Thus, we are confident in the fair use defense.

Randazza Legal Group
Page 3 of 4



### C. Your Demands are Improper

We also must take issue with your claim for damages and attorneys' fees.  As litigators ourselves, we are surprised your fees are already $18,000 for drafting a simple infringement complaint and agreeing to our request for an extension of time.  That said, you would not be entitled to those fees, nor would your client be entitled to statutory damages.  As you should be aware "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412.  According to your registration, the work was first published in 2016, but it was not registered until July 14, 2022, which itself was one month after the alleged infringement.  Thus, under no circumstances would you be able to recover your $18,000 in fees, which would undoubtedly continue to accrue as the case continues.

In contrast, late registration notwithstanding, our clients' fees are fully recoverable.  *See Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers (ASCAP)*, 642 F.3d 87, 90 (1st Cir. 2011) ("Section 412 thus does not, logically, apply to alleged infringers."); 4 Nimmer on Copyright § 14.10[B][2] ("[N]othing on the face of [§ 412] bars awarding fees to" a prevailing defendant accused of copyright infringement).  For the reasons set forth above, we have little doubt our clients will be prevailing parties.  Your client will not likely wish to face our fee request as we are forced, more and more, to litigate the matter.

Of course, and we must add, Mr. Violette will be a prevailing party as the Court lacks personal jurisdiction over him and you have no valid or plausible claim of infringement. The sole allegation regarding him is you believe the "true" identity of Mr. Perry is Mr. Violette. You make this allegation "on information and belief".  You have no factual basis to support this assertion.  Mr. Violette does not have a Twitter account, he does not use Twitter, and he does not have any involvement with the Twitter account in question.  You have no probability of prevailing on this matter and continuing to do so would be in violation of your Rule 11 obligations.

Additionally, we must note that Mr. Perry asserted a counternotification under the DMCA. To the extent your takedown request has put a "strike" against him, he reserves the right, in the event your claim survives a motion to dismiss, to bring a counterclaim against MCM Group 22 under Section 512(f).

### D. Potential Resolution

Mr. Perry, as you acknowledged, attempted to amicably resolve the matter before he retained counsel.  His overture to you went unanswered.  Now, he has been forced to incur the expense and ignominy of this lawsuit.  While he empathizes with Ms. Khater, he must be made whole.  Therefore, if you wish to resolve the matter, your client will:

a) Withdraw the DMCA Takedown Request to Twitter



b) Dismiss the claims against both Defendants with prejudice

c) Reimburse my clients for their anticipated fees through pre-motion settlement in the amount of $14,000.

**E.   Anticipated Motion Practice**

Finally, if your client does not agree to this manner of resolution, we will move to dismiss under Rule 12 for failure to state a claim and for lack of personal jurisdiction, and we will move for sanctions under Rule 11 as to the claims against Mr. Violette, who has nothing to do with any of the allegations.  Pursuant to Judge Gardephe's Individual Rules of Practice for Civil Cases § IV(A), please advise as to whether our proposed motions are on consent.

Again, our goal here is to extricate our clients from this litigation, which was improperly brought, without interfering with your client's efforts to remove the video itself from the internet.  Thank you for your attention to this matter.

Sincerely,

Jay M. Wolman

cc:   Marc J. Randazza
      Michael Mooney <mmooney@jmpllp.com>
      Amit Sondhi <asondhi@jmpllp.com>