UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
MCM GROUP 22, LLC,                            :
                                              :
                 Plaintiff,                   :
                                              :        Case No. 22-cv-06157-GBD
v.                                            :
                                              :
                                              :
LYNDON PERRY,                                 :
                                              :
                 Defendant.                   :
------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARDS ............................................................................................................ 4

ARGUMENT ......................................................................................................................... 6

I.    Defendant Should Not Be Awarded Fees Under 17 U.S.C. § 505. ........................................ 6

    A.    Plaintiff's copyright claim was not objectively unreasonable. ......................................... 6

    B.    Plaintiff did not act with improper motivation. ................................................................ 14

    C.    Deterrence and compensation do not weigh in favor of a fee award. .............................. 17

CONCLUSION .................................................................................................................... 19

WORD COUNT CERTIFICATION .......................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agence Fr. Presse v. Morel*,
  2015 WL 13021413 (S.D.N.Y. Mar. 23, 2015)......................................................... 6, 7

*Balsley v. LFP, Inc.*,
  691 F.3d 747 (6th Cir. 2012) ......................................................................... 13

*Bouma v. Kale Salad, Inc.*,
  800 F. Supp. 3d 401 (E.D.N.Y. 2025) ............................................................ 11

*Brewer v. Hustler Magazine, Inc.*,
  749 F.2d 527 (9th Cir. 1984) ......................................................................... 13

*Campbell v. Acuff–Rose Music, Inc.*,
  510 U.S. 569 (1994) ...................................................................................... 11

*Coleman v. Home Box Off., Inc.*,
  2019 WL 8645387 (E.D.N.Y. Aug. 6, 2019) ................................................. 10

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
  2017 WL 3393850 (S.D.N.Y. Aug. 4, 2017)........................................ 6, 16, 17

*Earth Flag Ltd. v. Alamo Flag Co.*,
  154 F. Supp. 2d 663 (S.D.N.Y. 2001) ............................................................. 6

*Effie Film, LLC v. Pomerance*,
  2013 WL 1759560 (S.D.N.Y. Apr. 24, 2013) ............................................ 5, 15

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ......................................................................................... 5

*Gaffney v. Muhammad Ali Enterprises LLC*,
  2026 WL 878993 (S.D.N.Y. Mar. 31, 2026)................................................... 14

*Grant v. Trump*,
  563 F. Supp. 3d 278 (S.D.N.Y. 2021) ............................................................ 11

*HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*,
  58 F. Supp. 3d 380 (S.D.N.Y. 2014) .......................................................... 5, 12

*Hello I Am Elliot, Inc. v. Sine*,
  No. 19 CIV. 6905 (PAE), 2021 WL 1191971 (S.D.N.Y. Mar. 30, 2021)........................ 6, 7, 12

*Hirsch v. CBS Broad. Inc.*,
2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017)............................................................................. 9, 10

*Hughes v. Benjamin*,
2020 WL 4500181 (S.D.N.Y. Aug. 5, 2020)................................................................................ 14

*Janik v. SMG Media, Inc.*,
2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) ................................................................................ 15

*John Wiley & Sons*,
327 F. Supp. 3d 640 ...................................................................................................................... 18

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
820 F. Supp. 2d 569 (S.D.N.Y. 2011) ..................................................................................... 5, 18

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) ................................................................................................................... 6, 8

*Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*,
2019 WL 4686498 (S.D.N.Y. Sept. 26, 2019) .............................................................................. 6

*Mallery v. NBC Universal, Inc.*,
331 F. App'x 821 (2d Cir. 2009)................................................................................................... 14

*Malibu Media LLC v. Doe*,
2015 WL 4092417 (S.D.N.Y. July 6, 2015)................................................................................. 16

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020) ..................................................................................................... 6, 12

*Martinka v. Hagedorn Commc'ns, Inc.*,
2025 WL 2642584 (S.D.N.Y. Sept. 15, 2025) ............................................................................. 18

*Matthew Bender & Co. v. West Publ'g. Co.*,
240 F.3d 116 (2d Cir. 2001) ..................................................................................................... 5, 18

*N.G.B. v. New York City Dep't of Educ.*,
2023 WL 2711753 (S.D.N.Y. Mar. 30, 2023).............................................................................. 18

*Righthaven LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013) ...................................................................................................... 14

*Romanova v. Amilus Inc.*,
2025 WL 3442700 (S.D.N.Y. Dec. 1, 2025)................................................................................ 18

*Smith v. L. Off. of Richard St. Paul, Esq., PLLC*,
  2023 WL 3570606 (S.D.N.Y. May 18, 2023) ........................................................... 9

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) ...................................................................................... 9

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) .................................................................................. 11

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
  2020 WL 2104705 (N.D.N.Y. May 1, 2020) ........................................................ 17

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
  2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) ....................................................... 14

*Zalewski v. Cicero Builder Dev., Inc.*,
  754 F.3d 95 (2d Cir. 2014) ...................................................................................... 5

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
  845 F. App'x 54 (2d Cir. 2021) ..................................................................... 5, 7, 12

**Statutes**

17 U.S.C. § 505 .............................................................................................................*Passim*

**Other Authorities**

Bianca Bruno, *GirlsDoPorn victims awarded video copyrights, clearing way for takedowns*,
Courthouse News Service (Dec. 10, 2021), https://www.courthousenews.com/girlsdoporn-
victims-awarded-video-copyrights-clearing-way-for-takedowns/ ............................................... 12

Plaintiff MCM Group 22, LLC respectfully submits this Memorandum of Law in opposition to Defendant Lyndon Perry's Motion for Attorneys' Fees (ECF No. 41) (the "Fee Motion").

PRELIMINARY STATEMENT

Section 505's fee-shifting provision exists to deter abuse of the system by copyright trolls. No such abuse, and (contrary to Defendant's rhetoric) no such troll, exists in this case. If anything, at its core, this action was commenced to protect the rights of the individual referred to pseudonymously in this litigation as Jane Doe.

Jane Doe was a victim of sex trafficking and fraud who found herself in the distressing position of discovering that a pornographic video (the "Video"[1]) containing her image was distributed online by its producers without her consent. As restitution for this gross violation of her privacy and rights, Jane Doe was given the copyright to the Video as a restitutionary measure pursuant to a court order.[2] Jane Doe thereafter assigned to the copyright to Plaintiff, who filed this action in a legitimate effort to enforce a violation of the copyright after Defendant posted a still image reproducing an entire frame of the Video to Twitter.  ECF No. 1, ¶8.  In moving to dismiss, Defendant argued that his use of the still from the Video was fair use, and this Court agreed and granted the motion.

Now, Defendant has moved for an award of attorneys' fees under 17 U.S.C. § 505, claiming that Plaintiff's infringement claim and arguments were objectively unreasonable and that Plaintiff is a copyright troll whose conduct warrants a fee award for purposes of deterrence.

---

[1] Unless otherwise indicated, capitalized terms herein have the same meaning as they were given by the Court in its Memorandum Decision and Order (ECF No. 38) granting Defendant's Motion to Dismiss.

[2] The Honorable Janis L. Sammartino issued a Restitution Order on December 14, 2021, in connection with *United States v. Ruben Andre Garcia (3),* 19-cr-4488-JLS.

1

On both of these counts, Defendant is wrong. As detailed below, Defendant has failed to

establish that Plaintiff's litigation position was "clearly without merit or patently devoid of a

legal or factual basis," as required for a Section 505 fee award. Further, Defendant's

characterizations of Plaintiff as a profit-motivated copyright troll are both groundless and false.

For these reasons and those below, the Court should deny Defendant's Fee Motion in its entirety.

## BACKGROUND

Plaintiff, a limited liability company, owns the copyright in the Video. (ECF No. 38 at 2.)

It was assigned to Plaintiff by Jane Doe, a woman who appeared in the Video. (*Id*.) Jane Doe, in

turn, had been given ownership of the copyright in a December 14, 2021 Restitution Order

entered by the U.S. District Court for the Southern District of California, on a finding that she

was the victim of criminal sex trafficking activity that resulted in the Video being distributed

without her consent. (*Id*.) Jane Doe assigned the copyright to Plaintiff specifically "for the

purpose of prosecuting the use of copies, still images, and derivatives of the Video through

DMCA takedown notifications and, when necessary, civil actions." (*Id*.)

Jane Doe is the sole owner of Plaintiff. (*See* Declaration of Bert Mouler in opposition to

Fee Motion, ECF No. 48, at ¶¶ 5, 7.)

On June 13, 2022, Defendant Lyndon Perry posted a Tweet which included a still image

reproducing a frame from the Video. (ECF No. 38 at 2–3.) He did so without the consent of

Plaintiff or Jane Doe. This Court would later describe the Tweet, in relevant part, as follows:

> The Tweet included a composite of two images: a still frame from the Video
> superimposed onto a screenshot of an online article from Forbes. The still frame
> from the Video depicts a fully clothed woman . . . sitting alone on a bed. The still
> frame includes text of an apparent conversation between the woman and an off-
> screen interviewer in which the woman states that she is studying business and
> marketing. The screenshot from the Forbes article shows a profile of an individual,
> who is identified as the head of institutional lending at Celsius Network, in the

2

> publication's 30 Under 30 list for 2020. The Tweet juxtaposes these two images, suggesting that they are the same woman.
> The Tweet was Perry's second post in a larger thread. The first post in the thread shows an advertisement for Celsius Network next to a screenshot of a Reuter's article entitled, "Crypto Firm Celsius Pauses All Transfers, Withdrawals, as Markets Tumble." Defendant then replied to this post with the Tweet, which included the composite image and the message "Same company btw."

(*Id.* (internal citations and footnote omitted).)

Jane Doe requested that Twitter take down the infringing video pursuant to the Digital Millennium Copyright Act (the "DMCA") notice-and-takedown procedure, which Twitter did. (ECF No. 38 at 3.) In response, on or about July 6, 2022, Defendant provided Twitter with a Counter Notification. When Twitter asked Defendant to "Please describe the reason why you are filing a Counter Notification," he responded as follows:

> lol. trollololol. I don't know if you represent [Jane Doe] or Celcius [*sic*] but either way just because information is embarrassing to you doesn't mean that you own the right to have it removed from the internet. If you don't like it don't do porn, or hire porn stars to run your company. Nice try tho. See you in court!

(ECF No. 32 at 2–3.) Based on Defendant's Counter Notification, Twitter notified Jane Doe that it would "cease disabling access to the materials within 10 business days, unless we receive notice that you've filed an action seeking a court order to restrain [Defendant] from engaging in this infringing activity." Thereafter, Plaintiff filed for copyright registration, and upon receiving it, filed this action for copyright infringement on July 20, 2022. (ECF No. 32 at 3.)

Defendant moved to dismiss, largely but not exclusively on fair use grounds (ECF No. 29), Plaintiff filed an opposition in response (ECF No. 32), and Defendant then filed a reply (ECF No. 30).

On February 3, 2026, this Court granted Defendant's Motion to Dismiss. (ECF No. 38 (the "Order").) In doing so, the Court held that Defendant had made a valid fair use defense to Plaintiff's copyright infringement claim, and that that defense was apparent from the face of the

3

pleadings. Specifically, the Court found that Defendant's use of the still frame from the Video was "utilized . . . for a transformative purpose," and determined that "a reasonable observer would understand the Tweet as a commentary on Celsius with a markedly different purpose from the original pornographic video." (*Id*. at 8 (footnote omitted).) The Court also observed that "as a commentary on a 'subject of public interest' (i.e., Celsius' decision to pause its customer's transfers and withdrawals), the Tweet's transformative use of the still frame justifies its copying." (*Id*.) And while the finding that the secondary use was transformative was the linchpin of its decision, the Court also concluded that any commercial purpose of Defendant's was outweighed by the transformative use (*id*. at 8); that the "nature of the copyrighted work" factor was neutral and favored neither party (*id*. at 8–10); that a comparatively small proportion of the primary work was used in the secondary work, which favored Defendant (*id*. at 10–11); and that given their qualitative differences, the Tweet would not harm the market for the Video, which also favored fair use (*id*. at 11–12). In the end, the Court explained that while "Plaintiff and Jane Doe may be engaged in a legitimate effort to control the reproduction and dissemination of the Video, their ability to do so extends only as far as copyright law allows." (*Id*. at 12–13.)

Defendant filed the Fee Motion on February 18, 2026. Plaintiff respectfully submits this brief in opposition.

## LEGAL STANDARDS

The Copyright Act empowers courts to "award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. The Second Circuit has observed that while "'[t]here is no precise rule or formula'" for this, "the Supreme Court has suggested a list of non-exclusive factors that courts may consider: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in

4

particular circumstances to advance considerations of compensation and deterrence." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (alterations in original) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). The "*Fogerty* factors," as they have come to be known, are central to fee determinations under Section 505.

As Defendant acknowledges (*see* ECF No. 41 at 3), the most important of the *Fogerty* factors is "objective reasonableness," which "'should be given substantial weight in determining whether an award of attorney['s] fees is warranted' because 'the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (alteration in original) (quoting *Matthew Bender & Co. v. West Publ'g. Co.*, 240 F.3d 116, 122 (2d Cir. 2001)). It is hornbook law in the Second Circuit that a copyright claim or defense is objectively unreasonable "when it is clearly without merit or otherwise patently devoid of a legal or factual basis." *HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 389 (S.D.N.Y. 2014) (cleaned up); *see also Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 59 (2d Cir. 2021) (same).

Given how exacting the standard of "clearly without merit or otherwise patently devoid of a legal or factual basis" truly is, courts have expressly distinguished that concept from a party's mere loss in a copyright dispute, and have consistently held that "'an unsuccessful claim does not necessarily equate with an objectively unreasonable claim.'" *Effie Film, LLC v. Pomerance*, 2013 WL 1759560, at *2 (S.D.N.Y. Apr. 24, 2013) (collecting authorities). For that reason, "[t]he grant of a motion to dismiss does not in itself render a claim unreasonable." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 573 (S.D.N.Y. 2011). In addition, courts in the Second Circuit routinely hold that a copyright claim or defense is not objectively

5

unreasonable if it implicates "a relatively novel issue," *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 174 (2d Cir. 2020), because "such a litigation clarifies the boundaries of copyright law," *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001).

As to the other *Fogerty* factors, the "frivolousness" factor "often overlaps with objective unreasonableness" and typically where a claim or defense is "not objectively unreasonable, it [is] not frivolous." *Hello I Am Elliot, Inc. v. Sine*, 2021 WL 1191971, at *6 (S.D.N.Y. Mar. 30, 2021); *see also Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*, 2019 WL 4686498, at *2 (S.D.N.Y. Sept. 26, 2019) ("[B]oth factors are often analyzed by inquiring whether there is indisputably absent any factual or legal basis for plaintiff's claims.") (cleaned up). When it comes to "motivation," a party is "'improperly motivated where it asserts claims not because of their inherent merit, but rather because the party seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain.'" *Sine*, 2021 WL 1191971, at *6 (quoting *Agence Fr. Presse v. Morel*, 2015 WL 13021413, at *5 (S.D.N.Y. Mar. 23, 2015)). Lastly, the "compensation and deterrence" factor "is meant to ensure that defendants are encouraged to protect their legitimate rights and bad-faith plaintiffs are discouraged from bringing frivolous and unreasonable claims." *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 2017 WL 3393850, at *5 (S.D.N.Y. Aug. 4, 2017).

## ARGUMENT

### I.  Defendant Should Not Be Awarded Fees Under 17 U.S.C. § 505.

#### A.  Plaintiff's copyright claim was not objectively unreasonable.

In the context of copyright law, the U.S. Supreme Court has affirmed the importance of "distinguishing between [unsuccessful] defenses (or claims) and the objectively unreasonable variety," and cautioned that if a court "confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion." *Kirtsaeng v. John Wiley & Sons, Inc.*,

6

579 U.S. 197, 208 (2016). It is a matter of black-letter law that objective unreasonableness is a much, much higher bar than merely prevailing in a copyright action: the movant must show that its adversary's position was either "clearly without merit" or "patently devoid of a legal or factual basis." *Zuma Press*, 845 F. App'x at 59. Even a position with "tenuous footing in the caselaw"—a standard which, as demonstrated below, Plaintiff well surpassed—does not translate to objective unreasonableness. *Sine*, 2021 WL 1191971, at *8.

Sine is especially instructive on this point. There, the court held that even though the plaintiffs' decision to sidestep their lack of a copyright registration by suing under the Declaratory Judgment Act was wrong on the law, it was still not objectively unreasonable within the meaning of 17 U.S.C. § 505 because they had relied on "two out-of-circuit cases for the proposition that registration was not required to bring a copyright-based declaratory judgment claim." *Id*. The court made plain that "those cases clearly. . . stand for narrower propositions" than what the plaintiffs cited them for, but went on to conclude that

> the fact that plaintiffs' theory failed and had tenuous footing in the caselaw did not make it objectively unreasonable. Rather, "the inquiry is whether the theory was '*clearly* without merit or otherwise *patently devoid* of legal or factual basis.'" Here, plaintiffs' legal theory, while misguided, had just enough of a legal basis to avoid condemnation as objectively unreasonable.

*Sine*, 2021 WL 1191971, at *8 (emphasis in original) (internal citations omitted) (quoting *Agence Fr. Presse*, 2015 WL 13021413, at *3). In short, if a claim or defense has *any* legal or factual basis, it cannot by definition be "patently devoid" of that very thing, and therefore does not justify a fee award against its proponent.

Nevertheless, Defendant has taken the position that Plaintiff "did not have any good-faith basis for arguing against fair use," and goes so far as to argue that Plaintiff's position was "sanctionable under Rule 11." (ECF No. 41 at 6.) For many reasons, Defendant is wrong.

7

First, Defendant's gloss on this Court's Order granting his motion to dismiss is wildly inaccurate. After declaring that there is "[n]o suggestion that [the Court's decision] was a close call"—immaterially, given that the issue at hand is whether Plaintiff lacked *any basis whatsoever* for disputing fair use, not how handily Defendant won his Motion to Dismiss—Defendant attributes to the Court the assertion that "Plaintiff barely provided any authority to support its fair use arguments." (ECF No. 41 at 6.) There is nothing approaching a broad observation like this in the Court's Order, and Defendant cites none. (For the reasons that follow, it would not be accurate in any event.) More fundamentally, Defendant ignores that there is nothing in the Court's Order suggesting that any aspect of Plaintiff's position is unreasonable, made in bad faith, or frivolous in any way. To the contrary, the Court acknowledged in closing that "Plaintiff and Jane Doe may be engaged in a legitimate effort to control the reproduction and dissemination of the Video," and concluded simply that "their ability to do so extends only as far as copyright law allows." (ECF No. 38 at 12–13.) Plaintiff made reasonable arguments and the Court rejected them; to read anything more than that into the Order is to "confuse[] the issue of liability with that of reasonableness." *Kirtsaeng*, 579 U.S. at 208.

Defendant's counsel may well believe that what the Court called Plaintiff and Jane Doe's "legitimate effort" is *itself* a misuse of copyright law: they argued at length in moving to dismiss this case that the copyright at issue was never validly transferred by the district court to Jane Doe, or from Jane Doe to Plaintiff (ECF No. 29 at 20–24), and then argued in the Fee Motion that the Copyright Act itself is not meant to be used to remedy the ill effects of sex trafficking (*see* ECF No. 41 at 10–11). Whatever the merits of these arguments, they do not transform Plaintiff's good-faith efforts to enforce the restitutionary relief that the courts awarded Jane Doe

8

into an "abuse [of] the Copyright Act" that justifies requiring Plaintiff to pay Defendant's counsel over $80,000 in legal fees.

Second, Plaintiff had an ample good-faith basis for contesting Defendant's fair use defense, even if the Court ultimately found its argument insufficient to overcome a motion to dismiss. "'There are no bright line rules to determine whether a use was a fair use; instead the analysis is to be done on a case-by-case basis, and all the factors "are to be explored, and the results weighed together, in light of the purposes of copyright."'" *Smith v. L. Off. of Richard St. Paul, Esq., PLLC*, 2023 WL 3570606, at *4 (S.D.N.Y. May 18, 2023) (quoting *Hirsch v. CBS Broad. Inc.*, 2017 WL 3393845, at *4 (S.D.N.Y. Aug. 4, 2017)). The absence of bright-line rules in this area makes it all the more difficult in the fair use context to satisfy the stringent "clearly without merit or patently devoid of a legal or factual basis" standard for Section 505 fees, and for that reason such fees should be reserved for only the most egregiously meritless fair use defenses or challenges. This case comes nowhere near that line.

To take as an example only one component of Plaintiff's good-faith litigation position: Plaintiff cited *Hirsch v. CBS* as a case in which a defendant transposed part of a copyrighted visual work (there, a photograph) into a new and different context (there, an episode of a CBS news program). Like in this case, the secondary use in *Hirsch* was ostensibly transformative, and the *Hirsch* court acknowledged as much, noting that it "could hazard an assessment of this factor based on the four corners of the Episode," but concluded that "discovery of the Episode's overall context and content will enable a more careful assessment of how and whether the Episode's use of the Photo 'served the public by providing access to important information.'" *Hirsch*, 2017 WL 3393845, at *7 (quoting *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014)). The court also held that it was not self-evident that CBS's "inclusion of the heart of

9

the Photo in a discussion of events from some seven years ago" imbued it with a "character different from that for which it was created," and also that "further development of the record [was] warranted, to clarify what, if any, new insights and understandings were created by CBS's use of the Photo." *Id.* (internal citations and quotation marks omitted). In other words, Plaintiff cited *Hirsch* for the proposition that even where a secondary use seems transformative on the surface, a "more careful assessment" may be necessary, particularly given the fact-intensive nature of fair use, to analyze things like the use's purpose, commercial nature, and effect on others—and Plaintiff provided specific examples of how discovery could illuminate those very factors in the case at bar (*see* ECF No. 32 at 9). In his reply, Defendant oversimplified Plaintiff's argument as citing *Hirsch* for the broad proposition that "this Court cannot compare the use by Defendant to the work itself," and attempted to distinguish this case from *Hirsch* based on the size of the secondary use relative to the original work ("a single frame out of tens of thousands"). (ECF No. 30 at 3.) Then, in granting Defendant's motion to dismiss, the Court did not discuss *Hirsch*, but rather held that the transformative nature of the Tweet was clear enough on its face that the issue of commercial purpose (and by implication, it can be presumed, the other *Hirsch* factors) was immaterial. (*See* ECF No. 38 at 8.) But nothing about this suggests that Plaintiff's reliance on *Hirsch* was so groundless as to be sanctionable—merely that the Court was not persuaded that *Hirsch*'s rationale justified discovery under the facts of this case.[3]

---

[3] Further driving home the reasonableness of Plaintiff's reliance on *Hirsch* is the fact that subsequent courts have cited it for the same proposition Plaintiff cited it for (as opposed to the expansive simplification that Defendant *claimed* Plaintiff cited it for). *See Coleman v. Home Box Off., Inc.*, 2019 WL 8645387, at *6 (E.D.N.Y. Aug. 6, 2019) ("Further development of the record is needed to clarify where Defendants obtained Plaintiff's work and to identify the intended purpose behind the Film's use of the Work and what, if any, new insights and understandings are created by Defendants' use.") (citing *Hirsch*, 2018 WL 6985227, at *6).

Nor does *Hirsch* provide the only support for Plaintiff's position that could be found in the governing case law: courts have on numerous occasions denied motions to dismiss copyright infringement actions on fair use grounds, despite real qualitative differences between the two works at issue, because (as in *Hirsch*) discovery into their overall "context and content [would] enable a more careful assessment" of the nature and purpose of the secondary use relative to the primary use, because there was a serious factual dispute as to commercial purpose, or both. *See, e.g.*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 182 (2d Cir. 2016) (district court erred in finding that secondary use was fair use as a matter of law, noting that "where a secondary use 'has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention, the claim to fairness in borrowing from another's work diminishes accordingly,'" and separately because secondary work raised "commercial exploitation concerns") (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 580 (1994)); *Grant v. Trump*, 563 F. Supp. 3d 278, 287 (S.D.N.Y. 2021) (denying motion to dismiss on fair use grounds because secondary use made no effort to comment on the primary use itself, did not alter its content, and used it merely to make the secondary use more entertaining); *Bouma v. Kale Salad, Inc.*, 800 F. Supp. 3d 401, 409, 411 (E.D.N.Y. 2025) (declining to dismiss action because secondary use was not transformative as a matter of law despite defendant's claim that it was for purposes of "criticism and comment," and "'the possibility of commercial advantage [could ]not be excluded'" at the pleading stage) (quoting *Grant*, 563 F. Supp. 3d at 287).

The point here is not to attempt to relitigate the Court's decision, but rather to underscore that the applicable case law justifies Plaintiff's position that dismissal of the case on fair use grounds would have been premature given that discovery would provide necessary context on, among other things, Defendant's purpose in posting the Tweet as well as the possibility of

11

commercial advantage in doing so. If Plaintiff has even "tenuous" support in the case law for its position, then it cannot be "clearly without merit or patently devoid of a legal or factual basis." *Sine*, 2021 WL 1191971, at *8. Defendant cannot meet this exceedingly high standard.

Third, a fee award would be inappropriate here because this case involves "relatively novel issue[s]," which the Second Circuit has cautioned weighs strongly against awarding fees under Section 505. *Mango*, 970 F.3d at 174; *Zuma Press*, 845 F. App'x at 59; *see also HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 389–90 (S.D.N.Y. 2014) ("Our reticence to characterize the losing position as objectively unreasonable is informed by the fact that this dispute arose in the context of a developing, and still somewhat uncharted, area of copyright law."). The copyright at issue in this action was awarded to Plaintiff's predecessor-in-interest by a court as a restitutionary measure meant to redress her victimization by a criminal sex-trafficking enterprise. (*See* ECF No. 38 at 1–2.) Because this decision by the court broke new legal ground,[4] there is very little precedent clarifying how copyright law should operate in these unique circumstances, and that fact matters here because the circumstances do not all map neatly onto traditional principles of copyright jurisprudence.

One example is the question of whether the Video should be considered published or unpublished for copyright purposes: this Court found the initial dissemination of the Video on different pornographic websites to be dispositive that it was published (*see* ECF No. 38 at 9), but it was not unreasonable for Plaintiff to argue in opposing Defendant's Motion to Dismiss that it was unpublished given the U.S. Copyright Office's guidance that "'[t]he fact that a work has

---

[4] *See* Bianca Bruno, *GirlsDoPorn victims awarded video copyrights, clearing way for takedowns*, Courthouse News Service (Dec. 10, 2021), available at https://www.courthousenews.com/girlsdoporn-victims-awarded-video-copyrights-clearing-way-for-takedowns/ (characterizing the Restitution Order as "a historic step for the women who have been seeking justice against their traffickers since a civil contract fraud case was filed against GirlsDoPorn and its owners and operators in San Diego Superior Court in 2016").

been placed online or posted on a website does not necessarily mean that the work has been published" (ECF No. 32 at 17 (quoting Copyright Office Circular 66)), and given the fact that the first publication of the Video was not done by Jane Doe herself but by a person whose copyright was later voided in her favor. It is true that the Court's analysis of the publication issue was secondary to that of whether the Tweet was transformative, but even that inquiry implicates unsettled issues in these circumstances: while the Court found the secondary use to be transformative on its face, there is also (roughly) analogous case law involving nonconsensual *print* publication of erotic materials suggesting that where the purpose of the secondary use was "to enhance readership, rather than as a social commentary" (an issue which Plaintiff had specifically argued warranted discovery in this case (*see* ECF No. 32 at 8)), the commercial-use factor gains greater weight in the analysis. *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) (quoting *Brewer v. Hustler Magazine, Inc.*, 749 F.2d 527, 529 (9th Cir. 1984)). Here again, the aim here is not to challenge the Court's decision or argue with its reasoning, but merely to show that for yet another reason, it cannot reasonably be said that Plaintiff's position was "clearly without merit or patently devoid of a legal or factual basis."[5]

Fourth, the authority that Defendant has cited in arguing that Plaintiff's claim was objectively unreasonable is both scant and distinguishable. In two of the cases Defendant cites, the plaintiffs against whom fee awards were entered had engaged in lengthy patterns of unreasonable litigation conduct, of which their fair use arguments were only one part. *See Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 2003 WL 1701904, at *2–5 (S.D.N.Y. Mar. 31,

---

[5] As noted, Defendant's counsel appears to have taken the position that claims like Plaintiff's have no place in copyright litigation at all, by (among other things) challenging the validity of the Restitution Order (*see* ECF No. 29 at 20–24)—as issue which the Court did not take up in adjudicating the Motion to Dismiss (*see* ECF No. 38 at 2 n.2). Whether counsel is right or wrong about this, it only further demonstrates that there are unsettled issues of law here that militate against a fee award.

13

2003) (plaintiff mischaracterized defendant's papers in ways that "even a cursory reading" belied, cited cases for fair use argument that "did not even address the fair use doctrine," and argued for secondary market that was shown to be nonexistent by 38 years of plaintiff's principal's career); *Hughes v. Benjamin*, 2020 WL 4500181, at *2 (S.D.N.Y. Aug. 5, 2020) (plaintiff, *inter alia*, taunted defendant on social media during pending proceedings, including by contemplating "bankrupt[ing]" him with vindictive defamation action). There was nothing comparable to that sort of conduct in this litigation. Further, in *Mallery v. NBC Universal, Inc.*, the plaintiff had failed to identify any elements the two works had in common that were protectible by copyright to begin with. 331 F. App'x 821, 822–23 (2d Cir. 2009). Lastly, *Righthaven LLC v. Hoehn*, which Defendant appears to cite merely as an example of a court "finding fair use in a motion to dismiss" (ECF No. 41 at 7), contains no analysis of the objective reasonableness of a party's position, or indeed any reference to attorneys' fees under Section 505 at all. 716 F.3d 1166, 1173 (9th Cir. 2013).

Although Plaintiff's challenge to Defendant's fair use defense did not prevail, it was colorable, amply supported by authority, and made in an area rife with novel issues of law. These considerations put it well outside any reasonable interpretation of the governing "clearly without merit or patently devoid of a legal or factual basis" standard for objective unreasonableness.

### B.   Plaintiff did not act with improper motivation.

"Improper motivation is found when a party advances positions 'not because of their inherent merit, but rather because it seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain.'" *Gaffney v. Muhammad Ali Enterprises LLC*, 2026 WL 878993, at *3 (S.D.N.Y. Mar. 31, 2026). On the other hand, "'where a court has no reason to doubt that, throughout the litigation, a party sincerely believed that its work was entitled to copyright protection and pursued its claim for the purpose of vindicating its rights, that fact

14

weighs against awarding costs and attorneys' fees against it.'" *Janik v. SMG Media, Inc.*, 2018 WL 345111, at *13 (S.D.N.Y. Jan. 10, 2018) (cleaned up) (quoting *Effie Film*, 2013 WL 1759560, at *4).

On the issue of improper motivation, Defendant contends in the Fee Motion that a fee award is appropriate here because Plaintiff "is indeed a copyright troll," whose motivation in filing suit was "to abuse copyright and its threat of fees and damages to extract a settlement" and thus to "cash in." (ECF No. 41 at 9.) In this regard, Defendant claims that fees are a necessary punitive measure because Plaintiff is a "copyright troll[] who hoover[s] up registrations of dubious provenance and litigate[s] meritless claims to extract settlements," and goes so far as to suggest that Plaintiff does not actually possess any "real interest" in vindicating Jane Doe's right to control the use of the Video, because in reality, "MCM and its counsel are in a joint moneymaking enterprise." (ECF No. 41 at 9–10, 17.)

These assertions are categorically false. As established in the Mouler Declaration submitted in opposition to the Fee Motion (ECF No. 48), Jane Doe is the owner of Plaintiff MCM Group 22, LLC, which was created after the rights to the Video were assigned to Jane Doe in the Restitution Order (ECF No. 48 ¶ 5). Plaintiff's sole purpose as an entity is to enforce Jane Doe's valid copyright in a video of her that was distributed without her consent, and which was ultimately adjudicated to be the result of criminal sex trafficking activity. (ECF No. 48 ¶¶ 7, 8.) Plaintiff filed suit on plausible allegations that Defendant infringed its copyright and did not have a valid fair use defense for doing so. Ultimately, this Court determined that he did and dismissed the action accordingly.

Nothing about the above even mildly suggests that Plaintiff is a copyright troll. "A copyright troll 'plays a numbers game in which it targets hundreds or thousands of defendants

15

seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Creazioni Artistiche Musicali*, 2017 WL 3393850, at *4 (quoting *Malibu Media LLC v. Doe*, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015)). Nor do any of Plaintiff's actions that Defendant claims warrant sanctions (*see* ECF No. 41 at 8–9) actually constitute trolling behavior. Proposing a settlement, even for an amount that opposing counsel feels has "no connection to any amount [the proponent] could have won as actual damages" (*see* ECF No. 41 at 8), is standard practice in litigation and is not an indicator of bad faith, which is underscored even more by the fact that Plaintiff reduced the amount for which it would settle in the course of discussions with counsel (*see* ECF No. 41-6 at 2). By the same token, Plaintiff's continuing to pursue a case after being apprised of Defendant's legal position as well as the possibility of a fee award (*see* ECF No. 41 at 8–9) speaks to a good-faith belief in the merits of its claim,[6] not that Plaintiff was trying to extract a settlement in purely mercenary fashion. And for the reasons detailed above, that good-faith belief was reasonable.

Defendant knew based on the allegations in the Complaint that Plaintiff was assigned the rights to the Video "for the purpose of prosecuting the use of copies, still images, and derivatives of the Registered Work through DMCA takedown notifications and, when necessary, civil actions such as this." (Compl. ¶ 15.) Defendant was also aware, or at minimum could have easily learned, that Plaintiff does not "play[] a numbers game in which it targets hundreds or thousands of defendants," *Creazioni Artistiche Musicali*, 2017 WL 3393850, at *4, and has not filed numerous copyright infringement claims, or indeed any such claims besides this one. Defendant

---

[6] Relatedly, as Defendant's own exhibits as well as the case docket demonstrate, Plaintiff initially named Mr. Violette as a defendant on a good-faith belief that he was connected to the Twitter account that posted the Tweet, and then voluntarily dismissed him as a defendant promptly upon being shown that he was not. (*See* ECF No. 41-6 at 2; ECF No. 20.) This makes Defendant's contention that "MCM frivolously dragged Mr. Perry's father-in-law, Mr. Violette, into the matter to hold a family member potentially hostage so that MCM and its lawyers could cash in" (ECF No. 41 at 9) more than a little disingenuous.

16

thus had no grounds for its assertions about Plaintiff's motive to "cash in," and has no basis for claiming that a fee award is warranted based on improper motivation.

### C.    Deterrence and compensation do not weigh in favor of a fee award.

As noted above, the "compensation and deterrence" component of the *Fogerty* factors "is meant to ensure that defendants are encouraged to protect their legitimate rights and bad-faith plaintiffs are discouraged from bringing frivolous and unreasonable claims." *Creazioni Artistiche Musicali*, 2017 WL 3393850, at *5.

For essentially the same reasons as detailed above regarding Defendant's spurious claims about Plaintiff's motivation, deterrence concerns do not weigh in favor of a fee award. Plaintiff had a good-faith and reasonable belief in the merits of its claim, pursued the claim without engaging in any form of vexatious litigation, and ultimately did not prevail. Plaintiff was not motivated by profit but rather acted with the purpose of vindicating its, and by extension Jane Doe's, right to control the use of the copyrighted material. "[W]ithout a finding of frivolousness, improper motive, or objective unreasonableness"—and because in reality Plaintiff is not in the business of copyright troll litigation—"there is no behavior for the court to deter." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 2020 WL 2104705, at *3 (N.D.N.Y. May 1, 2020) (quoting *Creazioni Artistiche Musicali*, 2017 WL 3393850, at *5).

Finally, Defendant argues that a fee award will promote access to justice, noting that defense counsel "specifically provides access to justice for moderate-means defendants because courts have typically granted fees," and citing four fee awards that they have received in cases in other jurisdictions. (ECF No. 41 at 10–11.) While these activities are commendable, they have no bearing on this case. A litigant's being of moderate means "does not mean that it must be compensated for the cost of defending against a not unreasonable copyright infringement claim." *Jovani Fashion*, 820 F. Supp. 2d at 574. Compensation may be in order "where a party is forced

17

to . . . defend against objectively unreasonable claims, or where a party engages in misconduct. In those circumstances, there is an interest in disincentivizing behavior that either violates the Copyright Act or exploits it for objectively baseless litigation." *Id.* (internal citations and quotation marks omitted). But "'the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.'" *Id.* (quoting *Matthew Bender & Co., Inc. v. West Publ'g. Co.,* 240 F.3d 116, 122 (2d Cir. 2001)).

Neither deterrence nor compensation weighs in favor of a fee award in the instant case, any more than the reasonableness of Plaintiff's arguments or the propriety of its motive does.[7]

---

[7] Should the Court disagree and find that a fee award is warranted, Plaintiff respectfully submits that Defendant has completely failed to meet his "burden of demonstrating that the requested fees [of $83,760.00] are reasonable." *Romanova v. Amilus Inc.*, 2025 WL 3442700, at \*2 (S.D.N.Y. Dec. 1, 2025). This is because, among other reasons: (i) Defendant has neglected to provide the Court with a "lodestar" figure—which is "'arrived at by multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate,'" *John Wiley & Sons*, 327 F. Supp. 3d at 640—despite admitting that a lodestar figure is "the 'starting point' in determining reasonable attorneys' fees" (ECF No. 41 at 4); (ii) the requested hourly rates for the two principal attorneys Mr. Randazza ($1,000) and Mr. Wolman ($750) are well above the norm in this District, whose courts have found partner rates of "$750 per hour" to be "in excess of a reasonable partner rate for copyright cases," and indeed "'nearly double the rate that courts have approved for partners in this district,'" *Martinka v. Hagedorn Commc'ns, Inc.*, 2025 WL 2642584, at \*9 (S.D.N.Y. Sept. 15, 2025); and (iii) Defendant relies on the Laffey Matrix for his fee calculation, even though multiple courts in this District have *specifically rejected* the Laffey Matrix as a valid measure in cases like this. *See id.* (observing that the Laffey Matrix "has been used to capture the prevailing rates for complex federal litigation in Washington, D.C." but is "generally is not used to determine the rates of lawyers practicing copyright law in New York City"); *N.G.B. v. New York City Dep't of Educ.*, 2023 WL 2711753, at \*11 (S.D.N.Y. Mar. 30, 2023) ("No court in this Circuit has approved the use of the Laffey Matrix to determine the rates of lawyers practicing in New York City."). Defendant has not shown any entitlement to fees, but even if he had, he has fallen well short of his burden to prove that an award of $83,760.00 would be reasonable in this case decided with few procedural issues and entirely on the pleadings.

**CONCLUSION**

For all the reasons set forth above, Plaintiff MCM Group 22, LLC respectfully requests

that the Court deny Defendant's Motion for Attorneys' Fees in its entirety.

Dated: New York, NY
   April 6, 2026

              Respectfully submitted,

               /s/ *David J. Winkler*
              **MINTZ & GOLD LLP**
              David J. Winkler
              Allison Pridmore
              600 Third Avenue, 25th Floor
              New York, NY 10016
              Telephone: (212) 597-9152
              winkler@mintzandgold.com
              pridmore@mintzandgold.com

              *Counsel for Plaintiff MCM Group 22, LLC*

## WORD COUNT CERTIFICATION

I hereby certify, pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.1(c), that the total number of words in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Attorneys' Fees, dated April 6, 2026, exclusive of the portions of the Memorandum of Law excepted under that rule, is 6,492.

Dated:  New York, New York
        April 6, 2026

                                        _/s/ David J. Winkler___

20