UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

MCM GROUP 22 LLC,

Plaintiff,

-against-

LYNDON PERRY,

Defendant.

---------------------------------------------------------x

Case No.: 22-cv-06157-GBD

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ III

MEMORANDUM OF LAW ........ 1

1.0 ARGUMENT ........ 1

1.1 Plaintiff Does Not Object to Defendant Violette's Fee Request ........ 3

1.2 Plaintiff Makes No Significant Challenge to the Amount of Fees Sought ........ 4

1.3 Plaintiff's Infringement Claim was Objectively Unreasonable ........ 5

2.0 CONCLUSION ........ 10

WORD COUNT CERTIFICATION ........ 12

CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

## CASES

*China AI Capital Ltd. v. Dla Piper LLP United States*,
No. 21-CV-10911 (VM) (VF), 2025 U.S. Dist. LEXIS 98157 (S.D.N.Y. 2025) ....................... 4

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ....................... 2

*Garcia v. Google, Inc.*,
786 F.3d 736 (9th Cir. 2015) ....................... 5

*Harrington v. Kaushan Media Corp.*,
No. 23-CV-03213 (JGLC) (VF), 2023 U.S. Dist. LEXIS 229668 (S.D.N.Y. 2023) ....................... 9

*Hello I Am Elliot, Inc. v. Sine*,
No. 19 Civ. 6905 (PAE), 2021 U.S. Dist. LEXIS 61261 (S.D.N.Y. 2021) ....................... 6, 7, 10

*Hirsch v. CBS Broad. Inc.*,
2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. 2017) ....................... 10

*Hofheinz v. AMC Prods.*,
2003 U.S. Dist. LEXIS 16940 (E.D.N.Y. 2003) ....................... 5

*Janik v. SMG Media, Inc.*,
2018 U.S. Dist. LEXIS 4567 (S.D.N.Y. 2018) ....................... 7

*Kali Konangataa v. ABC*,
2017 U.S. Dist. LEXIS 95812 (S.D.N.Y. 2017) ....................... 9

*Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*,
77 F.4th 630 (7th Cir. 2023) ....................... 2, 7

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020) ....................... 8

*Martinka v. Hagedorn Communs., Inc.*,
2025 U.S. Dist. LEXIS 180590 (S.D.N.Y. 2025) ....................... 4

*New Era Publ'ns Int'l. ApS v. Henry Holt & Co.*,
695 F. Supp. 1493 (S.D.N.Y. 1988) ....................... 7

*Nicklen v. Sinclair Broad. Grp., Inc.*,
551 F. Supp. 3d 188 (S.D.N.Y. 2021) ....................... 10

*Rosemont Enters. v. Random House, Inc.*,
366 F.2d 303 (2d Cir. 1966) ....................... 1

*Sofa Entm't, Inc. v. Dodger Prods.*,
709 F.3d 1273 (9th Cir. 2013) .......... 10

*TCA Television Corp. v. McCollum*,
2017 U.S. Dist. LEXIS 86138 (S.D.N.Y. 2017) .......... 9

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
953 F.3d 638 (9th Cir. 2020) .......... 2

*Troll Co. v. Uneeda Doll Co.*,
483 F.3d 150 (2d Cir. 2007) .......... 5

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
342 F.3d 191 (3d Cir. 2003) .......... 1

**STATUTES**

17 U.S.C. § 412 .......... 5

17 U.S.C. § 505 .......... passim

17 U.S.C. § 512 .......... 10

**OTHER AUTHORITIES**

Cathay Y.N. Smith, *Weaponizing Copyright*, 35 HARV. J.L. & TECH. 193, 217 (2021) .......... 7

M. Margaret McKeown, *Censorship in the Guise of Authorship: Harmonizing Copyright and the First Amendment*, 15 CHI. KENT. J. INTELL. PROP. 1, 16 (2016) .......... 1

**RULES**

Fed. R. Civ. P. 11 .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 4, 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const., art. I .......... 5

**MEMORANDUM OF LAW**

"The spirit of the First Amendment applies to the copyright laws at least to the extent that the courts should not tolerate any attempted interference with the public's right to be informed regarding matters of general interest when anyone seeks to use the copyright statute which was designed to protect interests of quite a different nature." *Rosemont Enters. v. Random House, Inc.*, 366 F.2d 303, 311 (2d Cir. 1966) (Lumbard, J., concurring). "A copyright holder's attempt to restrict expression that is critical of it … may, in context, subvert … a copyright's policy goal to encourage the creation and dissemination to the public of creative activity." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 205-06 (3d Cir. 2003). "Our legal system…protects the expression of ideas. No matter how noble and important the values of privacy and protection of reputation, copyright is not the direct vehicle for their vindication." M. Margaret McKeown, *Censorship in the Guise of Authorship: Harmonizing Copyright and the First Amendment*, 15 CHI. KENT. J. INTELL. PROP. 1, 16 (2016). MCM Group 22 ("MCM")'s owner made a pornographic film that she may have been misled into believing would only be released in Australia. Whatever fraud the producers may have committed does not give her company the right to abuse the legal system to silence her critics. And despite MCM's protestations that this is about hiding the fact that JK did porn, it was more targeted to hiding the fact that she was part of a $4 billion business swindle. To silence that story, MCM brought a bogus copyright claim. Defendants' Motion for Attorneys' Fees (ECF No. 38 ("Fee Motion")) should be allowed.

## 1.0 ARGUMENT

While the Court may undertake a holistic analysis to determine whether to award fees, there are three considerations that favor a fee award to Defendants: MCM's claim was objectively unreasonable, it brought this claim for a purpose specifically at odds with the purpose of the Copyright Act, and access to justice will suffer if fees are not awarded.

MCM is dishonest with the court when it claims that the Copyright Act's fee-shifting provision "exists to deter abuse of the system by copyright trolls" (ECF No. 47 at 6). Section 505 was enacted in 1976, well before the concept of a copyright troll existed.[1] The truth is as the Supreme Court pronounced, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement" to ensure that "the boundaries of copyright law be demarcated as clearly as possible." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).[2]

If MCM is permitted to have no responsibility for its objectively unreasonable claim, it would discourage other defendants from asserting "meritorious fair use claims against unreasonable claims of infringement," which serves the essential goals of the Copyright Act. *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020). This is because, from the start, Copyright law is a bit unfair. A "copyright plaintiff can recover damages and receive a judicial recognition of her rights…The best [a successful defendant] can hope for is to break even—to recover his attorney's fees." *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 632 (7th Cir. 2023).

This asymmetry impoverishes free speech. After all, if there is a meritorious fair use defense, then the defendant should assert it. But, if the courts decide to cater to unreasonable copyright claimants by refusing to make them pay fees, especially in wildly unreasonable claims like this one, they reward and encourage frivolous suits. Why would the next fair use defendant defend this concept if it is cheaper to pay the plaintiff's ransom demand? Fees are proper here.

[1] Plaintiff also misrepresents that the Court found Plaintiff is the owner of the pornographic video. ECF No. 47 at 7, citing ECF No. 38 at 2. This is false, as the Court merely noted that, because it was granting Defendants' motion to dismiss on fair use grounds, it did not need to decide the alternative argument of lack of ownership, and thus "assume[d] for the purposes of this motion that the Restitution Order properly transferred title." ECF No. 38 at 2 n.2.

[2] All of the *Fogerty* factors are addressed in this reply, even if not by specific section header.

Plaintiff attempts to add new facts to make this suit appear legitimate through the declaration of "Bert Mouler"; they are immaterial, and the declaration is incompetent evidence. MCM claims that JK is MCM's sole owner. ECF No. 48 at ¶ 5. Bert Mouler is not the owner and there is no foundation for his testimony. Further, his declaration is hearsay on hearsay. How hard would it have been to provide corporate documents proving these assertions? Or a declaration of JK (even if need be, under seal)? Instead, they just got an unaffiliated person to testify?

There is no testimony, aside from allegedly being JK's husband, that he has any personal knowledge of the matters contained in his declaration. There is no allegation that he is familiar with MCM or its operations or has ever even spoken with JK about the company, the pornographic video, or this lawsuit. In fact, his statement about why MCM was created relies on the language of this Court's order on Defendants' motion to dismiss, which in turn relied on MCM's own allegations in its Complaint. ECF No. No. 48 at ¶ 7.[3] The Court should ignore his declaration as incompetent and improper.

**1.1 Plaintiff Does Not Object to Defendant Violette's Fee Request**

There were two Defendants here. Defendant Violette was sued without jurisdiction of this Court and without cause. A perfunctory exercise of due diligence would have clued Plaintiff into seeing that Mr. Perry was not Mr. Violette, a purported alter ego, but rather Mr. Perry's father-in-law. Given Plaintiff's experienced counsel, it was likely an abusive tactic holding a family member hostage to pressure Mr. Perry to pay up an unreasonable settlement demand. Even if it weren't fair use, Mr. Violette was victimized, and he never should have been sued consistent with Rule 11. Plaintiff claims having had a "good-faith belief" Mr. Violette was connected with Mr.

[3] Of course, should the Court be inclined to consider Mouler's declaration, Defendants should be entitled to depose Mouler and JK on these assertions. Further, as any information Mouler may have must have come from JK, the marital communications privilege must be deemed waived.

Perry's Twitter account (ECF No. 47 at 16 n. 6), but offers no evidence to support this, and that is because it lacks candor. Nor is there any specific objection to Mr. Violette's recovery of fees—the Notice of Motion (ECF No. 40) and Memorandum (ECF No. 41) were filed by both Defendants, yet Plaintiff's opposition specifically states it is only an objecting to Mr. Perry's motion (ECF No. 47 at 6), referring to "Defendant" in the singular throughout (*id.* at 1 & 24). Thus, fees to Mr. Violette are unopposed.

### 1.2 Plaintiff Makes No Significant Challenge to the Amount of Fees Sought

Relegating its argument as to the amount of fees to be awarded to a footnote at the end of its Opposition (ECF No. 47 at 23 n. 7), MCM agrees that the lodestar calculation method is proper. Defendants provided a breakdown of their counsels' 126.1 hours and rates. (ECF No. 41 at 17 & 41-8). Plaintiff's footnote challenges no time entries. Instead, Plaintiff contests rates, relying on *Martinka v. Hagedorn Communs., Inc.*, 2025 U.S. Dist. LEXIS 180590 (S.D.N.Y. Sep. 15, 2025), where a copyright trolling firm, which recycles pleadings, obtained a default judgment. This case, in contrast, was more complex, litigating fair use issues on a 12(b)(6) motion. Reasonable rates, therefore, are more comparable to one where this Court approved a $1,408.57 hourly rate, citing comparable partner rates over $1,000/hour for complex and IP disputes. *See China AI Capital Ltd. v. DLA Piper LLP United States*, No. 21-CV-10911 (VM) (VF), 2025 U.S. Dist. LEXIS 98157, at *8 (S.D.N.Y. May 22, 2025). Attorney Randazza is a well-regarded, nationally prominent attorney of at least equal caliber to Gibson Dunn. And, in *China AI Capital,* a $675/hour rate was proper for a 2018 Georgetown graduate. Attorneys Randazza and Wolman are Georgetown Class of 2000, and their rates of $1,000 and $750, respectively, are reasonable. *Compare id.* at 13-15. Moreover, MCM paid its own counsel $18,000 just to file the complaint (ECF No. 41-1). That is

evidence of the reasonableness of Defendants' counsels' fees and the need for Randazza Legal Group's higher-caliber defense.[4]

**1.3 Plaintiff's Infringement Claim was Objectively Unreasonable**

This litigation was not about "promoting the progress of science and useful arts." U.S. Const., art. I, § 8, cl. 8. It was a bad faith attempt to use the Copyright Act to censor and financially punish a critic and his father-in-law. As the 9th Circuit noted in *Garcia v. Google, Inc.*, "a weak copyright claim cannot justify censorship in the guise of authorship." 786 F.3d 736 (9th Cir. 2015).

> "Such uses of copyright litigation directly threaten the purposes of the Copyright Act, by chilling the creation and dissemination of creative critical works. If plaintiff believed that the Documentary was inaccurate, disrespectful, or otherwise unfair with respect to her late husband, her remedy is to create additional works refuting the Documentary, not to engage in a pattern of private censorship through frivolous assertion of unrelated copyright claims." *Hofheinz v. AMC Prods.*, 2003 U.S. Dist. LEXIS 16940, at *18 (E.D.N.Y. Sep. 1, 2003)(awarding fees to prevailing fair-use defendant).

MCM attempts to shift the narrative by trying to make this case about someone trying to cleanse their past of the fact they were in porn, and that it was produced by terrible people. That doesn't make it right for her to attempt to extort Mr. Perry. Further, MCM is not being truthful. The tweet was part of an ongoing discussion online about *Celsius Network*. The complaint itself acknowledged this. As the Court characterized it:

> The Tweet was Perry's second post in a larger thread. The first post in the thread shows an advertisement for Celsius Network next to a screenshot of a Reuter's article entitled, "Crypto Firm Celsius Pauses All Transfers, Withdrawals, as Markets Tumble." Defendant then replied to this post with the Tweet, which included the composite image and the message "Same company btw."

ECF No. 38 at 3. Perry wrote about a national controversy over a company that collapsed and cost its investors millions of dollars. JK, as a key executive in that company, was a part of this failure.

[4] MCM's demand that Mr. Perry pay MCM's fees was unreasonable. MCM, even had it prevailed, would never have been entitled to fees as the alleged infringement occurred years after first publication. 17 U.S.C. § 412; *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007).

And despite major investor losses, she managed to wind up affording a $14 million condo. *See* **Exhibit 1**.

During an ongoing discussion about Celsius and its millions in losses, Perry pointed out that one of its key executives was JK. And JK gave an interview only a few years prior in which her responses to a question about her studies makes it somewhat clear that such great responsibility was misplaced by giving it to her. The fact that the interview was a (fully clothed and decent) prelude to a pornographic film had nothing to do with it, but was still relevant. This was part of an ongoing and post-mortem discussion about why hundreds of millions of Celsius's dollars went "poof" (and at least $14 million of those dollars appear to have bought a really nice home) and included discussing JK's potential mismanagement of $300m in Celsius's bitcoin assets.[5] When JK—prior to being entrusted with such responsibility—gave an interview that revealed a deep lack of intellectual horsepower, her prior interview became directly relevant to any serious public discussion of the factors contributing to Celsius's collapse and $4 billion disappearing. For MCM to claim this to be infringement was unreasonable and sanctionable. It was about hiding JK's financial past.

#### 1.3.1 MCM Litigated with a Motive to Censor and Inflict Punishment

MCM claims a party may only be "'improperly motivated where it asserts claims not because of their inherent merit, but rather because the party seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain'" ECF No. 47 at 11, quoting *Hello I Am Elliot, Inc. v. Sine*, No. 19 Civ. 6905 (PAE), 2021 U.S. Dist. LEXIS 61261, *15 (S.D.N.Y. Mar. 30, 2021)(cleaned up). Yes, exactly. MCM openly admitted that its purpose in filing this suit was to censor Mr. Perry's speech, not to further the purposes of the Copyright Act. *See* ECF No.

---

[5] *See* Forbes, Profile of JK, https://www.forbes.com/profile/jessica-khater/

47 at 6 & 20 (admitting the action was commenced for the benefit of JK, not for anything to do with licensure or promoting creative works). This behavior must be deterred.

MCM proffered an unreasonable legal theory to achieve a secondary gain. *See Sine, supra*; *see also Janik v. SMG Media, Inc.*, 2018 U.S. Dist. LEXIS 4567, at *38 (S.D.N.Y. Jan. 10, 2018) (citation omitted). Copyright can be used "as an aggressive weapon to prevent the publication of embarrassing revelations and to obstruct criticism." *New Era Publ'ns Int'l. ApS v. Henry Holt & Co.*, 695 F. Supp. 1493, 1502 (S.D.N.Y. 1988). "Asserting copyright out of spite to punish another party or to retaliate against perceived wrongdoings is clearly not why copyright law grants authors exclusive rights to their copyrighted works." Cathay Y.N. Smith, *Weaponizing Copyright*, 35 HARV. J.L. & TECH. 193, 217 (2021). Yet, what consequence to MCM was there in silencing of a public interest discussion regarding the Celsius Network scandal if the only downside was just losing? MCM still got to make the Defendants pay to defend themselves, including Mr. Violette, who had *nothing* to do with the tweet. The disincentive, especially for MCM, owned by the ludicrously wealthy JK, is but a rounding error. JK is not in financial distress—having recently purchased a $14 million condo. *See* Exhibit 1. But, to the Defendants, defense costs are existential. Without fees, a defendant is pressured to "throw in the towel" because the cost of defense exceeds the private benefit of winning. *Live Face on Web, LLC, supra*, 77 F.4th 630, 632.

This was not a suit to recover a lost licensing fee; it is a classic SLAPP, albeit not covered by the SLAPP law, because that law does not cover federal claims. The Anti-SLAPP law's principles matter and should inform the court's decision. This was a matter of public concern, in a public forum, and the case failed to even begin to show any justification for its inception.

Even if it were about protecting JK's privacy *vis a vis* her porn past, that would *still* have been an abuse of copyright law. This is not a case about protecting JK. Plaintiff claims it filed this

suit "in a legitimate effort to enforce a violation of the copyright after Defendant posted a still image reproducing an entire frame of the Video to Twitter." ECF No. 47 at 6. Yet, of the abundance of unlicensed reproductions of the entire movie, which remains online,[6] there have been no lawsuits over those. None. A lawsuit was filed only when the attention was focused on JK's role in a $4 billion swindle. Notably, MCM wasn't even formed until July 11, 2022, *just two days before Celsius filed for bankruptcy* (about which she certainly knew) and no copyright application was filed until July 14, 2022. *See* **Exhibits 2 and 3**. If this were merely a matter of going after infringers, then Plaintiff has a bizarre method of selecting its targets, given that infringements remain all over the Internet, with no suit filed by MCM against even the most obvious infringers. But, MCM admits it only registered the copyright because Mr. Perry had the audacity to assert his rights. ECF No. 47 at 8.

MCM cites *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 174 (2d Cir. 2020), for the proposition that a copyright claim is not objectively unreasonable "if it implicates 'a relatively novel issue.'" ECF No. No. 47 at 10-11. The only "novel" issue is that it would be "novel" if a court were to agree that a single newsworthy still frame from a movie cannot be used to discuss a $4 billion financial swindle when it is an interview about a key player in that business discussing their future in finance in the prelude to a porn movie. Fair use was obvious on the face of the complaint, and there were no novel fair use issues.

Plaintiff targeted Defendants and made unreasonable demands. Even after suit was filed, Mr. Perry offered what MCM claims was its goal – to take the image down. Instead, MCM

[6] Out of propriety, undersigned counsel will not link to them, but represents to the Court they can be found. If the Court would like a compendium of where the full-length film can be found, it will be provided, but suffice to say it is not difficult to download this movie in its entirety.

demanded $18,000 in fees to which it wasn't entitled and $50,000 in damages for which there was no reasonable basis.[7] ECF No. 41-1.

> COMPROMISE OFFER & SETTLEMENT NEGOTIATION
> Fed. R. Evid. 408
>
> Mr. Wolman-
>
> Prior to your representation of Mr. Perry in this matter, he had made a settlement proposal to our client on July 26 as follows:
>
> 1) You drop the lawsuit.
> 2) You drop the DMCA claim on my twitter account.
> 3) I will voluntarily delete the tweet and agree not to repost or talk about your client anymore.
>
> We have been conferring with our client regarding this proposal and I think it gets us most of the way there. We have been authorized to make the following counter-proposal by our client:
>
> (#1-3 proposed by your client above)
> 4) A liquidated damages provision providing $10,000 for each violation of his promise not to talk about our client anymore.
> 5) Writing an apology, suitable to our client but not mentioning our client by name, for using material arising from criminal sex trafficking, and pinning that apology to the top of his twitter feed for six months.
> 6) Repaying my client the attorneys fees that she has incurred since he sent his counter-notification, presently in the amount of approximately $18,000.
> 7) Paying to my client $50,000 in damages.

This was about deterring Perry from reporting on JK's involvement in Celsius, not to further the ends of the Copyright Act.

#### 1.3.2 Fair Use was Obvious

Plaintiff's claim was "clearly without merit on [the] determinative issue" of fair use. *TCA Television Corp. v. McCollum*, 2017 U.S. Dist. LEXIS 86138, at *26-27 (S.D.N.Y. June 5, 2017)(citation omitted). As the Court held, "the defense of fair use is apparent on the face of the complaint." ECF No. 38 at 1. "Here, no reasonable lawyer with any familiarity with the law of copyright could have thought that the fleeting and minimal use[], in the context of news reporting and social commentary" about a large, newsworthy bankruptcy "was anything but fair." *Kali Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812, at *4 (S.D.N.Y. June 21, 2017). Plaintiff claims its reliance on *Hirsch v. CBS Broad. Inc.*, 2017 U.S. Dist. LEXIS 123468, at *20-21

[7] As noted above, neither fees nor statutory damages were recoverable. Even if they were, "courts in this Circuit typically award statutory damages between $1,000 and $5,000 in cases of single use copyright infringement." *Harrington v. Kaushan Media Corp.*, No. 23-CV-03213 (JGLC) (VF), 2023 U.S. Dist. LEXIS 229668, at *11 (S.D.N.Y. Nov. 21, 2023) (cleaned up).

(S.D.N.Y. Aug. 4, 2017) made the claim reasonable (ECF No. 47 at 14), but *Hirsch* involved much different circumstances—the wholesale use of the entire work without any transformative use. It is risible to cite *Hirsch* here. "When a fee award encourages a defendant to litigate a meritorious fair use claim against an unreasonable claim of infringement, the policies of the Copyright Act are served." *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

MCM cites a takedown request it served on Twitter under the DMCA, which Twitter honored. ECF No. 47 at 8. This does not help MCM. Twitter automatically honors DMCA notices. The request itself violated 17 U.S.C. § 512(f); there is no way MCM formed a good-faith belief that tweeting a single frame of the video in a critique was not fair use. MCM is lucky Defendants didn't file a counterclaim under 512(f) for this bad-faith takedown.

The fact that fair use was found on the face of the complaint makes this case exceptional, not that exceptionality is required. *See, e.g., Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 199 (S.D.N.Y. 2021) ("[G]ranting a motion to dismiss on fair use grounds is rare.") MCM argues its claim was not objectively unreasonable. But, what is a stronger sign of objective unreasonableness than a loss on fair use grounds in a Rule 12(b)(6) motion where the Court states that all four factors are either neutral or weigh strongly in the defendants' favor? ECF No. 38 at 6-13. It was "clearly without merit[.]" *Sine, supra*, at *21-22 (citation omitted). This is the type of case in which justice strongly supports an award of fees to the prevailing defendants under 17 U.S.C. § 505.

## 2.0 CONCLUSION

The Court should not reward Plaintiff's attempt to weaponize Copyright for censorship. An award of $83,760.00, based on undisputed hours and reasonable market rates, is necessary to compensate Defendants and to deter Plaintiff from future copyright abuses.

Dated: April 16, 2026.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc Randazza (*Pro Hac Vice*)
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 978-801-1776
Email: ecf@randazza.com

/s/ Jay M. Wolman
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 702-420-2001
Email: jmw@randazza.com

*Attorneys for Defendants*

## WORD COUNT CERTIFICATION

I certify, pursuant to LR 7.1(c), that the total number of words in the foregoing document, not including the portions excluded by that rule, is 3,443.

/s/ Jay M. Wolman
Jay M. Wolman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman