**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MGM GROUP 22 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-06157 |
| | ) | |
| LYNDON PERRY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**[PROPOSED]**
**BRIEF OF *AMICI CURIAE* LOLCOW LLC AND**
**THE UNITED STATES INTERNET PRESERVATION SOCIETY**
**IN SUPPORT OF DEFENDANT'S MOTION FOR PREVAILING PARTY**
**ATTORNEYS' FEES AND COSTS**

---

NOW COME Lolcow LLC and the United States Internet Preservation Society, and file this brief as *amici curiae*.

**Statement of Interest of Amici Curiae**

Lolcow LLC ("Lolcow") is a West Virginia limited liability company and copyright licensee that frequently finds itself managing copyright litigation and licensing issues. The United States Internet Preservation Society ("USIPS") is a nonprofit organization whose mission is to restore the Internet's position as a vibrant marketplace for the free flow of ideas. Together, they respectfully submit this brief as *amici curiae* in support of Defendant Lyndon Perry's motion for prevailing party attorneys' fees and costs under 17 U.S.C. § 505.

Lolcow owns an Internet discussion forum known as Kiwi Farms, a website that hosts commentary, parody, and criticism of public and semi-public figures and their creative works. Kiwi Farms does not sell advertising and is not a commercial operation in any conventional sense.

1

Nevertheless, Lolcow and its affiliates have been subjected to repeated Digital Millennium Copyright Act ("DMCA") takedown demands and copyright infringement lawsuits arising from the forum's hosting of user commentary that incorporates copyrighted works for purposes of criticism and parody. These are quintessential fair uses. Lolcow's was one of the petitioners in *Moon v. Greer*, 144 S. Ct. 2521 (2024) (cert. denied), a case involving, *inter alia*, the scope of fair use and the proper response to DMCA takedown notices. That case, which began over five years ago and continues to be litigated today following remand to the U.S. District Court for the District of Utah, underscores the paralyzing collision between free speech and modern copyright enforcement.

USIPS was founded to advocate for the preservation of open discourse on the Internet. USIPS has previously appeared as *amicus curiae* before the Supreme Court of the United States in *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026), where it briefed the Court on the dangers of an ill-defined "knowledge" standard for contributory copyright infringement, the chilling effect of automated DMCA takedown regimes on fair use, and the need for a clear "actual knowledge" standard to protect Internet service providers and individual speakers alike. Both Lolcow and USIPS thus have direct, concrete, and ongoing institutional interests in the development of copyright law as it relates to fair use, fee shifting, and the protection of online commentary.

Both amici have a direct and concrete interest in the question presented because the fee-award outcome in this case will materially affect the willingness of platforms like Kiwi Farms to continue hosting commentary that incorporates copyrighted works for purposes of criticism, parody, and public-interest discussion. As Lolcow's experience in *Greer* demonstrated, the economics of defending fair-use claims are punishing for small and non-commercial speakers.

When defense costs are unrecoverable even after a successful outcome, the rational response for platforms and individual speakers is to capitulate to takedown demands regardless of their merit, thereby chilling lawful speech. A denial of fees in a case where fair use was apparent on the face of the complaint would signal to copyright plaintiffs that such claims carry no meaningful downside risk, further encouraging the use of copyright as a tool to suppress criticism rather than to protect creative works. The availability of fee recovery in clear fair-use cases is essential to the continued willingness of counsel to represent small-entity defendants in copyright disputes, and to the practical scope of fair use in this District.

### Summary of Argument

Section 505 of the Copyright Act grants district courts discretion to award reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505. The Supreme Court has instructed that this discretion should be exercised evenhandedly. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The objective reasonableness of the losing party's position, is not dispositive. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 2028 (2016) ("objective reasonableness can be only an important factor in assessing fee applications—not the controlling one"). Within that framework, three considerations support a fee award here.

First, the compensation and deterrence considerations that *Fogerty* and *Kirtsaeng* preserve carry special force where Defendant prevailed on the pleadings yet bore the full cost of vindicating speech that copyright law already protects. Second, denial of fees in clear fair-use cases produces a structural chilling effect: risk-averse defendants who settle rather than litigate generate licensing-market evidence that erodes fair use for the next defendant. Third, because fair-use defenses are rarely resolved at the pleading stage, a defendant who obtains dismissal on the pleadings has spared

3

the parties and the Court the cost of the ordinary fair-use trajectory, and the case for fee recovery is correspondingly strong.

The analysis this Court must perform is the Second Circuit analysis, governed by *Fogerty*, *Kirtsaeng*, and their progeny. Persuasive authority from the Seventh Circuit reinforces these conclusions. That analysis supports fees here.

**Argument**

**I. The *Fogerty*/*Kirtsaeng* Framework, as Applied in this Circuit, Supports a Fee Award.**

The Copyright Act places the fee decision in the Court's discretion, to be exercised in light of the nonexclusive considerations identified in *Fogerty*: "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534 n.19 (citation omitted). The Supreme Court reaffirmed and recalibrated that framework in *Kirtsaeng*, holding that while objective reasonableness should receive "substantial weight," it must not be treated as a near-presumption against fees that displaces the other *Fogerty* factors. 579 U.S. at 202-04.

*Kirtsaeng*'s clarification matters particularly in this Circuit. The Supreme Court noted that the Second Circuit had placed substantial emphasis on objective reasonableness, *id*. at 201, but held that a fee court must still consider the totality of circumstances. The Second Circuit's own cases are consistent with that approach: objective reasonableness is important, but it is not an absolute bar to fees. See *Matthew Bender & Co., Inc. v. West Publishing C*o., 240 F.3d 116, 122 (2d Cir. 2001) ("the presence of other factors might justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable.").

Post-*Kirtsaeng* decisions in this District have applied the same rule. Courts retain broad discretion under Section 505 and may award fees to deter overaggressive copyright claims or other

4

conduct inconsistent with the Copyright Act's goals. *See Capitol Recs., LLC v. ReDigi Inc.*, No. 12 Civ. 95 (RJS), 2022 WL 1046463, at *3 (S.D.N.Y. Apr. 7, 2022) (explaining that courts may award fees to deter overaggressive assertions of copyright claims).

Two conclusions follow. First, even if Plaintiff contends its claim was not frivolous, that contention does not end the inquiry. The Court retains discretion to award fees where compensation and deterrence warrant them. Second, the clarity of the fair-use defense (especially where it was apparent on the face of the complaint) is itself a circumstance the Court may weigh both in assessing objective reasonableness and in determining whether a fee award is needed to deter similar claims against protected commentary.

**II. Fee Recovery is Often Necessary to Make Meritorious Fair-Use Defenses Economically Rational.**

Fair-use defense in this District is expensive. Courts in this District regularly recognize substantial hourly rates for copyright and intellectual-property litigation. Recent decisions have described reasonable partner rates in copyright or intellectual-property matters as reaching roughly $400 to $750 or more, with associate rates commonly falling in the $200 to $450 range, depending on experience and case complexity. *See, e.g., Sibanda v. Elison*, No. 23 Civ. 5752, 2024 WL 4766407, at *7, 2024 U.S. Dist. LEXIS 199163, at *7 (S.D.N.Y. Oct. 31, 2024) (S.D.N.Y. Oct. 31, 2024); *Viahart, LLC v. Creative Kids Online, LLC*, No. 20 Civ. 9943, 2025 WL 2873544 at *5, 2025 LX 443447 (S.D.N.Y. Oct. 1, 2025). Complex copyright litigation can therefore become uneconomic for an individual or small-entity defendant long before the merits are resolved.

These costs fall on copyright defendants in a structurally one-sided way. A copyright plaintiff may seek damages, statutory damages where available, injunctive relief, and leverage from settlement pressure. A fair-use defendant ordinarily has no affirmative damages recovery to

fund a contingency arrangement. Fair-use defendants are often individuals, small businesses, journalists, online speakers, or creators of modest means. Pro bono representation is valuable, but it cannot reliably meet demand or sustain a complex, fact-intensive defense through discovery and dispositive motions.

When experienced defense counsel know that even a successful outcome will leave the client bearing the full cost of vindication, the rational decision is often to decline the engagement; the rational decision for the defendant is often to settle or license rather than litigate. Section 505 was designed to interrupt that dynamic. As Judge Posner explained, "when a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).

### III. Denying Fees In Clear Fair-Use Cases Erodes The Doctrine Itself.

Fair use occupies a distinctive role in American copyright law as one of copyright's "built-in First Amendment accommodations." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). Section 107 is codified, but it is also open-textured and precedent-driven; the four-factor inquiry "is not to be simplified with bright-line rules" and "calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Fair use's vitality therefore depends on continued judicial development through actual litigation.

Professor James Gibson has identified the structural problem that arises when defendants cannot afford to litigate. *See* James Gibson, *Risk Aversion and Rights Accretion in Intellectual Property Law*, 116 Yale L.J. 882 (2007). Because the fourth fair-use factor looks to the existence and harm of licensing markets, the very act of licensing—chosen by risk-averse parties precisely

to avoid the cost of litigation—can generate evidence that future courts may weigh against fair use. The result is a feedback loop: each capitulation strengthens the licensing market, which weakens the defense, which produces more capitulation. *Id*. at 907-17.

The unavailability of fee recovery accelerates this loop. Each defendant who declines to litigate a meritorious fair-use defense because the cost of victory is unrecoverable is one less precedent clarifying the doctrine, and one more data point in the licensing record that courts may consult in future cases. Fee awards help prevent copyright plaintiffs from achieving by litigation cost what they could not obtain on the merits: practical control over lawful commentary.

## IV. Fair-Use Cases are Rarely Resolved at the Pleading Stage, Making Early-Dismissal Costs Particularly Acute.

Professor Barton Beebe's empirical study of reported U.S. fair-use opinions from 1978 through 2019 confirms that fair use is overwhelmingly resolved on summary judgment or later, not on the pleadings. Barton Beebe, *An Empirical Study of U.S. Copyright Fair Use Opinions Updated*, 1978-2019, 10 N.Y.U. J. Intell. Prop. & Ent. L. 1 (2020). Beebe identified only 53 reported opinions addressing fair use on a motion to dismiss, while 58.7% of reported fair-use opinions addressed summary judgment. *Id*. at 9, 16, 36-37. Courts in this District therefore remain right to treat pleading-stage fair-use dismissals as possible but unusual.

The data leads to two additional conclusions: First, a defendant facing a fair-use claim must ordinarily expect to bear the costs of discovery and dispositive motion practice. Second, where (as here) a defendant succeeds in obtaining dismissal on the pleadings, the strength of the defense was unusually clear; the defendant has spared the parties and the Court the cost of the ordinary fair-use trajectory; and the case for fee recovery is correspondingly strong on compensation and deterrence grounds.

## V. Persuasive Authority From Other Circuits Reinforces This Analysis

Although the Second Circuit has not adopted a presumption in favor of prevailing copyright defendants, other circuits have, and their reasoning is consistent with the *Fogerty*/*Kirtsaeng* framework. The Seventh Circuit holds that "when denying a prevailing copyright defendant his attorney's fees, a district court's discretion is very narrow," *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 632 (7th Cir. 2023), and has long explained that fee awards are especially important when the private value of a meritorious defense is smaller than the cost of vindicating it. *See Assessment Techs.*, 361 F.3d at 437.

These authorities do not bind this Court and should not displace the Second Circuit framework. They simply confirm the same policy judgment that *Fogerty* and *Kirtsaeng* leave available to district courts: compensation and deterrence matter most when a defendant has successfully vindicated a meritorious copyright defense with little private upside and substantial public value.

### Conclusion

The circumstances of this case make the case for fees particularly strong. Plaintiff MGM Group 22 LLC is a litigation vehicle formed to pursue copyright claims arising from a single video. ECF No. 38 at 2. That video was filmed by the founders and operators of GirlsDoPorn.com and GirlsDoToys.com, and the Court recognized at the pleading stage that GDP was revealed by criminal cases to be a criminal sex-trafficking enterprise. Id. at 1. This fact should not distort the fair-use analysis, but it explains why the case implicated public-interest commentary and why copyright should not be converted into a tool for suppressing lawful discussion.

The Court resolved this case on a motion to dismiss because "the defense of fair use is apparent on the face of the complaint." ECF No. 38 at 1. The Court found the first factor strongly

8

favored fair use because the Tweet was substantially transformative commentary; the second factor was neutral and did not weigh for or against fair use; the third factor favored fair use because Defendant copied only an insubstantial amount of the video for a transformative purpose; and the fourth factor favored fair use because the Tweet did not, and could not, usurp the market for the video. *Id*. at 8-12.

Whatever Plaintiff's subjective motive, the claim sought to impose copyright liability on public-interest commentary that did not substitute for the work or impair a cognizable copyright market. On these facts, denying fees would require Defendant to bear the full cost of vindicating speech that copyright law already protected, and would signal that copyright claims of this character carry no meaningful downside risk for the plaintiffs who bring them. That is precisely the result Section 505 is designed to prevent. The compensation and deterrence considerations identified in *Fogerty* and preserved by *Kirtsaeng* support an award of reasonable attorneys' fees and costs.

For the foregoing reasons, Lolcow LLC and the United States Internet Preservation Society respectfully urge this Court to grant Defendant's motion and award reasonable attorneys' fees and costs under 17 U.S.C. § 505.

Respectfully submitted this the 12th day of May 2026,

HARDIN LAW OFFICE

By: /s/Matthew D. Hardin
    Matthew D. Hardin
Attorney Reg. No. 5899596
101 Rainbow Drive # 11506
Livingston, TX 77399
Phone: 212-680-4938
Email: MatthewDHardin@gmail.com

*Counsel for Lolcow LLC and the*
*United States Internet Preservation Society*

9