UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MCM GROUP 22 LLC,

Plaintiff,

22-CV-6157 (GBD) (VF)

-against-

**OPINION AND ORDER**

LYNDON PERRY, et al.,

Defendants.
---------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge.**

Pending before the Court is Defendant Lyndon Perry's ("Perry") motion for attorney's fees as the prevailing party under the Copyright Act, 17 U.S.C. § 505. See ECF No. 40. For the reasons set forth below, Perry's motion is **DENIED**.

## BACKGROUND

Plaintiff MCM Group 22 LLC ("MCM") is a limited liability company and the owner by assignment of a registered copyright for a pornographic video (the "Video"). ECF No. 1 at ¶¶ 1, 12. MCM's predecessor-in-interest is a non-party to this suit and is referred throughout the Complaint as "Jane Doe." ECF No. 38 at 1.[1] In 2015, Jane Doe appeared in the Video, which was filmed by the founders and operators of Girlsdoporn.com and Girlsdotoys.com (collectively, "GDP"). ECF No. 1 at ¶¶ 11, 13.

As revealed by a series of criminal cases, GDP was a criminal sex-trafficking enterprise, in which the website's operators recruited victims to appear in videos under fraudulent pretenses, and Jane Doe was one of GDP's victims. See id. at ¶¶ 11, 13, 15; ECF No. 29-1 at 3-4. After a

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

co-conspirator pled guilty to sex-trafficking crimes, on December 14, 2021, the Honorable Janis L. Sammartino of the Southern District of California issued a restitution order pursuant to 18 U.S.C. § 1593, providing that Jane Doe would "hold[ ] superior right, title, and interest in the images, likenesses, and videos depicting [her] produced by GDP" and "shall have and recover all property that GDP . . . took from [her], including images, likenesses, videos, and copyrights." ECF No. 38 at 2 (quoting ECF No. 29-1 at 5-6). Jane Doe subsequently assigned her rights in the Video to MCM "for the purpose of prosecuting the use of copies, still images, and derivatives of the [Video] through DMCA takedown notifications and, when necessary, civil actions[.]" ECF No. 1 at ¶ 15.

On June 13, 2022, Perry published a post (the "Tweet") on the social-media platform Twitter (currently known as X). Id. at ¶ 24; ECF No. 38 at 2. The Tweet included a composite of two images: a still frame from the Video superimposed onto a screenshot of an online article from Forbes. ECF No. 38 at 2-3. The still frame from the Video depicts a fully clothed woman—who is identified as "Jessica" in the Video's title—sitting alone on a bed, as well as text of an apparent conversation between the woman and an off-screen interviewer in which the woman states that she is studying business and marketing. Id. at 3. The screenshot from the Forbes article shows a profile of an individual, who is identified as the head of institutional lending at Celsius Network, in the publication's "30 Under 30" list for 2020. Id. The Tweet juxtaposes these two images to suggest that they are the same woman. Id. The Tweet was Perry's second post in a larger thread; the first post in that thread is an advertisement for Celsius Network next to a screenshot of a Reuter's article entitled, "Crypto Firm Celsius Pauses All Transfers, Withdrawals, as Markets Tumble." Id. Perry replied to this post with the Tweet, which included the composite image and the message "Same company btw." Id. Upon discovering the Tweet,

Jane Doe requested that Twitter take down the Tweet pursuant to the Digital Millennium Copyright Act (id.), and Twitter promptly removed the Tweet (id.; ECF No. 1 at ¶ 27).

On July 20, 2022, MCM commenced this copyright infringement action against Perry and Criston A. Violette,[2] alleging a single claim of copyright infringement. ECF No. 1. On February 3, 2026, Judge Daniels granted Perry's motion to dismiss, concluding that the defense of fair use was clearly established by the complaint (ECF No. 38).

On February 18, 2026, Perry filed the instant motion for attorney's fees. ECF Nos. 40, 41. On February 26, 2026, Judge Daniels referred the motion to the undersigned. ECF No. 42. MCM opposed the motion on April 6, 2026 (ECF No. 47), and Perry submitted his reply brief in further support of the motion on April 16, 2026 (ECF No. 50).

## LEGAL STANDARD

Pursuant to Section 505 of the Copyright Act, a district court may in its discretion "award a reasonable attorney's fee to the prevailing party[.]" 17 U.S.C. § 505; see also Shaffer v. Kavarnos, No. 23-CV-10059 (KMK), 2026 WL 1971249, at *3 (S.D.N.Y. July 8, 2026) (noting remedy of award of attorney's fees and costs under Section 505). "The two key aspects of this grant of authority are as follows: (1) a fee award is limited to a prevailing party; and (2) a fee award is not mandatory, so whether to make such an award lies within the sound discretion of the court." Shaw Fam. Archives Ltd. v. CMG Worldwide, Inc., 589 F. Supp. 2d 331, 349 (S.D.N.Y. 2008).

The Supreme Court has interpreted the term "prevailing party . . . in a consistent manner" across "various fee-shifting statutes." CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. 419, 422

[2] On August 31, 2022, MCM voluntarily dismissed the claim against Violette. ECF No. 20.

(2016) (citing Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Hum. Res., 532 U.S. 598, 602-03, 603 n.4 (2001)). To be a prevailing party under this uniform standard, there must have been a "judicially sanctioned change in the legal relationship of the parties." Buckhannon, 532 U.S at 605; see Dattner v. Conagra Foods, Inc., 458 F.3d 98, 101 (2d Cir. 2006) (per curiam) (recognizing Buckhannon's prevailing party standard is generally applicable to federal fee-shifting statutes and rules).

Further, it is well-established that "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). "Fee awards" under Section 505 "are not 'automatic' or given 'as a matter of course.'" Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 39-40 (S.D.N.Y. 2015) (quoting Fogerty, 510 U.S. at 533); see also Siegel v. Sing Tao Newspapers New York Ltd., No. 24-CV-1307 (JGLC), 2025 WL 1891825, at *3, 6 (S.D.N.Y. July 9, 2025) (explaining that courts have "broad discretion" to award reasonable attorney's fees to a prevailing party under the Copyright Act and denying fee award). In a copyright action, "[w]hen determining whether to award attorney[']s fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citing Fogerty, 510 U.S. at 534 n.19). "The third factor—objective unreasonableness—should be given substantial weight." Id. (citing Matthew Bender & Co. v. W. Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001)).

In Kirtsaeng v. John Wiley & Sons, Inc. the Supreme Court provided "additional guidance" in the form of "governing standards [and] principles" for district courts to apply to fee applications under Section 505. 579 U.S. 197, 203 (2016). The Supreme Court explained that

district courts should give "substantial weight . . . to the objective (un)reasonableness of a losing party's litigating position," but noted that this factor "can be only an important [one] in assessing fee applications—not the controlling one." Id. at 203, 205, 208. Thus, a finding that the losing party's position was reasonable should not "raise[ ] a presumption against granting fees" or become a dispositive factor in the analysis. Id. at 209. Rather, the district court must take into account "all other relevant factors," id. at 210, including "the frivolousness of the non-prevailing party's claims or defenses," "the party's motivation," and the goals of "compensation and deterrence." Bryant, 603 F.3d at 144 (citing Fogerty, 510 U.S. at 534 n.19). The court may also consider "conduct other than the legal and factual positions that caused the non-prevailing party ultimately to fail." TCA Television Corp. v. McCollum, No. 15-CV-4325 (GBD) (JCF), 2017 WL 2418751, at *9 (S.D.N.Y. June 5, 2017), adopted by, 2018 WL 2932724 (S.D.N.Y. June 12, 2018).

## DISCUSSION

A. Prevailing party

Perry is a prevailing party. "Logic and the parity of treatment between prevailing plaintiffs and defendants mandated by the Supreme Court . . . dictates that [D]efendant[ ] should be considered [a] prevailing part[y] when [it] successfully defend[s] against the significant claims actually litigated in the action." Shaffer, 2026 WL 1971249, at *3 (quoting Screenlife Establishment v. Tower Video, Inc., 868 F. Supp. 47, 50 (S.D.N.Y. 1994)) (alterations in original). Perry successfully defended against MCM's claim here, obtaining a dismissal of the copyright infringement claim through application of the fair use defense. See ECF No. 38. And MCM does not dispute that Perry is a prevailing party. See ECF No. 47.

B. The *Fogerty* Factors do not support a discretionary award of attorney's fees.

Despite his prevailing party status, however, a weighing of the relevant Fogerty factors do not favor a fee award. See John Wiley & Sons, Inc. v. Kirtsaeng, No. 08-CV-7834 (DLC), 2016 WL 7392210, at *2 (S.D.N.Y. Dec. 21, 2016) ("This litigation, looked at holistically and in light of the Copyright Act's goals, does not favor an award of attorneys' fees to [Defendant], even though he is indisputably the prevailing party."); Magnum Photos Int'l, Inc. v. Houk Gallery, Inc., No. 16-CV-7030 (VSB), 2019 WL 4686498, at *2 (S.D.N.Y. Sept. 26, 2019) (quoting Louis Vuitton Malletier, S.A. v. My Other Bag, Inc., No. 14-CV-3419 (JMF), 2018 WL 317850, at *4 (S.D.N.Y. Jan. 8, 2018), aff'd by, 764 F. App'x 39 (2d Cir. 2019)) (concluding that "the factors set forth in Fogerty and reaffirmed in Kirtsaeng[ ] . . . d[id] not call for 'the draconian shifting of fees'" to the prevailing party and denying fee award).

1. *Objective Unreasonableness or Frivolousness*

Beginning with objective unreasonableness and frivolousness (the first and third Fogerty factors), although they are "not the same," both factors are "often analyzed by inquiring whether there is indisputably absent any factual or legal basis for plaintiff's claims." See Magnum Photos, 2019 WL 4686498, at *2 (internal quotation marks, citation, and alterations omitted); Shaffer, 2026 WL 1971249, at *4 (explaining that objective unreasonableness and frivolousness are "often evaluated together"); Boesen v. United Sports Publications, Ltd., No. 20-CV-1552 (ARR) (SIL), 2021 WL 1145730, at *3 (E.D.N.Y. Mar. 25, 2021), aff'd by, No. 21-CV-1029, 2022 WL 457281 (2d Cir. Feb. 15, 2022) ("The test for frivolousness largely duplicates that of objective unreasonableness."). The line separating objective unreasonableness and frivolousness is not "well-defined" because "[a]n argument is frivolous when there is indisputably absent any factual or legal basis for it," which "is the same way objective unreasonableness tends to be

described." TCA Television Corp., 2017 WL 2418751, at *14 (internal quotation marks and citations omitted).

"That a defendant prevailed in the litigation [ ] 'does not necessarily mean that the plaintiff's position was frivolous or objectively unreasonable.'" TVT Recs., Inc. v. Island Def Jam Music Grp., 446 F. Supp. 2d 235, 238 (S.D.N.Y. 2006) (quoting Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., No. 96-CV-4126 (RWS), 2004 WL 728878, at *2 (S.D.N.Y. Apr. 6, 2004)); see also Overseas Direct Imp. Co. v. Family Dollar Stores Inc., No. 10-CV-4919 (JGK), 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013) ("[L]ack of success on the merits, without more, does not establish that the non-prevailing party's position was objectively unreasonable."); CK Co. v. Burger King Corp., No. 92-CV-1488 (CSH), 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995) ("While [the] plaintiff failed to sustain its position, not all unsuccessful litigated claims are objectively unreasonable."). "To hold otherwise would establish a *per se* entitlement to attorney's fees whenever [issues pertaining to judgment] are resolved against a copyright plaintiff." CK Co., 1995 WL 29488, at *1.

What is more, dismissal at the motion-to-dismiss stage does not "in itself render a claim unreasonable[.]" Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 820 F. Supp. 2d 569, 573 (S.D.N.Y. 2011); see Boesen, 2021 WL 1145730, at *2 (citing Yang v. Mic Network, Inc., No. 18-CV-7628 (AJN), 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020), aff'd by, No. 20-CV-4097, 2022 WL 906513 (2d Cir. Mar. 29, 2022)) (explaining that "[j]ust because a claim is dismissed under Rule 12(b)(6) does not mean it was objectively unreasonable"). And "courts within this Circuit regularly hold that '[a] party's good faith decision to litigate complex or undecided issues of law is not objectively unreasonable.'" Capitol Recs., LLC v. ReDigi Inc., No. 12-CV-95 (RJS), 2022 WL 1046463, at *5 (S.D.N.Y. Apr. 7, 2022) (quoting Psihoyos v.

John Wiley & Sons, Inc., No. 11-CV-1416 (JPO), 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013)) (collecting cases). Instead, a copyright claim is objectively unreasonable "when [it] is clearly without merit or otherwise patently devoid of a legal or factual basis." HarperCollins Publishers LLC v. Open Road Integrated Media, LLP, 58 F. Supp. 3d 380, 389 (S.D.N.Y. 2014) (quoting Porto v. Guirgis, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009)) (alteration in original).

Perry avers that MCM's copyright infringement claim was objectively unreasonable and frivolous because this was "one of the rare cases where fair use was such an obvious defense" (ECF No. 41 at 12), and Judge Daniels found that three of the four factors in the fair use analysis favored Perry (ECF No. 38 at 6-12). However, MCM has demonstrated that its claim was a "good-faith effort[ ] to enforce the restitutionary relief that the courts awarded Jane Doe[.]" ECF No. 47 at 6.

MCM had a basis for contending that fair use did not apply here. Courts consider four factors in determining whether a use of a copyrighted work is a fair use: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The first statutory factor, the purpose and character of the use, is the "heart of the fair use inquiry," Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006), and that factor examines whether the copier's use is "transformative" because it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message[.]" Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013) (citation omitted). "Courts have cautioned that the fair use inquiry is an open-ended and context-sensitive one, which cannot be simplified with bright-line rules and instead

calls for case-by-case analysis." Magnum Photos, 2019 WL 4686498, at *3 (internal quotation marks and citations omitted).

In opposing dismissal, MCM relied on Hirsch v. CBS Broadcasting Inc. for the proposition that even where a secondary use appears transformative on its face, "a more careful assessment" may be necessary, given the fact-intensive nature of the fair use inquiry, to examine whether the alleged infringing use served the public by providing important information or whether it created new insights or commentary. No. 17-CV-1860 (PAE), 2017 WL 3393845, at *7 (S.D.N.Y. Aug. 4, 2017); ECF No. 32 at 12, 14-16. In Hirsch, the defendant reproduced part of a copyrighted work (a photograph) and inserted it into an episode of a CBS news program. 2017 WL 3393845, at *2, 7. There, the court determined that the plaintiff's copyright infringement claim could not be dismissed at the pleading stage, because whether the use was "transformative" for application of the fair use defense was not self-evident based solely on a visual inspection of the works, noting that "CBS included the Photo in the Episode, making no changes in it except the apparently non-substantive change of cropping it." Id. at 7. In distinguishing cases where the fair use defense was apparent on the face of the two works, the court in Hirsch pointed to a case where an appropriation artist had altered copyrighted photographs by painting over them, and another case where an animated television had "presented a legitimate parody . . . of a viral internet video." Id.

The alleged infringing use here is far more akin to the use in Hirsch, where the court reasoned that the fair use inquiry could not turn on a visual inspection alone. Of course, Judge Daniels was not persuaded by the rationale in Hirsch, but that does not suffice to demonstrate that MCM's copyright infringement claim was frivolous or objectively unreasonable. Indeed, Judge Daniels implicitly recognized that MCM's lawsuit was not factually or legally baseless,

stating in his opinion that "[w]hile Plaintiff and Jane Doe may be engaged in a *legitimate* effort to control the reproduction and dissemination of the Video, their ability to do so extends only as far as copyright law allows." ECF No. 38 at 12-13 (emphasis added).

MCM's claim had enough of a legal basis to avoid condemnation as objectively unreasonable or frivolous. And courts in this District have found that copyright claims with equally or more tenuous legal bases were not objectively unreasonable or frivolous. See Louis Vuitton, 2018 WL 317850, at *2 (explaining, in a case seeking fees under both the Copyright Act and the Lanham Act, that "although the Court . . . did not find this case to be a particularly close call, it cannot say that [plaintiff's] arguments were so objectively unreasonable . . . that no party could see an opening through which the arguments could be squeezed") (internal quotation marks omitted); Leibovitz v. Paramount Pictures Corp., No. 94-CV-9144 (LAP), 2000 WL 1010830, at *2-4 (S.D.N.Y. July 21, 2000) (declining to find plaintiff's arguments opposing fair use defense objectively unreasonable even where plaintiff primarily cited "easily distinguishable cases" and "relie[d] largely on [outdated] case law which held that every commercial use was presumptively unfair"); Hello I Am Elliot, Inc. v. Sine, No. 19-CV-6905 (PAE), 2021 WL 1191971, at *8 (S.D.N.Y. Mar. 30, 2021) (denying defendants' request for attorney's fees and concluding that "plaintiffs' legal theory, while misguided, had just enough of a legal basis to avoid condemnation as objectively unreasonable" where plaintiffs "mustered some authority" to oppose dismissal by citing two out-of-circuit cases); Magnum Photos, 2019 WL 4686498, at *2 (explaining that "the existence of case law supporting Plaintiff's position militates against a finding that Plaintiff's claims were objectively unreasonable," even where such case law is out-of-circuit and "unpersuasive" to the court).

In short, although MCM's legal theory ultimately failed, it was not so deficient as to be objectively unreasonable or frivolous. See Hello I Am Elliot, 2021 WL 1191971, at *8 (concluding that "the fact that plaintiffs' theory failed and had tenuous footing in the caselaw did not make it objectively unreasonable").

2. *Motivation*

Moreover, the second Fogerty factor, which examines a party's motivation for bringing suit, also weighs against Perry's request for fees. "Improper motivation is found when a party advances positions 'not because of their inherent merit, but rather because it seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain.'" Gaffney v. Muhammad Ali Enters. LLC, No. 18-CV-8770 (GBD) (OTW), 2026 WL 878993, at *3 (S.D.N.Y. Mar. 31, 2026) (quoting Janik v. SMG Media, Inc., No. 16-CV-7308 (JGK) (AJP), 2018 WL 345111, at *13 (S.D.N.Y. Jan. 10, 2018)). "[W]here a court has no reason to doubt that, throughout the litigation, a party sincerely believed that its work was entitled to copyright protection and pursued its claim for the purpose of vindicating its rights, that fact weighs against awarding costs and attorneys' fees against it." Janik, 2018 WL 345111, at *13 (internal quotation marks, alterations, and citation omitted). That is so here.

As an initial matter, given that MCM's claim was not factually or legally baseless, Perry's argument that MCM abused the Copyright Act rings hollow. Additionally, there is no evidence to support Perry's contention that this lawsuit was an attempt to target or silence him (ECF No. 41 at 13-15; ECF No. 50 at 5, 12). See Zioness Movement, Inc. v. Lawfare Project, Inc., No. 21-CV-7429 (AKH), 2026 WL 1556161, at *2 (S.D.N.Y. June 2, 2026) ("Personal animosity between parties in contentious litigation does not demonstrate improper motivation as it does not, without more, suggest a party sought to knowingly gamble on an unreasonable legal

theory in order to achieve a secondary gain.") (internal quotation marks and citation omitted). In fact, MCM did not appeal or seek reconsideration of the dismissal of its complaint, which cuts against a finding of bad faith or improper motive. Cf. Magnum Photos, 2019 WL 4686498, at *3 (finding that plaintiff's conduct throughout the litigation "belie[d] its alleged bad faith" where plaintiff declined to seek reconsideration or appellate review of the court's award of summary judgment to defendants).

Likewise, there is no evidence to support Perry's contention that MCM is a copyright troll. See Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., No. 14-CV-9270 (RJS), 2017 WL 3393850, at *4 (S.D.N.Y. Aug. 4, 2017) (concluding that "Defendants have not demonstrated the factual indicia associated with [copyright] trolling—for example, broad litigiousness, a pattern of unreasonable legal positions, and the regular extraction of settlements"). Confusingly, although Perry attempts to paint MCM as a copyright troll, he also argues that MCM has not prosecuted its copyright enough, undermining any argument that MCM has engaged in trolling behavior. ECF No. 50 at 11-12. Perry also cites to no case finding that a copyright holder's lack of copyright lawsuits suggests improper motivation or bad faith.

Perry also takes issue with MCM's settlement proposal, arguing that the amount sought had "no connection" to a possible damages award. ECF No. 41 at 14. But a settlement proposal that opposing counsel believes is too high does not establish bad faith, particularly given that MCM offered a reduced settlement demand after discussions with defense counsel. See Insurent Agency Corp. v. Hanover Ins. Co., No. 16-CV-3076 (LGS) (JLC), 2020 WL 86813, at *7 (S.D.N.Y. Jan. 8, 2020), adopted sub nom. by, Insurent Agency Corp. v. Hanover Ins. Grp., Inc., 2020 WL 1080774 (S.D.N.Y. Mar. 6, 2020) (explaining that "Plaintiffs' mere unwillingness to settle does not indicate that their motivation in bringing the suit was improper, particularly

because the settlement amount offered is alleged to have been negligible"); see also Galeas v. Houslanger & Assocs, PLLC, No. 19-CV-4270 (PKC), 2021 WL 2843214, at *7 (E.D.N.Y. June 21, 2021) ("Plaintiff's rejection of an offer that defendants believe exceeds what the substitute plaintiff can reasonably expect to recover more likely reflects a different estimation of the value of the case than sanctionable behavior[.]").

Finally, there is no evidence of any other indicia of improper motive by MCM, such as bringing a copyright claim despite knowing that no valid copyright existed, going after a perceived deep-pocketed defendant, bringing suit to achieve fame, or engaging in misconduct during the litigation itself. Cf. Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc., No. 13-CV-1526 (RJS), 2020 WL 2848232, at *4 (S.D.N.Y. June 1, 2020) (finding that plaintiff's motivation counseled in favor of awarding fees to defendant because "testimony and [a] concession that [plaintiff] did not own the copyrights in question suggest[ed] a knowing desire to roll the dice on costly litigation without evidence"); Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 358-59 (awarding fees to defendant in part because "[plaintiff] (and his counsel) filed and maintained th[e] suit in an attempt to extract a significant payment from perceived 'deep pocketed' defendants (and in an attempt to garner publicity for [plaintiff's] agent and for his lawyer)"); Piuggi v. Good for You Prods. LLC, No. 23-CV-3665 (VM), 2026 WL 2085706, at *4 (S.D.N.Y. July 20, 2026) (concluding that evidence suggested plaintiff had "maintained this action at least in part to garner publicity for himself and profit from that publicity" where plaintiff "promoted himself on social media and a personal website as crusading against large media companies he said had stolen his idea" and "attempted to leverage that publicity into financial gain by soliciting donations and selling merchandise emblazoned 'I Sued HBO for Stealing'"); Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., No. 99-CV-9623 (RWS), 2009 WL

4276966, at *8-9 (S.D.N.Y. Nov. 30, 2009) (concluding that plaintiffs' "litigation marathon" was brought with "improper motivation" where plaintiffs' conduct included "[re-]prosecut[ing] the Copyright Claims that had already been rejected by this Court in 2002," "on numerous occasions actively mischaracteriz[ing] testimony," bringing a motion to amend "for the improper purpose of trying to divest this Court of subject matter jurisdiction," and "fil[ing] motions without the required memorandum of law").

In short, MCM's motivation also weighs against Perry's request for a fee award.

3. *Compensation and Deterrence*

Turning to the final Fogerty factor, in certain copyright cases, a fee award may be necessary "to advance considerations of compensation and deterrence." See Fogerty, 510 U.S. at 534 n.19. "An award can encourage parties to vindicate and protect their legitimate rights and discourage bad actors from infringing copyrights and bringing frivolous and unreasonable claims." Hello I Am Elliot, 2021 WL 1191971, at *8. However, courts in this Circuit have held that "'the imposition of a fee award *against a copyright holder* with an objectively reasonable litigation position,' even if it has lost in court, 'will generally not promote the purposes of the Copyright Act.'" Id. (quoting Matthew Bender, 240 F.3d at 122) (emphasis added); see Yang, 2020 WL 6562403, at *4 (same).

Perry argues that "the Court should also consider that Mr. Perry could not have afforded to defend himself without the knowledge that § 505 would likely step in" and that a fee award would support "bridging the access-to-justice gap" for "moderate means defendants." ECF No. 41 at 7, 16. But the fact that a defendant in a copyright action is of modest means does not mean that he is entitled to an award of attorney's fees. See Jovani Fashion, 820 F. Supp. 2d at 574 (explaining that defendant being "a small company without a litigation budget . . . does not mean

that it must be compensated for the cost of defending against a not unreasonable copyright infringement claim"); Penguin Books U.S.A., 2004 WL 728878, at *6 (denying defendant's motion for attorney's fees where defendant claimed that it "ha[d] few financial resources as compared to [p]laintiffs" and was "on the verge of bankruptcy"). Moreover, the time and effort expended in this case was comparatively low for Perry because discovery was stayed pending resolution of his motion to dismiss (ECF No. 25), no significant motion practice took place aside from the motion to dismiss (ECF No. 28), and Judge Daniels ultimately granted the motion and dismissed MCM's claim early in the litigation (ECF No. 38). See Creazioni Artistiche Musicali, 2017 WL 3393850, at *5 (finding that compensation and deterrence factor counseled against awarding fees because "the rationale for compensating Defendants is diminished in this case, which was resolved on a motion to dismiss and was thus less costly than it would have been had the litigation proceeded through full discovery, a motion for summary judgment, or trial").

Put simply, because MCM's copyright claim was neither objectively unreasonable nor frivolous, an award of attorney's fees would not serve the Copyright Act's goals of deterring meritless claims. See Silverstein v. Penguin Putnam, Inc., No. 01-CV-309 (JFK), 2008 WL 678559, at *4 (S.D.N.Y. Mar. 12, 2008) (reasoning that "an award may even chill the litigation of claims in close cases, a result that would be at odds with the ends of the Copyright Act," where plaintiff's claim was not objectively unreasonable). This factor, too, thus weighs against an award of fees.

## CONCLUSION

For the foregoing reasons, Perry's motion for attorney's fees is denied. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 40.

**SO ORDERED.**

DATED: New York, New York
August 20, 2026

VALERIE FIGUEREDO
United States Magistrate Judge